Josephine Weinberg, SBN 274950
Ana Vicente de Castro, SBN 309958
CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
3 Williams Road
Salinas, CA 93950
Tel: (831) 757-5221
Fax: (831) 757-6212
jweinberg@crla.org
avicente@crla.org

Estella M. Cisneros, SBN 287733
CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
3747 E. Shields Ave.
Fresno, CA 93726
Tel: (559) 441-8721
Fax: (559) 441-0724
ecisneros@crla.org

Attorneys for Plaintiff Omar Hernandez Hernandez

Peter Rukin SBN, 178336
Valerie Brender SBN, 298224
RUKIN HYLAND & RIGGIN LLP
1939 Harrison Street, Suite 290
Oakland, CA 94612
Tel: (415) 421-1800
Fax: (415) 421-1700
prukin@rukinhyland.com
vbrender@rukinhyland.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR HERNANDEZ HERNANDEZ, and ANTONIO HERNANDEZ SANTIAGO on behalf of themselves and other aggrieved employees,<br><br>Plaintiffs,<br><br>v.<br><br>DUTTON RANCH CORPORATION, and DOES 1-40, INCLUSIVE,<br><br>Defendants. | CASE NO.: 19-cv-00817-EMC<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE RELIEF**<br><br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff OMAR HERNANDEZ HERNANDEZ and ANTONIO HERNANDEZ SANTIAGO ("Plaintiffs") allege their Complaint against Defendants DUTTON RANCH CORPORATION (DUTTON RANCH), and DOES 1-40 ("Defendant") as follows:

### NATURE OF THE CASE

1.    Plaintiff OMAR HERNANDEZ HERNANDEZ (hereinafter "OMAR HERNANDEZ" or "O. HERNANDEZ") is a former employee of Defendant and brings this action to recover amounts due to him based on Defendant's violations of Plaintiffs' and other aggrieved employees' rights under California law. Plaintiff OMAR HERNANDEZ was employed by Defendant DUTTON RANCH as a seasonal agricultural laborer from approximately March 2014 through January 2018.  Plaintiff complains that Defendant DUTTON RANCH'S practices constitute harassment and discrimination based on sex and national origin in violation of Plaintiff's rights under the Fair Employment and Housing Act (FEHA), Cal. Gov. Code section 12940 *et seq.*  Plaintiff further complains that Defendant DUTTON RANCH violated California law by failing to pay Plaintiff and other aggrieved employees for all hours worked, failing to pay required minimum wages and premium overtime pay, failing to provide meal and rest breaks or compensation for missed meal and rest breaks, failing to reimburse Plaintiff for all necessary expenses, and failing to pay waiting time penalties. Defendant DUTTON RANCH also breached the employment contract with Plaintiff.

2.    Plaintiff ANTONIO HERNANDEZ SANTIAGO (hereinafter "ANTONIO HERNANDEZ" or "A. HERNANDEZ") is an employee of Defendant and brings this action to recover amounts due to him based on Defendant's violations of Plaintiffs' and other aggrieved employees' rights under California law. Plaintiff ANTONIO HERNANDEZ has been employed by Defendant DUTTON RANCH as a seasonal agricultural laborer from approximately December 2011 through the present. Plaintiff complains that Defendant DUTTON RANCH violated California law by failing to pay Plaintiff and other aggrieved employees for all hours worked, failing to pay required minimum wages and premium overtime pay, failing to provide meal and rest breaks or compensation for missed meal and rest breaks, failing to reimburse Plaintiff for all necessary expenses. On November 21, 2018, Plaintiff ANTONIO HERNANDEZ

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE RELIEF

filed a supplemental PAGA notice to join Plaintiff OMAR HERNANDEZ'S PAGA complaint and add additional factual allegations relevant to non-H2A workers.

3.    Plaintiffs seek unpaid wages, damages, statutory penalties, restitution, an order requiring Defendant to pay lawful wages and compensate employees for all hours worked, and other injunctive relief, attorney's fees, costs of suit and other appropriate and just relief against Defendant.

## PARTIES

4.    Plaintiff OMAR HERNANDEZ is an H-2A worker from Mexico who was recruited by Defendant DUTTON RANCH in Mexico to work in fields owned and/or operated by Defendant DUTTON RANCH and, on information and belief, DEFENDANTS DOES 1-40 in Sonoma County, California.

5.    On information and belief, Plaintiff OMAR HERNANDEZ was an employee engaged in commerce or in the production of goods in commerce, or employed in an enterprise engaged in commerce or in the production of good for commerce within the meaning of the FLSA, 29 U.S.C. § 206.

6.    Plaintiff ANTONIO HERNANDEZ was also hired to work for Defendant DUTTON RANCH as a non-H2A worker to work in fields owned and/or operated by Defendant DUTTON RANCH and, on information and belief, DEFENDANTS DOES 1-40 in Sonoma County, California.

7.    Defendant DUTTON RANCH is a California Corporation with its principal offices located at 10717 Graton Road, Sebastopol, CA 95472.

8.    On information and belief, Defendant DUTTON RANCH is an employer engaged in industry affecting commerce and employing over 15 employees within the meaning of 42 U.S.C. § 2000e (b).

9.    Defendant DUTTON RANCH is a California registered farm labor contractor that provides agricultural workers to perform labor for other business entities.

10.    On information and belief, at all times relevant to this action, Defendant DUTTON RANCH was a "labor contractor" as defined by Cal. Lab. Code § 2810.3(a)(3). Defendant

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE RELIEF

1    DUTTON RANCH was also an employer within the meaning of 29 U.S.C. § 1802(2), and

2    employed Plaintiff ANTONIO HERNANDEZ within the meaning of 29 U.S.C. § 1802(5) and 29

3    U.S.C. § 203(g).

4         11.     On information and belief, Plaintiffs were directed to work by Defendant

5    DUTTON RANCH on properties owned by other business entities as well as properties owned

6    and/or operated by Defendant DUTTON RANCH.

7         12.     Plaintiffs are unaware of the true names and capacities of the Defendants sued

8    herein under the fictitious names DOES 1 through 40, inclusive.  Plaintiffs will seek leave to

9    amend this complaint to allege the true names and capacities of said DOES when ascertained.

10   Plaintiffs are informed and believe and thereon allege that each of the DOE Defendants was

11   responsible in some manner for the occurrences and injuries alleged in this Complaint.

12                           **JURISDICTION AND VENUE**

13        13.     This Court has jurisdiction over the subject matter and the parties pursuant to 28

14   U.S.C. §§ 1331, 2201 and 2202. This is an action arising under the Fair Labor Standards Act, 29

15   U.S.C. § 201 et seq. (FLSA),  the Migrant and Seasonal Agricultural Worker Protection Act, 29

16   U.S.C. § 1801 et seq. (AWPA) and Title VII of the Civil Rights Act of 1964, as amended, 42

17   U.S.C. § 2000e et seq. ("Title VII").

18        14.     This court has supplemental jurisdiction over the related state law claims pursuant

19   to 28 U.S.C. § 1367(a).  Plaintiffs' claims under the FLSA, AWPA, Title VII, California Labor

20   Code, California Government Code and Unfair Competition Law are related, as all of Plaintiffs'

21   claims share common operative facts.  Resolving all state and federal claims in a single action

22   serves the interests of judicial economy, convenience, and fairness to the parties.

23        15.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. §

24   1391(b)(2) because the events giving rise to Plaintiffs' claims occurred in this District.

25        16.     On or around September 26, 2018, Plaintiff O. HERNANDEZ timely filed charges

26   with the Department of Fair Employment and Housing (DFEH) alleging Defendant DUTTON

27   RANCH had committed unlawful employment practices against him including but not limited to

28   harassment and discrimination on the basis of sex and national origin. This charge was

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE
RELIEF

simultaneously filed with the Equal Employment Opportunity Commission (EEOC) pursuant to the terms of a work sharing agreement between the two agencies. On October 15, 2018 the Department of Fair Employment and Housing (DFEH) issued a right-to-sue notice at the request of Plaintiff O. HERNANDEZ.

**FACTUAL ALLEGATIONS**

**Factual Allegations Related to Plaintiff Omar Hernandez**

17.    OMAR HERNANDEZ was 18 years old when he began working at DUTTON RANCH in 2014 as an agricultural field worker harvesting wine grapes and apples. Plaintiff is from Oaxaca, Mexico and is Mixtec. Plaintiff learned about the work at DUTTON RANCH through a family member and traveled with approximately four other workers from Oaxaca to Tijuana, Mexico on or around March 2014 to obtain an H-2A visa. Plaintiff and these other workers paid for their own flights from Oaxaca to Tijuana. In Tijuana, Plaintiff and other workers paid for hotel rooms for approximately two nights and paid for their own food and transportation costs while waiting to have their H-2A Visas processed.

18.    Plaintiff HERNANDEZ traveled with other workers for approximately 12 hours in a bus from Tijuana to Sebastopol, California.

19.    Upon arrival, Plaintiff O. HERNANDEZ and the other workers he traveled with were provided housing at or around 10717 Graton Road, Sebastopol, CA 95472 by Defendant DUTTON RANCH.

20.    Plaintiff O. HERNANDEZ worked with approximately 140 other workers on a seasonal basis from 2014 through January 2018.

**Sexual Harassment and National Origin Discrimination of Plaintiff Omar Hernandez**

21.    Jesus Carmona was the foreman or supervisor in charge of Plaintiff O. HERNANDEZ and the crew with whom he worked. Mr. Carmona had the ability to hire, fire and discipline the workers in his crew, including the Plaintiff. Upon Plaintiff's first arrival to Dutton Ranch on or around March 2014, Mr. Carmona grabbed Plaintiff's O. HERNANDEZ'S buttocks. Plaintiff told Mr. Carmona to stop and Mr. Carmona responded, "Don't resist" and "You will like it eventually."

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE RELIEF

22.     In subsequent seasons, Plaintiff O. HERNANDEZ was greeted by Mr. Carmona saying the following types of comments: "Te extrañé  chiquito, ya quería verte" [I missed you little one, I have wanted to see you] "Que me trajiste," [What did you bring me?] "Me trajiste botellas, para tomar y ver que pasa?"[Did you bring me some bottles, to drink and see what happens?]. Plaintiff O. HERNANDEZ understood these comments to mean that Mr. Carmona wanted to have sex with him.

23.     On a daily basis, Mr. Carmona made explicit and offensive sexual comments to or about Plaintiff O. HERNANDEZ and would attempt to initiate lewd conversations directly with Plaintiff O. HERNANDEZ and other workers. These lewd comments included asking Plaintiff O. HERNANDEZ about his genitalia and Mr. Carmona talking about his own genitalia. Mr. Carmona asked Plaintiff O. HERNANDEZ and other workers to expose their genitalia, sometimes in exchange for money, beer or better treatment.  Mr. Carmona asked to expose himself to Plaintiff O. HERNANDEZ saying comments like, "If you see my penis maybe you will like it." A couple times a week, Mr. Carmona would touch Plaintiff O. HERNANDEZ on his head, neck and lower back while making sexually explicit comments and pressure Plaintiff to engage in a sexual conversation with him. On a daily basis, Mr. Carmona spoke to Plaintiff using sexually explicit language.

24.     Mr.  Carmona regularly made implicit and explicit proposals of sexual activity to Plaintiff O. HERNANDEZ and other workers. At least a couple times a week, Mr. Carmona would make comments that Plaintiff understood to be sexual advances towards him. Mr. Carmona would refer to Plaintiff O. HERNANDEZ as "chiquitito" [little one] and he would say statement like "Tengo ganas de chuparte"[I want to suck you] and "Tengo ganas que me lo chupes" [I want you to suck me]." Mr. Carmona told Plaintiff that he wanted to have anal and oral sex with him. Mr. Carmona also exposed his buttocks to Plaintiff and other workers on at least one occasion. Plaintiff was physically afraid of Mr. Carmona and feared that Mr. Carmona would rape him.

25.     Mr. Carmona would become angry and yell at Plaintiff O. HERNANDEZ when he refused to succumb to his sexual advances or participate in sexual conversation. Plaintiff witnessed better treatment of workers who engaged in sexual conversations with Mr. Carmona.

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE RELIEF

1 Mr. Carmona promised Plaintiff better treatment for participation in sex acts.

2   26. This behavior sexual harassment lasted until approximately three weeks before

3 Plaintiff O. HERNANDEZ'S last day of employment with DUTTON RANCH on or around

4 January 6, 2018 with DUTTON RANCH.

5   27. Plaintiff O. HERNANDEZ constantly feared losing his job.  When Plaintiff

6 complained directly to Mr. Carmona regarding the sexual harassment, he was yelled at and

7 berated and told that he would not be brought back to work the following year. Plaintiff felt

8 trapped because he felt that he could not complain about the sexual harassment or stand up for

9 himself because he believed that he would be fired.

10   28. On information and belief, Plaintiff O. HERNANDEZ never received any training

11 on sexual harassment during his employment with DUTTON RANCH.

12   29. On information and belief, Mr. Carmona discriminated Plaintiff O. HERNANDEZ

13 because of his Mixtec origin, and other indigenous Mexican workers by assigning them heavier or

14 more difficult work tasks, placing them in less desirable positions and exerting more pressure on

15 them and verbally berating, insulting, and demeaning them. Plaintiff O. HERNANDEZ and other

16 indigenous workers were placed in less productive fields where they made less piece rate wages

17 than other non-indigenous workers.  Indigenous workers were told they were not working hard

18 enough, that they were lazy, and that Mr. Carmona would take away their pay or not allow them

19 to return the next year if they did not work harder.

20   30. Mr. Carmona would regularly and directly threaten Plaintiff O. HERNANDEZ that

21 he would not bring him back the following year to work with Defendant DUTTON RANCH on

22 an H-2A visa.

23   31. Mr. Carmona would threaten Plaintiff O. HERNANDEZ and other workers that he

24 could send workers back to Mexico whenever he wanted. Plaintiff was afraid to complain about

25 the sexual harassment and discrimination by Mr. Carmona because he feared deportation, loss of

26 his housing and loss of his job.

27   32. On or around January 6, 2018, Plaintiff O. HERNANDEZ, concerned for his

28 physical and emotional health and personal safety, complained to Jose Carmona Aceves ("Mr.

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE
RELIEF

Aceves"), another supervisor at DUTTON RANCH, about Mr. Carmona's constant harassment and mistreatment. Mr. Aceves told Plaintiff he would talk to Mr. Carmona and get back to him. Plaintiff received no response from Mr. Aceves from on or around January 7th to on or around January 9th, 2018. When Plaintiff returned to the main office of DUTTON RANCH on or around January 10, 2018, he was told by Mr. Aceves that he was fired.

33.     Plaintiff O. HERNANDEZ suffered severe emotional distress that continues to the present day because of the physical and verbal sexual harassment and national origin discrimination and harassment experienced during his employment with DUTTON RANCH. Plaintiff still lives in fear because of the harm done to him while working at DUTTON RANCH.

**Wage and Hour Violations Related to Plaintiffs and Other Aggrieved Employees**

34.     Plaintiffs, and other aggrieved employees including workers with and without H-2A visas, worked for Defendant DUTTON RANCH in various locations in Sonoma County, performing pre-harvest and harvest work with grapes and apples, at various times each year from 2014 through 2018. They each worked 6 to 7 days a week and for 8 to 14 hours a day.

*Plaintiff Omar Hernandez and Other H-2A Workers*

35.     Defendant DUTTON RANCH CORP. submitted job order 14028094, certified as Temporary Alien Labor Certification Number H-300-14006-757247, to the California EDD requesting 94 workers from March 3, 2014 to November 15, 2014 to work in an around Sebastopol, California performing agricultural field work in grapes and apples. A copy of this job order is attached as Exhibit A to this Complaint.

36.     Defendant DUTTON RANCH submitted job order 14265934, certified as Temporary Alien Labor Certification Number H-300-15033-578943, to the California EDD requesting 85 workers from March 23, 2015 through January 23, 2016 to work in an around Sebastopol, California performing agricultural field work in grapes and apples. A copy of this job order is attached as Exhibit B to this Complaint.

37.     Defendant DUTTON RANCH submitted job order 14669013, certified as Temporary Alien Labor Certification Number H-300-16033-305112, to the California EDD requesting 85 workers from April 4, 2016 to February 3, 2016 to work in an around Sebastopol,

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE RELIEF

California performing agricultural field work in grapes and apples. A copy of this job order is attached as Exhibit C to this Complaint.

38.     Defendant DUTTON RANCH submitted job order 15195752, certified as Temporary Alien Labor Certification Number H-300-17028-127648, to the California EDD requesting 85 workers from April 3, 2017 to January 20, 2018 to work in and around Sebastopol, California performing agricultural field work in grapes and apples. A copy of this job order is attached as Exhibit D to this Complaint.

39.     On information and belief, Defendant DUTTON RANCH submitted the aforementioned job orders 14028094, 14265934, 14669013, and 15195752 to recruit and import foreign workers, like Plaintiff O. HERNANDEZ.

40.     Defendant DUTTON RANCH offered, and Plaintiff O. HERNANDEZ accepted, employment under the aforementioned H-2A job orders.

41.     Defendant DUTTON RANCH, under the above-mentioned job orders, promised to pay the higher of the contractually promised wage rate, the prevailing wage, or the state or federal minimum wage, for all compensable hours worked under the terms of the H-2A orders.

42.     The aforementioned contracts promised an hourly wage (straight wage). The above-mentioned job orders provided piece rate compensation for various tasks in addition to the aforementioned hourly wages.

43.     Under the terms of the above-mentioned job orders and federal law, Defendant DUTTON RANCH CORP., was required to provide housing to all H-2A workers.  8 U.S. Code § 1188(c)(4).

44.     From the 2014 through 2018 seasons in Sonoma County, Plaintiff O. HERNANDEZ resided in housing provided by Defendant DUTTON RANCH CORP. at or around 10717 Graton Road, Sebastopol, CA 95472.

45.     Under the terms of the above-mentioned job orders, Defendant DUTTON RANCH, was required to provide transportation to all H-2A workers occupying company provided housing, free of charge.

46.     Under the terms of the above-mentioned job orders, Defendant DUTTON

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE RELIEF

1    RANCH, was required to provide or pay for Plaintiff O. HERNANDEZ's subsistence and

2    transportation costs from where he came to work for the company to the place of employment to

3    begin the work contract.

4        47.    Under the terms of the above-mentioned job orders, Defendant DUTTON

5    RANCH, was required to provide, without cost, all tools, supplies or equipment required in the

6    performance of the work.

7        48.    Plaintiff O. HERNANDEZ and, on information and belief, other aggrieved

8    employees who were H-2A workers were required to pay for their own subsistence costs (i.e.

9    meal costs) on the journey from Tijuana, Mexico to Sebastopol, California.

10        49.    Plaintiff O. HERNANDEZ and, on information and belief, other aggrieved

11    employees who were H-2A workers were required to pay for the costs of their hotel while their H-

12    2A visas were being processed Tijuana, Mexico.

13        50.    Plaintiff O. HERNANDEZ and, on information and belief, other aggrieved

14    employees who were H-2A workers were required to purchase a transportation ticket back to their

15    home country after the end date of their contract. They were required to submit receipts of these

16    ticket purchases to DUTTON RANCH, however they did not receive reimbursement for these

17    expenses.

18                    ***Plaintiffs' and Other Aggrieved Employees' Wage and Hour Allegations***

19        51.    Plaintiffs and other aggrieved employees were not provided transportation to and

20    from the worksite from their employer-provided housing. Plaintiffs and, on information and

21    belief, other aggrieved employees paid other employees for transportation to, from and between

22    the fields where they worked.

23        52.    Plaintiffs and other aggrieved employees were required by Defendant to arrive to

24    the field approximately 10 to 15 minutes early to prepare for the work day and they were required

25    to spend approximately 10 to 15 minutes at the end of the work day to clean up. This preparatory

26    and clean up time included sharpening and cleaning tools. However, Defendant did not

27    compensate Plaintiffs, and on information and belief, other aggrieved employees, for this

28    preparatory and clean-up time.

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE
RELIEF

53.    Plaintiffs and other aggrieved employees often traveled between multiple fields within a day. They were often required to wait in fields before work began. However, Defendant did not adequately compensate Plaintiffs and, on information and belief, other aggrieved employees, for their time traveling and waiting in fields.

54.    Plaintiffs and other aggrieved employees regularly worked for more than 10 hours a day and were not paid at the applicable overtime rate of compensation for all overtime hours worked. Plaintiffs and other aggrieved workers were told that these hours were additional work after their regular work day. They would perform work on these fields unsupervised, for 2 to 4 additional hours at the end of an 8 to 10-hour work day but were paid separately for this work according to the amount of work performed and not based on the hours of work performed. If he did not perform this additional work, Mr. Carmona would call Plaintiff O. HERNANDEZ and other employees lazy and they would be threatened with not returning for work the next year.

55.    Upon information and belief, Defendant did not record or otherwise keep track of the hours for the aforementioned work for which employees were paid separately, and Plaintiffs and other aggrieved employees were not fully and/or correctly compensated for this work.

56.    Plaintiffs and other aggrieved employees often worked for seven consecutive days and were not paid at the applicable overtime rate of compensation for hours worked on the seventh day. If Plaintiff O. HERNANDEZ and other workers did not perform work on this seventh day, Mr. Carmona would call him and other employees lazy and they would be threatened with not returning the next year.

57.    Plaintiffs and other aggrieved employees were required to buy their own tools and equipment necessary to perform the work required by Defendant DUTTON RANCH, which included knives, lamps, gloves, scissors, boots, tool belts, and rain jackets. Plaintiffs and, on information and belief, other aggrieved employees, were not reimbursed for these expenses.

58.    Additionally, Defendant DUTTON RANCH deducted the cost of housing provided by DUTTON RANCH from the paychecks of Plaintiff A. HERNANDEZ and other non-H-2A aggrieved employees without prior written authorization.

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE RELIEF

59.     Plaintiffs and other aggrieved employees were not provided a timely or complete uninterrupted 30-minute meal period and they were never provided a second meal period when they worked more than 10 hours in a workday. Plaintiffs and other aggrieved employees were required walk to an area where they were able to take their lunch, which was often far from their current position in the field. They were required to walk back to their same field position with their tools ready to work before the end of the 30-minute period, effectively retaining control over the workers for approximately 10 minutes of their lunch period.

60.     Defendant did not allow Plaintiffs and other aggrieved employees to take 10-minute rest period for each four-hour work period, or major fraction thereof. Like with their lunch breaks, Plaintiffs and other aggrieved employees would have to walk from their current position in the field to locate shade or a place to rest, and they were required to walk back to their same field position with their tools ready to work before the end of the 10-minute rest periods, effectively retaining control over the workers during a portion of their rest period.

61.     On information belief, Defendant did not pay Plaintiffs and other workers premium wages for the inadequate or denied meal and rest periods.

62.     Defendant's failure to compensate Plaintiffs and other aggrieved workers for all hours worked or for failing to provide premium pay due to inadequate meal and rest periods lowered Defendant's labor costs and provided Defendant a significant competitive advantage in violation of the Unfair Competition Law.

63.     Upon Plaintiff O. HERNANDEZ's separation from his employment with Defendant, Defendant willfully failed to pay him accrued compensation owed, including overtime premiums, in a prompt and timely manner in violation of the California Labor Code.

**FIRST CAUSE OF ACTION**
**DISCRIMINATION BASED ON SEX**
**TITLE VII**
**PLAINTIFF OMAR HERNANDEZ AGAINST DEFENDANT DUTTON RANCH**

64.     Plaintiff O. HERNANDEZ re-alleges and incorporates by reference each preceding paragraph of the complaint as fully set forth herein and further allege that:

65.     Defendant has discriminated against Plaintiff O. HERNANDEZ in the terms and

- 12 -

conditions of his employment on the basis of his sex in violation of Title VII.

66.     Defendant, through their agent, discriminated against Plaintiff O. HERNANDEZ based on his sex by subjecting him to sexual harassment and a hostile work environment in the form of regular and repeated offensive sexual comments and advances and by subjecting him to regular and repeated unwanted physical and sexual touching and grabbing, throughout his employment. As a result, Plaintiff was subjected to discriminatory terms, conditions, or privileges of employment based on sex.

67.     This harassment and sex discrimination which violates rights guaranteed to the Plaintiff under Title VII of the Civil Rights Act of 1964 was done with malice and reckless disregard for Plaintiff's protected rights.

68.     Plaintiff O. HERNANDEZ suffered emotional distress, as a result of Defendant's unlawful employment practices, including but not limited to, feeling of anxiety, stress and humiliation, and injury in an amount to be proven at the time of trial.

69.     Defendant, as alleged, has engaged in, and by its conduct will continue to engage in, a pattern or practice of unlawful employment discrimination unless they are enjoined. Plaintiff Omar Hernandez lacks any plain, speedy, adequate remedy at law to prevent such harm, injury, and loss.

**SECOND CAUSE OF ACTION**
**DISCRIMINATION BASED ON SEX**
**CALIFORNIA GOVERNMENT CODE § 12940, SUBDIVISION (A)**
**PLAINTIFF OMAR HERNANDEZ AGAINST DEFENDANT DUTTON RANCH**

70.     Plaintiff O. HERNANDEZ re-alleges and incorporates by reference each preceding paragraph of the complaint as fully set forth herein and further allege that:

71.     California Government Code section 12940, subdivision (a), makes it an unlawful employment practice for an employer to discharge and to retaliate against an employee, because of sex, or to discriminate against a person in compensation or in terms, conditions, or privileges of employment.

72.     Defendant discriminated against Plaintiff O. HERNANDEZ based on his sex by subjecting him to sexual harassment and a hostile work environment in the form of regular and

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE RELIEF

repeated offensive sexual comments and advances and by subjecting him to regular and repeated

unwanted physical and sexual touching and grabbing, throughout his employment, in violation of

Government Code section 12940, subdivision (a). As a result, Plaintiff was subjected to

discriminatory terms, conditions, or privileges of employment based on sex.

73.    Plaintiff O. HERNANDEZ suffered emotional distress, as a result of Defendant's

unlawful employment practices, including but not limited to, feeling of anxiety, stress and

humiliation, and injury in an amount to be proven at the time of trial.

74.    Defendant's conduct was malicious, fraudulent or oppressive, or taken in

conscious disregard of the rights, safety, and economic condition of Plaintiff O. HERNANDEZ,

as defined in Civil Code § 3294, entitling them to an award of exemplary damages.

75.    Defendant, as alleged, has engaged in, and by its conduct will continue to engage

in, a pattern or practice of unlawful employment discrimination unless they are enjoined. Plaintiff

Omar Hernandez lacks any plain, speedy, adequate remedy at law to prevent such harm, injury,

and loss.

### THIRD CAUSE OF ACTION
**HARASSMENT BASED ON SEX—HOSTILE WORK ENVIRONMENT**
**CALIFORNIA GOVERNMENT CODE § 12940, SUBDIVISION (J)**
**PLAINTIFF OMAR HERNANDEZ AGAINST DEFENDANT DUTTON RANCH**

76.    Plaintiff O. HERNANDEZ re-alleges and incorporates by reference each preceding

paragraph of the complaint as fully set forth herein and further allege that:

77.    California Government Code § 12940, subdivision (j), makes it an unlawful

employment practice for an employer to sexually harass an employee.

78.    Defendant DUTTON RANCH, through their agent, harassed Plaintiff O.

HERNANDEZ based on sex by subjecting Plaintiff to unwelcome regular and repeated offensive

sexual comments and advances and by subjecting him to regular and repeated unwanted physical

and sexual touching and grabbing, throughout his employment, thus resulting in a hostile work

environment, in violation of Government Code §12940, subdivision (j)'s prohibition against

sexual harassment.

79.    Plaintiff suffered emotional distress, as a result of Defendant DUTTON RANCH's

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE
RELIEF

1  unlawful employment practices, including but not limited to, feeling of anxiety, stress and

2  humiliation, and injury in an amount to be proven at the time of trial.

3          80.      Defendant's conduct was malicious, fraudulent or oppressive, or taken in

4  conscious disregard of the rights, safety, and economic condition of Plaintiff O. HERNANDEZ,

5  as defined in Civil Code Section 3294, entitling him to an award of exemplary damages.

6          81.      Defendant, as alleged, has engaged in, and by their conduct will continue to

7  engage in, a pattern or practice of unlawful employment discrimination unless they are enjoined.

8  Plaintiff lacks any plain, speedy, adequate remedy at law to prevent such harm, injury, and loss.

9  

**FOURTH CAUSE OF ACTION**
**DISCRIMINATION BASED ON NATIONAL ORIGIN**
**TITLE VII**
**PLAINTIFF OMAR HERNANDEZ AGAINST DEFENDANT DUTTON RANCH**

12          82.      Plaintiff O. HERNANDEZ re-alleges and incorporates by reference each preceding

13  paragraph of the complaint as fully set forth herein and further allege that:

14          83.      Defendant has discriminated against Plaintiff O. HERNANDEZ in the terms and

15  conditions of his employment on the basis of his national origin in violation of Title VII.

16          84.      Defendant DUTTON RANCH, through their agent, discriminated against Plaintiff

17  O. HERNANDEZ based on his Mixtec origin by regularly and repeatedly assigning heavier or

18  more difficult tasks, exerting more pressure on him and verbally berating, insulting, and

19  demeaning him and other indigenous Mexican workers and assigning him to less desirable

20  positions where he made less in piece-rate wages than non-indigenous Mexican workers.

21          85.      Plaintiff O. HERNANDEZ suffered emotional distress, as a result of Defendant's

22  unlawful employment practices, including but not limited to, feelings of anxiety, stress and

23  humiliation, and injury in an amount to be proven at the time of trial.

24          86.      This harassment and national origin discrimination which violates rights

25  guaranteed to the Plaintiff under Title VII of the Civil Rights Act of 1964 was done with malice

26  and reckless disregard for plaintiff's protected rights.

27          87.      Defendant, as alleged, has engaged in, and by their conduct will continue to

28  engage in, a pattern or practice of unlawful employment discrimination unless they are enjoined.

- 15 -

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE
RELIEF

Plaintiff lacks any plain, speedy, adequate remedy at law to prevent such harm, injury, and loss.

**FIFTH CAUSE OF ACTION**
**DISCRIMINATION BASED ON NATIONAL ORIGIN**
**CALIFORNIA GOVERNMENT CODE § 12940, SUBDIVISION (A)**
**PLAINTIFF OMAR HERNANDEZ AGAINST DEFENDANT DUTTON RANCH**

88.    Plaintiff O. HERNANDEZ re-alleges and incorporates by reference each preceding paragraph of the complaint as fully set forth herein and further allege that:

89.    California Government Code § 12940, subdivision (a), makes it an unlawful employment practice for an employer, because of national origin, to discriminate against a person in compensation or in terms, conditions, or privileges of employment.

90.    Defendant DUTTON RANCH, through their agent, discriminated against Plaintiff O. HERNANDEZ based on his Mixtec origin by regularly and repeatedly assigning heavier or more difficult tasks, exerting more pressure on him and verbally berating, insulting, and demeaning him and other indigenous Mexican workers and assigning him to less desirable positions where he made less in piece-rate wages than non-indigenous Mexican workers.

91.    Plaintiff O. HERNANDEZ suffered emotional distress, as a result of Defendant's unlawful employment practices, including but not limited to, feelings of anxiety, stress and humiliation, and injury in an amount to be proven at the time of trial.

92.    Defendant's conduct was malicious, fraudulent or oppressive, or taken in conscious disregard of the rights, safety, and economic condition of Plaintiff O. HERNANDEZ, as defined in Civil Code § 3294, entitling him to an award of exemplary damages.

93.    Defendant, as alleged, has engaged in, and by their conduct will continue to engage in, a pattern or practice of unlawful employment discrimination unless they are enjoined. Plaintiff lacks any plain, speedy, adequate remedy at law to prevent such harm, injury, and loss.

**SIXTH CAUSE OF ACTION**
**HARASSMENT BASED ON NATIONAL ORIGIN—**
**HOSTILE WORK ENVIRONMENT**
**CALIFORNIA GOVERNMENT CODE § 12940, SUBDIVISION (J)**
**PLAINTIFF OMAR HERNANDEZ AGAINST DEFENDANT DUTTON RANCH**

94.    Plaintiff O. HERNANDEZ re-alleges and incorporates by reference each preceding

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE RELIEF

paragraph of the complaint as fully set forth herein and further allege that:

95.    California Government Code § 12940, subdivision (j)(1), makes it an unlawful employment practice for an employer to harass an employee on the basis their national origin.

96.    Plaintiff O. HERNANDEZ is of Mixtec origin.  The Mixtec are the third largest group of native Mexican peoples. Their homeland is the Mixteca, a region which occupies the western half of the Mexican state of Oaxaca and small parts of Guerrero and Puebla, states on Oaxaca's northern and western borders. The Oaxacan Mixteca is home to about two thirds of all Mixtecs. (*See* Mixtec.org, San Diego State University, at https://mixtec.sdsu.edu/about.html  (last accessed November 28, 2018)). The Mixtec language is still spoken in most of the region and has many different variants. *Id.* Mixtecos have historically been subjected to discrimination based on their native origin in both Mexico and the United States.

97.    Defendant DUTTON RANCH, through their agent, harassed Plaintiff O. HERNANDEZ based on his Mixtec origin by regularly and repeatedly assigning heavier or more difficult tasks, exerting more pressure on him and verbally berating, insulting, and demeaning him and other indigenous Mexican workers and assigning him to less desirable positions where he made less piece-rate wages than non-indigenous Mexican workers.

98.    Plaintiff O. HERNANDEZ suffered emotional distress, as a result of Defendant's unlawful employment practices, including but not limited to, feeling of anxiety, stress and humiliation, and injury in an amount to be proven at the time of trial.

99.    Defendant's conduct was malicious, fraudulent or oppressive, or taken in conscious disregard of the rights, safety, and economic condition of Plaintiff O. HERNANDEZ, as defined in Civil Code § 3294, entitling him to an award of exemplary damages.

100.    Defendant, as alleged, has engaged in, and by their conduct will continue to engage in, a pattern or practice of unlawful employment discrimination unless they are enjoined. Plaintiff lacks any plain, speedy, adequate remedy at law to prevent such harm, injury, and loss.

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE RELIEF

1
2

### SEVENTH CAUSE OF ACTION
**FAILURE TO PREVENT DISCRIMINATION OR HARASSMENT**
**CALIFORNIA GOVERNMENT CODE § 12940, SUBDIVISION (J)(1) AND (K)**
**PLAINTIFF OMAR HERNANDEZ AGAINST DEFENDANT DUTTON RANCH**

3
4

101.    Plaintiff O. HERNANDEZ re-alleges and incorporates by reference each preceding

paragraph of the complaint as fully set forth herein and further allege that:

5
6

102.    California Government Code § 12940, subdivisions (j)(1) and (k), makes it

7

unlawful for an employer to fail to take all reasonable steps necessary to prevent discrimination

8

and harassment from occurring and take immediate corrective action. The acts and conduct of

9

Defendant, as described above, constitute a failure to take all reasonable steps necessary to

10

prevent discrimination and harassment in violation of Government Code section 1240,

subdivision (k).

11
12

103.    Plaintiff O. HERNANDEZ is informed and believes and, on such information, and

13

belief alleges, that at all relevant times Defendant DUTTON RANCH failed to take action to stop

14

discriminatory or harassing conduct from occurring and failed to prevent retaliation against

15

Plaintiff for complaining about discrimination and harassment in the workplace. Defendant

16

violated Government Code section 12940, subdivision (k) based on their failure to take all

reasonable steps necessary to prevent discrimination and harassment from occurring.

17
18

104.    Plaintiff O. HERNANDEZ suffered emotional distress, as a result of Defendant's

19

unlawful employment practices, including but not limited to, feeling of anxiety, stress and

humiliation, and injury in an amount to be proven at the time of trial.

20
21

105.    As a direct result of the acts alleged herein, and Defendant's failure to take action

22

to prevent the discrimination and/or harassment, Plaintiff O. HERNANDEZ suffered harm and

damages in an amount to be proven at trial.

23
24

106.    Defendant's conduct was malicious, fraudulent or oppressive, or taken in

25

conscious disregard of the rights, safety, and economic condition of Plaintiff O. HERNANDEZ,

as defined in Civil Code § 3294, entitling him to an award of exemplary damages.

26
27

107.    Defendant, as alleged, has engaged in, and by their conduct will continue to

engage in, a pattern or practice of unlawful employment discrimination unless they are enjoined.

28

- 18 -

1  Plaintiff lacks any plain, speedy, adequate remedy at law to prevent such harm, injury, and loss.

## EIGHTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### PLAINTIFF OMAR HERNANDEZ AGAINST DEFENDANT DUTTON RANCH

108.    Plaintiff O. HERNANDEZ re-alleges and incorporates by reference each preceding paragraph of the complaint as fully set forth herein and further allege that:

109.    Defendant DUTTON RANCH supervisor Jesus Carmona, engaged in extreme and outrageous conduct towards Plaintiff O. HERNANDEZ and in doing so, contributed to the failure to provide and maintain a workplace free of harassment and discrimination. Mr. Carmona, as Plaintiff's supervisor, held a position of authority and control over Plaintiff, and had the potential to abuse that power.

110.    Plaintiff O. HERNANDEZ was subjected to regular and repeated harassment and discrimination, from the beginning of his employment and residence with Defendant DUTTON RANCH, due to both his sex and national origin. Mr. Carmona made regular and repeated sexual comments and unwanted sexual advances including grabbing, touching and exposing himself to Plaintiff. Plaintiff told Mr. Carmona that these comments and advances were unwelcome, but Mr. Carmona persisted. Plaintiff attempted to ignore Mr. Carmona's comments and advances, but Mr. Carmona persisted. Plaintiff reasonably feared losing his job and his housing if he continued to complain or if he complained to anyone else. He also feared sexual assault. Unable to tolerate the harassment any longer, Plaintiff complained to Mr. Aceves, another supervisor, and was ultimately terminated.

111.    Defendant's agent, Mr. Carmona, knowingly exercised power and control over Plaintiff O. HERNANDEZ as his supervisor and knowingly and intentionally exploited that power and control when subjecting Plaintiff to verbal and physical harassment and retaliation with the intention of further controlling and intimidating him.

112.    Defendant's agent, Mr. Carmona, acted with the intention of causing, or with reckless disregard of causing emotional distress. Mr. Carmona willfully harassed and touched Plaintiff O. HERNANDEZ, conduct which other employees witnessed and experienced

- 19 -

1   themselves. Defendant DUTTON RANCH knew or should have known about the harassing and

2   discriminatory conduct, and, on information and belief, took no steps to investigate or discipline

3   Mr. Carmona's harassment and discrimination against Plaintiff.

4          113.    Plaintiff O. HERNANDEZ has suffered severe emotional physical distress

5   including but not limited to anxiety, loss of sleep, sensations of panic, constant flashbacks of the

6   incident, and loss of appetite due to stress, fear of retaliation and fear of the impact retaliation

7   would have on his family.

8          114.    Defendant's conduct was malicious, fraudulent or oppressive, or taken in

9   conscious disregard of the rights, safety, and economic condition of Plaintiff, as defined in Civil

10   Code Section 3294, entitling them to an award of exemplary damages.

11                          **NINTH CAUSE OF ACTION**

12                          **BREACH OF CONTRACT**

      **PLAINTIFF OMAR HERNANDEZ AGAINST DEFENDANT DUTTON RANCH**

13          115.    Plaintiff Omar Hernandez re-alleges and incorporates by reference each preceding

14   paragraph of the complaint as fully set forth herein and further allege that:

15          116.    Plaintiff O. HERNANDEZ brings this count against Defendant DUTTON

16   RANCH CORP.  for breaching the employment contract between them.

17          117.    During the four seasons Plaintiff O. HERNANDEZ worked for Defendant

18   DUTTON RANCH CORP. from 2014 to 2018, he was promised the higher of the Adverse Effect

19   Wage Rate (AEWR) in effect at the time the work was performed, the prevailing wage or piece

20   rate, the agreed upon collective bargaining wage or the state or federal minimum wage.

21          118.    Plaintiff O. HERNANDEZ performed his contractual obligation by performing

22   seasonal work for Defendant from 2014 through 2018.

23          119.    Defendant DUTTON RANCH breached the employment contract with Plaintiff O.

24   HERNANDEZ by failing to compensate Plaintiff for all compensable time under applicable state

25   and federal laws.

26          120.    Defendant DUTTON RANCH breached the employment contract with Plaintiff O.

27   HERNANDEZ by failing to compensate Plaintiff for all compensable hours worked at the

28

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE
RELIEF

contractually promised wage rates.

121.    On information and belief, Defendant DUTTON RANCH failed to pay Plaintiff O. HERNANDEZ for all hours worked, in part, because Defendant DUTTON RANCH failed to record the time in which Plaintiff was required to wait in fields, engage in preparatory or clean up tasks or otherwise engage in pre- or post-harvesting compensable work time at Defendant's direction.

122.    Defendant DUTTON RANCH breached the employment contract with Plaintiff O. HERNANDEZ by failing to pay for subsistence during travel from where he came to work for the Company to the place of employment to begin the work contract.

123.    Defendant DUTTON RANCH breached the employment contract with Plaintiff O. HERNANDEZ by failing to reimburse Plaintiff for his return travel and subsistence.

124.    Defendant DUTTON RANCH breached the employment contract with Plaintiff O. HERNANDEZ by failing to reimburse Plaintiff for tools and equipment required for his employment.

125.    Defendant DUTTON RANCH breached the employment contract with Plaintiff O. HERNANDEZ by failing to provide transportation free of charge for Plaintiff who lived in housing provided by DUTTON RANCH.

126.    As a direct and proximate result of Defendant's breach of contract, Plaintiff O. HERNANDEZ suffered injury, including but not limited to illegal deductions, economic loss, and unreimbursed travel expenses and medical expenses.

127.    Plaintiff O. HERNANDEZ is entitled to and requests restitution and damages arising out of Defendant's breach of contract in amounts to be determined at trial.

## TENTH CAUSE OF ACTION
### FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF
### CALIFORNIA LABOR CODE §§ 1182.12, 1194, 1194.2, 1197 AND WAGE ORDER NO. 14

128.    Plaintiffs re-allege and incorporate by reference each preceding paragraph of the complaint as fully set forth herein and further allege that:

129.    Plaintiffs bring this count against all Defendant for their failure to pay minimum

- 21 -

wage for all compensable hours.

130.    During the statutory period, at all times relevant Defendant failed to pay Plaintiffs and, on information and belief, other aggrieved employees, the minimum wage for each hour worked in violation of Labor Code §§ 1182.12, 1197, California Industrial Welfare Commission Wage Order No. 14-2001 (hereinafter Wage Order 14), and 8 Cal. Code Regulations (C.C.R.) § 11140.

131.    Due to Defendant's policies and practices, including the practice of excluding compensable waiting, preparatory/clean-up, and/or travel time from compensation, Plaintiffs, and, on information and belief, other aggrieved workers, did not receive the applicable minimum wage for each compensable hour of work.

132.    As a direct and proximate result of Defendant's acts and/or omissions, Plaintiffs, and, on information and belief, other aggrieved workers, were deprived of minimum wages due in amounts to be determined at trial.

133.    Plaintiffs are entitled to recover and requests the unpaid balance of the full amount of such wages, interest thereon, attorneys' fees and the costs of suit.

134.    Plaintiffs are also entitled to recover liquidated damages in an amount equal to the minimum wages unlawfully unpaid and interest thereon pursuant to Lab. Code § 1194.2.  The exact amount of liquidated damages owed will be determined at trial.

### ELEVENTH CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES
### IN VIOLATION OF CALIFORNIA LABOR CODE§ 1194 AND WAGE ORDER 14

135.    Plaintiffs re-allege and incorporate by reference each preceding paragraph of the complaint as fully set forth herein and further allege that:

136.    Plaintiffs assert this count against Defendant for violation of California Labor Code §1194.

137.    Plaintiffs seek unpaid overtime premium wages against Defendant for all uncompensated overtime hours worked.

138.    At all times relevant Defendant failed to pay Plaintiffs and, on information and

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE RELIEF

belief, other aggrieved employees, overtime wages in the amount of one and a half times the regular rate for all hours worked in each workday in excess of ten (10) hours and all hours worked in each workweek in excess of sixty (60) hours, and for hours worked on a seventh consecutive day of work, as required by Labor Code § 1194 and Wage Order 14, 8 C.C.R. § 11140(3).

139.    Plaintiffs and, on information and belief other aggrieved employees regularly worked in excess of ten hours each day, including the compensable time spent waiting, preparing, cleaning-up, and/or travel time that was not recorded by Defendant. Plaintiffs and, on information and belief, other aggrieved employees, did not receive premium pay for all overtime hours worked.

140.    As a direct and proximate result of the acts and/or omissions of each Defendant, Plaintiffs and, on information and belief, other aggrieved employees, have been deprived of overtime wages due and are entitled to recover those amounts.

141.    Plaintiffs are entitled to and requests relief in the amount equal to unpaid overtime hours (at the premium rate) as well as pre- and post-judgment interest, in addition to other relief requested below.

## TWELFTH CAUSE OF ACTION
### FAILURE TO PROVIDE MEAL PERIODS
### IN VIOLATION OF CALIFORNIA LABOR CODE § 226.7 AND WAGE ORDER NO. 14

142.    Plaintiffs re-allege and incorporate by reference each preceding paragraph of the complaint as fully set forth herein and further allege that:

143.    At all times relevant, Plaintiffs and, on information and belief, other aggrieved employees, regularly were not being provided with a timely and complete 30-minute meal period.

144.    Plaintiffs and, on information and belief, other aggrieved employees regularly worked in excess of ten (10) hours a work day without being provided a second meal period.

145.    The provision of inadequate meal periods for employees working five and/or ten or more hours in a work day violates Labor Code § 226.7 as well as Wage Order 14, 8 C.C.R. § 11140(11).

146.    Because Defendant failed to provide timely and sufficient meal periods, Defendant

- 23 -

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE RELIEF

is liable to Plaintiffs and, on information and belief, other aggrieved employees, for one hour of additional pay at the regular rate of compensation, at the contractually promised hourly wage or their average hourly piece rate earnings for the pay period, whichever is higher, for each workday that the meal periods were not provided, pursuant to Labor Code § 226.7. Plaintiffs, and on information and belief other aggrieved employees, were not paid these premium pay wages.

147.    Plaintiffs request relief in an amount equal to one hour of pay for each untimely or insufficient meal period, in addition to other relief requested below.

**THIRTEENTH CAUSE OF ACTION**
**FAILURE TO PROVIDE REST PERIODS**
**IN VIOLATION OF CALIFORNIA LABOR CODE § 226.7 AND WAGE ORDER NO. 14**

148.    Plaintiffs re-allege and incorporate by reference each preceding paragraph of the complaint as fully set forth herein and further allege that:

149.    At all times relevant, Plaintiffs, and on information and belief, other aggrieved employees, have regularly worked in excess of four hours a day without Defendant authorizing and permitting them to take at least a 10-minute paid rest period for every four hours of work as required by Labor Code § 226.7 and Wage Order 14. Plaintiffs and, on information and belief other aggrieved employees were often required to walk from their harvesting location to find shade, water, and a place to rest. Defendant's policy and practice of requiring that Plaintiffs be ready at their post when their ten-minute break was completed often prevented Plaintiffs and, on information and belief, other aggrieved employees from realizing a full, 10-minute duty-free rest break.

150.    In addition, Plaintiffs and, on information and belief, other aggrieved employees regularly worked in excess of ten (10) hours without being provided a third 10-minute rest period.

151.    The failure to provide a 10-minute rest period for every four hours of work in a day violates Labor Code § 226.7 as well as Wage Order 14, 8 C.C.R. § 11140(11).

152.    Because Defendant failed to provide sufficient rest periods, Defendant is liable to Plaintiffs and, on information and belief, other workers for one hour of additional pay at the regular rate of compensation, the contractually promised hourly wage or the average hourly piece

- 24 -

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE RELIEF

rate earnings for the pay period, whichever is higher, for each workday that the rest periods were not provided, pursuant to Labor Code § 226.7. Plaintiffs, and on information and belief, other aggrieved employees were not paid these premium pay wages.

153.    Plaintiffs request relief in an amount equal to one hour of pay for each day they were not provided a rest period for every four hours of work, in addition to other relief requested below.

**FOURTEENTH CAUSE OF ACTION**
**REIMBURSEMENTS FOR BUSINESS RELATED EXPENSES**
**IN VIOLATION OF CALIFORNIA LABOR CODE § 2802**

154.    Plaintiffs re-allege and incorporate by reference each preceding paragraph of the complaint as fully set forth herein and further alleges that:

155.    During the statutory period, Plaintiffs and, on information and belief, other aggrieved employees, were not reimbursed for tools and equipment they purchased that were necessary expenditures to perform their job duties. Plaintiffs and other aggrieved employees were also not reimbursed for transportation expenses for their transportation to /from and/or between fields.

156.    Plaintiff O. HERNANDEZ, and on information and belief, other aggrieved H-2A workers, were not reimbursed for hotel costs, transportation and subsistence expenses which Defendant was mandated by law to reimburse H-2A workers.

157.    Defendant's failure to reimburse Plaintiffs and other workers is a violation of California Labor Code § 2802.

158.    Plaintiffs are entitled to and request relief in an amount equal to their expenses together with interest thereon and all reasonable costs including but not limited to, attorney's fees pursuant to Labor Code § 2802, in addition to other relief requested below.

**FIFTEENTH CAUSE OF ACTION**
**FAILURE TO FURNISH ACCURATE WAGE STATEMENTS**
**IN VIOLATION OF CALIFORNIA LABOR CODE § 226**

159.    Plaintiffs re-allege and incorporate by reference each preceding paragraph of the complaint as fully set forth herein and further allege that:

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE RELIEF

160.    Plaintiffs bring this count against Defendant for their failure to provide Plaintiffs with accurate wage statements that correctly recorded the hours Plaintiffs worked.

161.    Labor Code § 226(a) requires employers to provide itemized wage statements which accurately show the total hours worked by the employee.

162.    Labor Code § 226(e)(1) provides that if an employer knowingly and intentionally fails to provide such an itemized statement, then the employee is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial violation and one hundred dollars ($100) for each subsequent violation, up to four thousand dollars ($4,000).

163.    Defendant knowingly and intentionally failed to furnish Plaintiffs and, on information and belief, other aggrieved employees with accurate statements as required by Labor Code § 226(a) in that each wage statement failed to accurately report all hours worked and the applicable rates of pay. Plaintiffs and other aggrieved employees have suffered injury as a result. Accordingly, Defendant is liable to Plaintiffs for the amounts provided by Labor Code § 226(e).

164.    Plaintiffs are entitled to and request the applicable penalties in an amount to be determined at trial but not to exceed $4,000 and injunctive relief available pursuant to Cal. Labor Code § 226(h), in addition to other relief requested below.

**SIXTEENTH  CAUSE OF ACTION**
**WAITING TIME PENALTIES PURSUANT**
**CALIFORNIA LABOR CODE §§ 201-203**
**PLAINTIFF OMAR HERNANDEZ AGAINST DEFENDANT DUTTON RANCH**

165.    Plaintiff O. HERNANDEZ re-alleges and incorporates by reference each preceding paragraph of the complaint as fully set forth herein and further alleges that:

166.    Plaintiff O. HERNANDEZ asserts this count against Defendant DUTTON RANCH for their failure to pay Plaintiff all wages owing at separation from employment.

167.    Under California Labor Code §§ 201-203, an employer is required to promptly pay all compensation owing to an employee upon their separation from employment and the employer is liable for waiting time penalties in the form of a daily penalty up to a maximum of thirty (30) days.

168.    Defendant willfully failed to timely pay compensation and wages owing, including

- 26 -

minimum wages, overtime wages and meal and rest period premium wages, to Plaintiff O. HERNANDEZ and, on information and belief, other aggrieved employees who separated from their employment with Defendant. As a result, Defendant is liable to Plaintiff and, on information and belief, other aggrieved employees for waiting time penalties, under Labor Code § 203.

169.    Plaintiff requests thirty (30) days' penalties at the higher of his average hourly piece rate earnings or the contractually mandated hourly wage under Labor Code § 203 for each season in California in which Defendant failed to pay all wages due and owing to him upon termination of his employment.

**SEVENTEENTH CAUSE OF ACTION**
**FAILURE TO TIMELY PERMIT INSPECTION OF RECORDS**
**CALIFORNIA LABOR CODE § 226(F)**
**PLAINTIFF ANTONIO HERNANDEZ AGAINST DUTTON RANCH**

170.    Plaintiff A. HERNANDEZ re-alleges and incorporates by reference each preceding paragraph of the complaint as fully set forth herein and further alleges that:

171.    Section 226(a) details the information that employers must include on employee wage statements and further instructs that "a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California."

172.    Under California Labor Code § 226(c), "[a]n employer who receives a written or oral request to inspect or copy records pursuant to subdivision (b) pertaining to a current or former employee shall comply with the request as soon as practicable, but no later than 21 calendar days from the date of the request."

173.    California Labor Code § 226(f) states that "[a] failure by an employer to permit a current or former employee to inspect or copy records within the time set forth in subdivision (c) entitles the current or former employee or the Labor Commissioner to recover a seven-hundred-fifty-dollar ($750) penalty from the employer."

174.    On November 2, 2018, counsel for A. HERNANDEZ sent counsel for Defendant DUTTON RANCH a request for records pursuant to § 226(c).

175.    On November 28, 2018, counsel for Defendant DUTTON RANCH produced 2018

- 27 -

1   wage statements for A. HERNANDEZ. Not only were these records received more than 21 days

2   after the date of A. HERNANDEZ'S original request, but they did not include at least three years

3   of wage statement records, consistent with the record maintenance requirements under Section

4   226(a).

5         176.    Pursuant to § 226(f), A. HERNANDEZ requests the $750 penalty for Defendant's

6   violation of § 226(c), in addition to other relief requested below.

7   **EIGHTEENTH CAUSE OF ACTION**

8   **VIOLATION OF THE FAIR LABOR STANDARDS ACT (FLSA)**
**29 U.S.C. §§ 201 *ET SEQ.***

9   **PLAINTIFF OMAR HERNANDEZ HERNANDEZ,**
**INDIVIDUALLY AND IN THE INTEREST OF**

10  **OTHER WORKERS, AGAINST DUTTON RANCH**

11        177.    Plaintiff O. HERNANDEZ re-alleges and incorporates by reference each preceding

12  paragraph of the complaint as if fully alleged herein, and further allege as follows:

13        178.    At all times relevant, Plaintiff was an employee engaged in commerce or in the

14  production of goods in commerce, or employed in an enterprise engaged in commerce or in the

15  production of good for commerce within the meaning of the FLSA, 29 U.S.C. § 206.

16        179.    At all times relevant, Plaintiff O. HERNANDEZ and, on information and belief,

17  others workers, were employed by Defendant within the meaning of the FLSA, 29 U.S.C. §

18  203(d), and were entitled to, but did not receive minimum wage for every hour worked during

19  their first week of work due to hotel costs, transportation and incidental subsistence expenses (i.e.

20  meal costs) related to obtaining their H-2A visa and tool expenses. As a result of these expenses

21  incurred primarily for the benefit or convenience of Defendant, Plaintiff O. HERNANDEZ and,

22  on information and belief, other workers, were paid less than $7.25 per hour during their first

23  week of work.

24        180.    As a result of Defendant's willful violations of Plaintiff O. HERNANDEZ'S and

25  other workers' rights under the FLSA, 29 U.S.C. § 206, Plaintiff O. HERNANDEZ himself and

26  for and on behalf of other similarly situated employees seek unpaid federally mandated minimum

27  wages, an additional amount in liquidated damages, relief for violations of his federal labor law

28  rights, and reasonable attorneys' fees and court costs, pursuant to 29 U.S.C. § 216(b).

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE
RELIEF

**NINETEENTH CAUSE OF ACTION**
**VIOLATION OF THE MIGRANT AND SEASONAL**
**AGRICULTURAL WORKER PROTECTION ACT (AWPA)**
**28 U.S.C. §§ 1801 *ET SEQ*. AND 29 C.F.R. §§ 500 *ET SEQ*.**
**PLAINTIFF ANTONIO HERNANDEZ SANTIAGO, INDIVIDUALLY, AGAINST**
**DUTTON RANCH**

181.    Plaintiffs re-allege and incorporate by reference each preceding paragraph of the complaint as if fully alleged herein, and further allege as follows:

182.    At all relevant times, A. HERNANDEZ was a "migrant agricultural worker" within the meaning of the AWPA, 29 U.S.C. § 1802(8) in that he was employed in agricultural employment of a seasonal nature, and was required to be absent overnight from his permanent place of residence.

183.    At all relevant times, Defendant was an "agricultural employer" within the meaning of the AWPA, 29 U.S.C. § 1802(2).

184.    Defendant intentionally violated the rights of Plaintiff A. HERNANDEZ under the AWPA, *inter alia*, by:

185.    Failing to record the number of hours worked when Plaintiff A. HERNANDEZ worked on a piece-rate-basis and failing to provide a written itemized statement of such information as required by 29 U.S.C. 1821(d)(1)(C), 29 U.S.C. §§1821(d)(2), and 29 C.F.R §500.80(a)(3);

186.    Failing to record compensable hours spent performing preparatory and clean-up tasks, time spent waiting in fields and failing to provide a written itemized statement of such information as required by 29 U.S.C. 1821(d)(1)(C), 29 U.S.C. §§1821(d)(2), and 29 C.F.R §500.80(a)(3).

187.    Failing to comply with the working arrangements made by Defendant with Plaintiff A. HERNANDEZ including without limitation, the agreement to comply with federal laws regarding payment of wages, in violation of 29 U.S.C. § 1832(a).

188.    For each such violation of the AWPA, Plaintiff is entitled to recover actual damages or up to $500.00 per violation in statutory damages.

189.    As a direct and proximate result of Defendant's actions as alleged herein, Plaintiff

- 29 -

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE
RELIEF

1  suffered losses in amounts to be determined at trial.

2  **TWENTIETH CAUSE OF ACTION**

3  **UNLAWFUL AND/OR UNFAIR BUSINESS PRACTICES**
**CALIFORNIA BUS. & PROF. CODE §§ 17200-17208**

4  190.    Plaintiffs re-allege and incorporate by reference each preceding paragraph of the

5  complaint as fully set forth herein and further allege that:

6  191.    Plaintiffs sue Defendant as an individual on their own behalf pursuant to Business

7  and Professions Code §§ 17200, *et seq.*

8  192.    Defendant's conduct as alleged in this complaint has been and continues to be

9  unfair, unlawful, and harmful to Plaintiffs and those similarly situated.  Plaintiffs seeks to enforce

10  important rights affecting the public interest within the meaning of California Code of Civil

11  Procedure § 1021.5.

12  193.    Plaintiffs are "person[s]" within the meaning of Business and Professions Code §

13  17204 who has suffered injury in fact as a result of Defendant's unfair competition, and therefore

14  have standing to bring this claim for injunctive relief, restitution, and other appropriate equitable

15  relief.

16  194.    Business and Professions Code §§ 17200 *et seq.* prohibits unlawful, unfair, and

17  fraudulent business practices. Through the conduct alleged in this complaint, Defendant has acted

18  contrary to California public policy, has violated specific provisions of the California Labor Code,

19  and has engaged in other unlawful and unfair business practices in violation of Business and

20  Professions Code §§ 17200, *et seq.*, depriving Plaintiffs of rights, benefits, and privileges

21  guaranteed under law.

22  195.    Defendant has committed unfair and unlawful business practices within the

23  meaning of Business and Professions Code §§ 17200 *et seq.* by engaging in conduct that includes,

24  but is not limited to the following:

25      a.    Failing to reimburse workers for the subsistence, travel costs and necessary tools

26  and equipment;

27      b.    Failing to provide transportation to and from company provided housing;

28

- 30 -

c.      Charging and deducting housing costs from non-H2A workers' paychecks in violation of Labor Code § 221;

d.      Failing to compensate employees for all their hours worked, in violation of Labor Code §§ 1182.12, 1194, 1197, and the applicable provisions of Wage Order 14-2001 (8 Cal. Code of Regs. § 11140);

e.      Failing to pay overtime premiums for work performed in excess of ten (10) hours per work day, or sixty (60) hours per work week, or for the seventh (7th) consecutive day of work, contrary to the applicable provisions of Labor Code § 1198 and Wage Order 14-2001 (8 Cal. Code of Regs. § 11140);

f.      Failing to provide meal and rest periods as required by Labor Code § 226.7 and Wage Order 14-2001 (8 Cal. Code of Regs. § 11140);

g.      Failing to pay premium compensation for missed meal and rest periods, as required by Labor Code § 226.7(c);

h.      Failing to comply with the record keeping requirements of Labor Code § 1174(d) which requires employers to maintain "payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees…";

i.      Failing to provide accurate itemized wage statements as required by Labor Code § 226(a); and

j.      Failing to pay workers all wages owed upon separation from employment in violation of Labor Code § 203.

196.    As a direct result of the unfair, unlawful, and anti-competitive conduct alleged in this complaint, Defendant has acted contrary to law and contrary to public policy and have thus engaged in unlawful and unfair business practices in violation of Business and Professions Code §§ 17200 *et seq.* Defendant has engaged in such conduct for their own economic self-interest, to increase their profits, and to the detriment of business competitors whose conduct complies with California law and public policy.

197.    Through their unfair business practices alleged herein, Defendant have received

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE RELIEF

1    and retained and continue to receive and retain funds that rightfully belong to Plaintiffs and other

2    workers and have produced further profits with those funds.  As a result, Defendant has been

3    unjustly enriched and have achieved an unfair competitive advantage over their legitimate

4    business competitors at the expense of their employees and the public at large.

5         198.    Plaintiffs are entitled to and seek all relief as may be necessary to restore to

6    Plaintiffs all money and property which Defendant has acquired, or of which Plaintiffs have been

7    deprived, by means of the Defendant's unfair and unlawful business practices, and to restore to

8    Plaintiffs the ill-gotten gains obtained by Defendant through those practices.

9         199.    Plaintiffs are informed and believe and thereon allege that during their

10   employment with Defendant, Defendant's conduct injured the interests of the Plaintiffs resulting

11   in economic loss to Plaintiffs.

12        200.    Injunctive relief pursuant to Business and Professions Code § 17203 is necessary

13   to prevent Defendant from continuing to engage in unfair business practices as alleged in this

14   Complaint.  Plaintiff A. HERNANDEZ requests a permanent injunction prohibiting further

15   violations of the type alleged herein.

16        201.    Business and Professions Code § 17203 provides that the Court may restore to an

17   aggrieved party any money or property acquired by means of unlawful and unfair business

18   practices.  Plaintiffs seek restitution of all unpaid wages and unreimbursed expenses, according to

19   proof, as well as the declaratory and injunctive relief described herein.

20        202.    Plaintiffs request that the Court issue an Order requiring Defendant to pay lawful

21   wages and expenses to prevent this anti-competitive behavior in the future, and that they pay

22   restitution.

### TWENTY-FIRST CAUSE OF ACTION
**PRIVATE ATTORNEYS GENERAL ACT**
**CALIFORNIA LABOR CODE § 2699 ET. SEQ**
**PLAINTIFF OMAR HERNANDEZ AND ANTONIO HERNANDEZ AGAINST**
**DEFENDANT DUTTON RANCH CORP.**

        203.    Plaintiffs re-allege and incorporates by reference each preceding paragraph of the

complaint as fully set forth herein and further allege that:

- 32 -

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE
RELIEF

204.    Plaintiffs bring this claim on behalf of themselves and all aggrieved employees as well as the general public of the State of California against Defendant.

205.    Pursuant to Cal. Labor Code § 2699(a), any provision of the Labor Code which provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency ("LWDA") for violations of the Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures outlined in Labor Code § 2699.3.  These civil penalties are in addition to any other relief available under the Labor Code.

206.    Plaintiffs allege that Defendant violated the following provisions of the California Labor Code and IWC Wage Orders that are actionable through the California Labor Code and PAGA: Cal. Labor Code §§ 201, 202, 203, 205, 218, 226, 226.7, 558, 1174, 1182.12, 1194, 1197, 1198, 2802, and IWC Wage Order 14-2001. Each of these violations entitles Plaintiffs, as private attorneys general, to recover the applicable civil penalties on their own behalf, on behalf of all aggrieved employees, and on behalf of the general public.

207.    Plaintiffs were employed by Defendant and the alleged violations were committed against them during their time of employment.  Plaintiffs are, therefore, aggrieved employees as defined by Labor Code § 2699(c).  On information and belief, other current and former employees are also aggrieved employees because one or more of the alleged violations were committed against them during their time of employment with Defendant.

208.    Pursuant to Cal. Labor Code § 2699(f), the civil penalty recoverable in a PAGA action is that which is provided for by the Labor Code or, where no civil penalty is specifically provided, one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

209.    Pursuant to California Labor Code § 2699(g), an aggrieved employee may recover the civil penalty on behalf of himself or herself and other current or former employees against whom one or more of the alleged violations was committed. Additionally, an aggrieved employee may recover civil penalties for each aggrieved employee as provided by Cal. Labor Code § 558,

- 33 -

1    including but not limited to an amount sufficient to recover underpaid wages due each aggrieved
2    employee.

3        210.    An aggrieved employee may also recover civil penalties for each aggrieved
4    employee as provided by Cal. Labor Code § 1197.1, including but not limited to, an amount
5    sufficient to recover underpaid wages, liquidated damages pursuant to Cal. Labor Code § 1194.2
6    and any applicable penalties imposed pursuant to Cal. Labor Code § 203.

7        211.    Pursuant to Cal. Labor Code § 558 and § 1197.1, underpaid wages, liquidated
8    damages and applicable penalties under § 203 must be paid to each affected employee.

9        212.    Plaintiffs seek the maximum civil penalties permitted by law for Defendant's
10    violations of the California Labor Code and IWC Wage Order 14-2001, including penalties under
11    Labor Code §§, 210, 226.3, 256, 558, 1174.5, 1197.1, 2699(f), and 2810(g).

12        213.    Plaintiff O. HERNANDEZ filed a PAGA claim notice with the LWDA on July 30,
13    2018 via the LWDA's online filing system and via certified mail to Defendant regarding the
14    specific provisions of the Labor Code alleged to have been violated by the Defendant, including
15    the facts and theories to support the alleged violations. On November 21, 2018, Plaintiff A.
16    HERNANDEZ filed a supplemental PAGA notice to join Plaintiff O. HERNANDEZ's PAGA
17    complaint and add additional factual allegations relevant to non-H2A workers. As of the date of
18    the filing of this action, which is more than 65 days after notice to the LWDA and the Defendant,
19    the LWDA has not provided written notice that it intends to investigate Plaintiffs' allegations.
20    Accordingly, Plaintiffs have satisfied the administrative prerequisites of Labor Code § 2699.3 to
21    bring an action to recover penalties against the Defendant.

22        214.    Wherefore, Plaintiffs, and the other current and former employees, have been
23    harmed as set forth above and request relief as hereafter provided, including attorney's fees
24    pursuant to Cal. Labor Code § 2699.

25                                **PRAYER FOR RELIEF**

26        WHEREFORE, Plaintiffs pray for judgment as follows:

27        A. That the court find that Defendant DUTTON RANCH violated the FEHA in
28    discriminating and harassing Plaintiff O. HERNANDEZ based on sex and/or national origin.

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE
RELIEF

B. That the court find that Defendant DUTTON RANCH violated Title VII in discrimination and harassing Plaintiff O. HERNANDEZ based on sex and/or national origin.

C. That the court award Plaintiff O. HERNANDEZ compensatory and punitive damages according to proof;

D. That the court order Defendant DUTTON RANCH to immediately cease and desist from discriminating against and/or harassing employees on the basis of sex and/or national origin and immediately cease and desist from aiding, abetting, inciting, compelling or coercing others to commit practices forbidden by the FEHA and Title VII;

E. That the court order Defendant DUTTON RANCH to obtain training on duties, responsibilities and obligations of employers with respect to sexual harassment, sex discrimination and national origin discrimination.

F. That the Court find that Defendant DUTTON RANCH breached the employment contracts with Plaintiff O. HERNANDEZ, and that Plaintiff O. HERNANDEZ be awarded damages and restitution;

G. That the Court find that Defendant has violated the minimum wage provisions of Labor Code §§ 1182.11-1182.12, 1194, 1197 and Wage Order 14, and award an amount equal to unpaid minimum wages due, plus liquidated damages;

H. That the Court find that Defendant has violated overtime wage provisions of the Labor Code including §§ 1198, 1194 and Wage Order 14, and award an amount equal to unpaid overtime wages due;

I. That the Court find that Defendant has violated Labor Code §§ 226.7 and Wage Order 14, 8 C.C.R. § 11140, by failing to provide Plaintiffs with timely and sufficient meal and rest periods, and award an amount equal to one hour of pay for each meal and rest period that was not provided to Plaintiffs;

J. That the Court find that Defendant DUTTON RANCH violated the terms of the employment contract between itself and Plaintiff O. HERNANDEZ by failing to pay the promised wage rate for all hours worked under said agreement, and award Plaintiff O. HERNANDEZ restitution in the amount of the wages owed therein;

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE RELIEF

1    K. That the Court find that Defendant DUTTON RANCH failed to reimburse Plaintiffs

2 and other workers is a violation of California Labor Code § 2802 and award Plaintiffs restitution

3 in the amount of the expenses owed therein;

4    L. That the Court find that Defendant DUTTON RANCH failed to timely provide for

5 inspection or copying Plaintiff A. HERNANDEZ'S wage statement records pursuant to Labor

6 Code § 226(c) and award Plaintiff A. HERNANDEZ a $750 penalty pursuant to Labor Code §

7 226(f).

8    M. That the Court find that Defendant has violated Labor Code § 226(a) by knowingly and

9 intentionally failing to provide Plaintiffs with accurate itemized wage statements, and award

10 penalties due pursuant to Labor Code § 226(b);

11    N. That the Court find that Defendant has violated Labor Code §§ 201 and/or 202 for

12 willful failure to pay all compensation owed at the time of termination of employment to Plaintiff

13 O. HERNANDEZ and award waiting time penalties due pursuant to Labor Code § 203;

14    O. An award to Plaintiff O. HERNANDEZ of the unpaid balance of the full amount of the

15 federal minimum wages, interest thereon, and costs of suit and liquidated damages in an amount

16 equal to the minimum wages unlawfully unpaid and interest thereon, and an amount for violations

17 of his federal labor law rights, in an amount to be proven at trial;

18    P. An entry of declaratory judgment that Defendants violated  Plaintiff O.

19 HERNANDEZ'S rights under the FLSA;

20    Q. Reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

21    R. An award of actual damages to Plaintiff A. HERNANDEZ, or alternatively, statutory

22 damages up to $500.00 per violation of the AWPA;

23    S. An entry of declaratory judgment that Defendant violated Plaintiff A. HERNANDEZ'S

24 rights under the AWPA;

25    T. That the Court find that Defendant has violated Cal. Business and Professions Code §

26 17200 by failing to pay Plaintiffs minimum and overtime wages and waiting time penalties, by

27 failing to afford Plaintiffs timely and sufficient meal and rest periods and by failing to furnish

28 Plaintiffs with statements accurately showing total hours worked, failing to maintain accurate

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE
RELIEF

1    payroll records.;

2        U. That Defendant be ordered and enjoined to cease their unlawful and/or unfair activities

3 as alleged herein and pay restitution to Plaintiffs due to Defendant's unlawful and/or unfair

4 activities, pursuant to Cal. Business and Professions Code §§ 17200-08;

5        V. That the Court find that Defendant has violated the PAGA and award the civil penalties

6 requested above on behalf of Plaintiffs as well as other aggrieved employees as follows:

7             1.   For all provisions of the Cal. Labor Code violated as described above except

8                 those for which a civil penalty is specifically provided, a civil penalty of one

9                 hundred dollars ($100) for each aggrieved employee per pay period for the

10                 initial violation and two hundred dollars ($200) for each aggrieved employee

11                 per pay period for each subsequent violation;

12             2. For all provisions of the Cal. Labor Code violated as described above for

13                 which a civil penalty is specifically provided, civil penalties for each aggrieved

14                 employee as provided by statute;

15             3. For violations of the provisions of the Wage Orders regarding working hours,

16                 civil penalties for each aggrieved employee as provided by Cal. Labor Code §

17                 558, including but not limited to an amount sufficient to recover underpaid

18                 wages due each aggrieved employee;

19             4. For violations of the provisions of the Wage Orders regarding minimum

20                 wages, civil penalties for each aggrieved employee as provided by Cal. Labor

21                 Code § 1197.1, including but not limited to an amount sufficient to recover

22                 underpaid wages and liquidated damages pursuant to Cal. Labor Code §

23                 1194.2, waiting time penalties pursuant to Labor Code § 203; and

24             5. For an entry of judgment against Defendant pursuant to Cal. Labor Code §

25                 2699, directing that the amount of underpaid wages awarded and recovered as

26                 penalties pursuant to Cal. Labor Code § 558 and underpaid wages and

27                 liquidated damages and waiting time penalties awarded under § 1197.1 be paid

28                 to each affected employee in accordance with Labor Code §§ 558(3) and

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE
RELIEF

1197.1, and the penalties otherwise awarded be distributed as follows: 75% to

the LWDA and 25% to the aggrieved Plaintiff and employees;

W. For an award of pre-judgment interest as authorized under the law;

X.  For an award of post-judgment interest as authorized under the law;

Y. That Plaintiffs be awarded reasonable attorney's fees and costs pursuant to Labor Code

§§ 203, 226, 1194, 2699 and/or other applicable law;

Z.  Provide written proof to the court of the nature and extent of Defendant's compliance

with all requirement of the Court's order within 60 days of effective date of the Court's order;

AA. That the court order Defendant DUTTON RANCH hire a monitor to be supervised by

the Court to ensure compliance with the judgement entered in this case for a period of not less

than 5 years; and

BB. That the Court award such other and further relief as this Court may deem

appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands a jury trial on all causes of action and claims with respect to

which they have a right to a jury trial.

Dated: April 23, 2019                  CALIFORNIA RURAL LEGAL ASSISTANCE, INC.


_____/s/*Josephine Weinberg*_____
Josephine Weinberg
*Attorney for Plaintiff Omar Hernandez Hernandez*

Dated: April 23, 2019                  RUKIN HYLAND & RIGGIN LLP.

_____/s/*Valerie Brender*_____
Valerie Brender
*Attorney for Plaintiffs*

SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE
RELIEF

EXHIBIT A



**U.S. Department Labor**
**Employment and Training Administration**

OMB Control No. 1205-0134
Expiration Date: November 30, 2012

Agricultural and Food Processing Clearance Order ETA Form 790
Pedido de Empleados para Agricultura y Procesamiento de Alimentos

| | |
|---|---|
| 1. Employer's Name and Address (Number, Street, City, State, and Zip Code)/ Nombre y Dirección del Empleador (Número, Calle, Ciudad, Estado y Código Postal) | **Nos. 4 - 8 for STATE USE ONLY** **Números 4 a 8 para USO ESTATAL** |

Dutton Ranch Corporation
10717 Graton Road
Sebastopol, CA 95472

| | |
|---|---|
| 4. Industry Code/Código Industrial | 5. Job Order No. /Núm. de Orden de Empleo |

6. Occupational Title and Code /Título Ocupacional y Código

7. Clearance Order Issue Date / Fecha de Trámite

8. Job Order Expiration Date / Fecha de Expiración

Telephone number/Teléfono: (707) 823-0448    Fax: (707) 829-5942

2. Location and Direction to Work Site/ Ubicación y Dirección al Lugar de Trabajo

Dutton Ranch is located at 10717 Graton Road, Sebastopol, CA, 95472, located in Sonoma County.

See Addendum, Item 2

9. Anticipated Period of Employment / Período Anticipado de Empleo

From/ Desde: 03/03/2014    To/Hasta: 11/15/2014

10. No. of Workers Requested / Núm. de Trabajadores Solicitados
94

11. Anticipated Hours of Work per Week/Horas Anticipadas de Trabajo por Semana. Total: 40

| | |
|---|---|
| Sunday / Domingo 0 | Monday / Lunes 8 |
| Tuesday / Martes 8 | Wednesday / Miércoles 8 |
| Thursday / Jueves 8 | Friday / Viernes 8 |
| Saturday / Sábado 0 | |

(If additional space is needed, use separate sheet of paper/ Si necesitas más espacio, utilices otra hoja de papel

3. Location and Description of Housing / Dirección y Descripción de la Vivienda

Housing is provided at the Dutton Ranch location, 10717 Graton Road, Sebastopol, CA, 95472.

Housing consists of 3 dormitories with 94 beds. Housing has kitchen facilities with 2 stoves, 6 burners each, and 2 commercial refrigerators. Bathrooms have 2 sinks, 2 toilets, and 2 showers. The employer will offer housing, bedding (mattresses, blankets, sheets, pillows and pillow cases), storage for personal belongings, and utilities at no cost to workers recruited from beyond normal commuting distances who are unable to return to their place of residence on a daily basis.

See Addendum, Item 2

12. Collect Calls Accepted from/Aceptan Llamadas por Cobrar de:

| | | |
|---|---|---|
| Employer / Empleador | Yes/Si ☑ | No ☐ |
| Local Office / Oficina Local | Yes/Si ☐ | No ☑ |

(If additional space is needed, use separate sheet of paper / Si necesitas más espacio, utilices otra hoja de papel)

13. Board Arrangements / Arreglo de Alojamiento

Employer will furnish free and convenient cooking and kitchen facilities so workers may prepare their own meals. Employer will provide (on a voluntary basis) transportation to assure workers have access to stores where they can purchase groceries. Employer will also provide cooking utensils if required.

14. Referral Instructions / Instrucciones sobre cómo Referir Candidatos

Dutton Ranch Referral Contact: Steve Dutton; 10717 Graton Road, Sebastopol, CA 95472, (707) 823-0448. Contacts may be made by phone or in person on the following days Monday through Friday, between the hours of 8:00 a.m, to 1:00 p.m. Directions to our facilities are provided.

See Addendum, Item 14

15. Job Specifications / Especificaciones del Trabajo

Agricultural Field Worker (Wine Grapes and Apples)

Work with apples and grapes through growing season. Tasks include pruning; suckering (removing the growth of a plant that produces new shoots at the base or below ground traveling out from the plant base); planting; training; shoot positioning; shoot thinning; shoot trimming; leaf picking or pulling, land prepping; vineyard staking; Irrigation; Irrigation installations; erosion control; and harvesting apples and grapes. Agricultural work, including hoeing, hand hoes for hoeing, hands for picking, and knives and vineyard staking. Workers will use pruning shears, shovels for planting, hand hoes for hoeing, hands for picking, and knives for grape harvest. Workers may occasionally and/or sporadically perform duties associated with and directly related to field, ranch facilities, vineyard and orchard work including but not limited to packing apples and grapes, closing/stacking boxes in and around the field, ranch facilities, orchards and vineyards, and clean-up functions in and around the field, ranch facilities, orchards, and vineyards. Such work will be temporary and insubstantial agricultural labor.

See Addendum, Item 15

If more space is needed, summary of Material Job Specifications in ENGLISH can be included in separate document, and may also be included in SPANISH.

| 16. Wage Rates, Special Pay Information and Deductions / Tarifa de Pago, Información Sobre Pagos Especiales y Deducciones (Rebajas) | | | | | | | |
|---|---|---|---|---|---|---|---|
| Crop Activities | Hourly Wage | Place Rate / Unit(s) | Special Pay (bonus, etc.) | Deductions | Yes/Si | No | Pay Period Período de Pago |
| Cultivos | Salario por Hora | Pago por Pieza / Unidad(es) | Pagos Especiales (Bono, etc.) | Deducciones | | | |
| Apple field wrk | $ 10.71  11.01 | $ N/A | N/A | Social Security / Seguro Social | ☒ | ☐ | Weekly / Semanal |
| Apple harvest | $ N/A | $ See Add Item 16 | N/A | Federal Tax Impuestos Federales | ☒ | ☐ | ☒ |
| Wine grape vineyard labor | $ 10.71  11.01 | $ N/A | N/A | State Tax Impuestos Estatales | ☒ | ☐ | Bi-weekly / Quincenal |
| Wine grape harvest | $ See Add Item 16 | $ See Addendum Item 16 | N/A | Meals / Comidas | ☐ | ☒ | Other / Otro ☐ |
| | | | | Other (specify)/ Otro (especifica) | ☒ | ☐ | |

More Details About the Pay / Más Detalles Sobre el Pago
Workers will be paid not less than the higher of the AEWR in effect at the time work is performed (See Addendum, Item 16)

If additional space is needed, use separate sheet of paper. / Si necesitas más espacio, utilice otra hoja de papel)

17. Transportation Arrangements / Arreglos de Transportación
Employer will offer transportation at no cost to workers occupying company provided housing to the worksite and return on a daily basis. Such transportation will be in accordance with applicable laws and regulations. The use of this transportation is voluntary and workers are free to use their own transportation. No worker will be required, as a condition of employment, to utilize the transportation offered by the Employer. Housing is located on ranch sites and transportation on site is generally not required.

The following provisions pertaining to provision or reimbursement for inbound and return transportation and subsistence apply only to persons recruited from outside normal commuting distance.

For workers who complete 50 percent of the work period, the Employer will reimburse the worker for costs incurred by the worker for transportation and reasonable subsistence from the place from which the worker came to work for the Company to the place of employment which is the place of recruitment as defined above. (See Addendum, Item 16)

If additional space is needed, use separate sheet of paper. / Si necesitas más espacio, utilice otra hoja de papel)

18. Is it the practice to use Farm Labor Contractors (FLC) to recruit, supervise, transport, house, and/or pay workers for this (these) crop activity (ies)? ¿ Es la práctica habitual de usar Contratistas de Trabajo Agrícola para reclutar, supervisar, transportar, dar vivienda, y/o pagarle a los trabajadores para este(os) tipo(s) de cosecha(s)?     Yes / Sí ☐     No ☒

If you have checked yes, what is the FLC wage for each activity? / Si contesto "Sí." cual es el salario que le pagas al Contratista de Trabajo Agrícola por cada actividad?

| | | |
|---|---|---|
| 19. Unemployment Insurance provided? Seguro de Desempleo? | Yes/Sí ☒ | No ☐ |
| 20. Workers' compensation Insurance provided? Se le provee seguro de compensación/indemnización al trabajador: | Yes/Sí ☒ | No ☐ |
| 21. Are tools provided at no charge to the workers? / Se le proveen herramientas sin costo alguno a los trabajadores? | Yes/Sí ☒ | No ☐ |

22. List any arrangements which have been made with establishment owners or agents for the payment of a commission or other benefits for sales made to workers. (If there are no such arrangements, enter "None") / Enumere todos los acuerdos o convenios hechos con los propietarios del establecimiento o sus agentes para el pago de una comisión u otros beneficios por ventas hechas a los trabajadores. (Si no hay ningún acuerdo o convenio, indique "Ninguno")

None

CORRECTION APPROVED BY NATIONAL PROCESSING CENTER ___ ON ___ DATE

23. List any strike, work stoppage, slowdown, or interruption of operation by the employer at the place where the workers will be employed. (If there are no such incidents, enter "None") / Enumere toda huelga, paro o interrupción de operaciones de trabajo por parte de los empleados en el lugar de empleo. (Si no hay incidentes de este tipo, indique "Ninguno")

None

24. Address of Order Holding Office (include Telephone number)/Dirección de la Oficina donde se radica la oferta (incluya el número de teléfono)
EDD Ag Svc Unit, 800 Capitol Mall, MIC 50
Sacramento, CA 95814
(916) 653-2813

25. Name of Local Office Representative (include direct dial telephone number) / Nombre del Representante de la Oficina Local (incluya el número de teléfono de su línea directa)
Cecilia Garduno
(916) 653-2813

26. Employer's Certification: This job order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job
Certificación del Empleador: Esta orden de trabajo describe los términos y condiciones del empleo que se le ofrece, y contiene todos los términos y condiciones materiales ofrecidos

Steven Dutton, President
Employer's Signature & Title/ Firma y Título del Empleador

Date: 12/12/13

READ CAREFULLY. In view of the statutorily established basic function of the Employment Service as a no-fee labor exchange, that is, as a forum for bringing together employers and job seekers, neither the ETA nor the State agencies are guarantors of the accuracy or truthfulness of information contained on job orders submitted by employers. Nor does any job order accepted or recruited upon by the One-Stop Career Center constitute a contractual job offer to which the One-Stop Career Center, ETA or a State agency is in any way a party.

LEA CON CUIDADO. En vista de la función básica del Servicio de Empleo establecida por ley, como una entidad de intercambio laboral sin comisiones, es decir, como un foro para reunir a los empleadores y los solicitantes de empleo, el ETA ni las agencias del estado pueden garantizar la exactitud o veracidad de la información contenida en las órdenes de trabajo sometidas por los empleadores. Ni ninguna orden de trabajo aceptada o contratada en el Centro de Carreras (One-Stop Career Center) constituyen una oferta de trabajo contractual a la que el One-Stop Career Center, ETA o un organismo estatal es de ninguna manera una de las partes.

Public Burden Statement
The public reporting burden for responding to ETA Form 790, which is required to obtain or retain benefits (41 USC 3501), is estimated to be approximately 90 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and reviewing the collection. The public need not respond to this collection of information unless it displays a currently valid OMB Control Number. This is public information and there is no expectation of confidentiality. Send comments regarding this burden estimate or any other aspect of this collection, including suggestions for reducing this burden, to the U.S. Department of Labor, Migrant and Seasonal Farmworker Program, Room S4209, 200 Constitution Avenue, NW, Washington, DC 20210.

ETA Form 790 (Revised Oct., 2010)
Previous versions not usable

ADDENDUM TO FORM ETA-790
AGRICULTURAL AND FOOD PROCESSING CLEARANCE ORDER

94 Agricultural Field Workers (Wine Grapes and Apples) (2013 Season)
Dutton Ranch Corporation
Sebastopol, CA
March 3, 2014 through November 15, 2014

Employer assures compliance with 20 CFR §653.501, 20 CFR §655.122 and assurances contained in 20 CFR §655.135. The working conditions will comply with applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration and other employment-related laws. The employer is an Equal Employment Opportunity employer and will offer U. S workers at least the same opportunities, wages, benefits, and working conditions as those which the employer offers or intends to offer to non-immigrant workers.

This Clearance Order describes the actual terms and conditions of the employment being offered by Dutton Ranch Corporation, and contains all the material terms and conditions of employment for the job opportunities offered through this Clearance Order.

Item 2 - Location and Directions to Work Site

Dutton Ranch is a fixed-site grower which owns and controls its work sites and all agricultural commodities produced at such sites. **Dutton Ranch also operates as a Farm Labor Contractor for specific work sites owned and operated by third parties but which are located adjacent to its fields and orchards.**

Work will be performed at the following locations:

Dutton Ranch is located at 10717 Graton Road, Sebastopol, CA, 95472, located in Sonoma County. See attached for specific work site addresses.

Directions:
US Hwy 101 North to CA Hwy 116 West to Graton Road, Left on Graton Road, 3 miles to Ranch facilities.

Itinerary:

Due to the proximity of vineyard sites, the Employer will be working at all locations simultaneously throughout the contract period: March 3, 2014, through November 15, 2014.

Item 3 - Location and Description of Employer-Provided Housing.

Housing is provided at the Dutton Ranch location, 10717 Graton Road, Sebastopol, CA, 95472. Directions are the same as above.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 2 of 14

Housing consists of 3 dormitories with 94 beds. Housing has kitchen facilities with 2 stoves, 6 burners each, and 2 commercial refrigerators. Bathrooms have 2 sinks, 2 toilets, and 2 showers. The employer will offer housing, bedding (mattresses, blankets, sheets, pillows and pillow cases), storage for personal belongings, and utilities at no cost to workers recruited from beyond normal commuting distances who are unable to return to their place of residence on a daily basis.

Housing is offered to workers only. No housing will be provided to non-workers. Employer-provided housing will be clean and in compliance with applicable housing standards when made available for occupancy, and will be maintained in compliance with applicable standards during the period of occupancy. The Employer assures that all rental and/or public accommodations will be clean and meet applicable local, State or Federal Standards. Workers occupying employer-provided housing will be responsible for maintaining their living areas in a neat, clean manner and in compliance with the employer's "Housing Complex Rules", a copy of which will be provided upon assignment to housing. Specifically, workers must maintain housing in the same conditions as provided by the employer at the time of initial occupancy (i.e., beds may not be moved closer together; mattresses may not be moved onto the floor).

Reasonable repair cost of damage, other than that caused by normal wear and tear, will be deducted from the earnings of workers found to have been responsible for damage to housing or furnishings. If both male and female workers are hired, separate toilet, shower facilities, and sleeping rooms, will be provided by the employer. Common areas of the housing may be shared with male workers.

Family Housing:

As provided by the regulation, housing is to be provided to families who request it and only if it is the prevailing practice in the area of intended employment. It is not the practice in Sonoma County to provide family housing.

Workers may be reached at the following address and phone numbers:

ADDRESS:   10717 Graton Road, Sebastopol, CA, 95472.
PHONE:      (707) 823-0448

The following provisions apply to workers occupying employer-provided housing:

Workers eligible for employer-provided housing may elect to provide their own housing at the worker's expense. Such election must be in writing. The employer assumes no responsibility whatsoever for housing arranged by workers on their own. The employer will not provide a housing allowance or assistance to workers eligible for employer-provided housing who elect to provide their own housing. Workers who elect to provide

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 3 of 14

their own housing will not be offered daily transportation to and from the work site and transportation to and from shopping facilities, and must provide or arrange their own transportation.

Workers eligible for employer-provided housing who elect to provide their own housing may withdraw such election at any time during the period of employment, and upon doing so will be provided housing by the employer as set forth in this Clearance Order. A worker who elects to provide his or her own housing and subsequently withdraws such election may not again elect to provide his or her own housing during the same employment season.

No tenancy in employer-provided housing is created by the offer of employer-provided housing. The employer retains possession and control of the housing premises at all times. Workers housed under the terms of this Clearance Order shall vacate the housing promptly upon termination of employment.

Item 11 – Anticipated Work Hours

The anticipated work week is an average of 40 hours unless Acts of God or labor disputes make such a work week impracticable. The normal work week is 8 hours per day, Monday through Friday, 7:00 a.m. to 3:30 p.m. The worker may be requested, but not required, to work on Saturdays and/or on Sundays depending upon the conditions in the fields or orchards, weather and maturity of the crop. Lunch breaks are 30 minutes (unpaid) with two (2) paid 10 minute breaks a day.

This is regular, full-time work for a temporary period of time requiring the worker to be available for work on a daily basis. This is not "day work". Excessive tardiness and/or absences will not be tolerated and will result in disciplinary action.

All workers not occupying employer-provided housing must provide the employer with contact information before the worker commences employment. This contact information will be used to notify the worker not to report to work due to inclement weather or when work is not available or to notify the worker of any change in the worker's daily work schedule, or for any other reason.

First Work Week Guarantee: The Company will provide United States workers referred through this Clearance Order with 40 hours of work for the week beginning with the anticipated starting date of employment set forth in Item 9 (ETA-790 Form) unless the employer amends the date of need in accordance with 20 CFR §653.501 (d) (2) (v). If the worker fails to confirm the starting date of employment with the order-holding office between 5 and 9 working days before the date of need set forth in Item 9 (ETA-790 Form), the worker will be disqualified from this assurance. For the purposes of this guarantee, a workday shall mean 8 hours Monday through Friday, and shall exclude

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 4 of 14

Saturday, Sunday and Federal holidays. The pay rate for purposes of the First Work
Week Guarantee will be $10.74 per hour. (All workers begin work in California)

The employer may require the worker to perform alternative work if this guarantee is
invoked. Alternative work will include any available general farm work. If the worker
fails to confirm the starting date of employment with the order-holding office between 9
and 5 working days before the date of need set forth in Item 9, the worker will be
disqualified from this assurance.

¾ Guarantee: Employer guarantees to offer employment for a minimum of ¾ of the
hours and workdays of the total specified period during which the work contract and all
extensions thereof are in effect, beginning with the first day after a worker arrives at the
place of employment and ending on the expiration date specified in the work contract or
extensions thereof. Employer is not liable for payment of the ¾ guarantee to H-2A
workers if the H-2A worker is displaced due to the employer's requirement to hire
qualified and available U.S. workers during the recruitment period set out in 20 CFR 655.
135(d) (50 percent rule).

If the employer fails to provide the worker with the amount of work required under this
guarantee, the employer will pay the worker the amount the worker would have earned
had the worker worked for the guaranteed number of work hours. In determining
whether this guarantee of employment has been met, the employer will count all hours of
work actually performed (including hours over 8 in a day voluntarily worked, and hours
voluntarily worked on Sunday and/or Federal holidays), and any hours of work offered
which the worker fails to work, up to a maximum of 8 hours on Monday through Friday,
provided such hours offered and not worked are shown on the worker's paystub.

If the worker voluntarily abandons employment before the end of the period of
employment set forth in Item 9 (ETA-790 Form), or is terminated for cause, the worker is
not entitled to the guarantee set forth above. The hourly rate for purposes of the ¾
guarantee is $10.74/hr.

**Abandonment of Employment or Termination for Cause:** If a worker voluntarily
abandons employment before the end of the contract period, or is terminated for cause,
employer will notify the DOL and, if applicable, the DHS, in writing not later than 2
working days after termination. Employees will be deemed to have abandoned the
contract regardless of any express termination for cause, if such employee fails to show
up for work at the assigned time and place for 5 consecutive work days. When employer
timely complies with the notice requirement, employer is not responsible for paying for
the worker's return transportation or subsistence to and the worker is not entitled to the ¾
guarantee.

CORRECTION APPROVED BY
NATIONAL PROCESSING CENTER
ON _____
DATE

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 5 of 14

**Contract of Impossibility:** If, before the ending date of the period of employment set forth in Item 9, the services of the worker are no longer required for reasons beyond the control of the Employer, due to fire, weather, or other Act of God that makes the fulfillment of the anticipated period of employment impossible, the Company may terminate the worker's employment. Whether such an event constitutes a contract impossibility will be determined by the CO. In the event of such termination, the Company will fulfill the above ¾ guarantee for the period that has elapsed from the first workday the worker is at the Company's place of employment and is ready, willing, able, and is eligible to work, until the date employment is terminated. The Employer also assures that it will make efforts to transfer the worker to other comparable employment acceptable to the worker and, where applicable, consistent with existing immigration laws.

In situations where a transfer is not affected, the Company will: 1) offer to return the worker at the Company's expense, to the place from which the worker, disregarding intervening employment, came to work for the Company, or 2) transfer the worker to the worker's next certified H-2A employer, whichever the worker prefers; and 3) reimburse the worker the full amount of any deductions made from the worker's pay by the employer for transportation and subsistence expenses to the place of employment (if such deductions exist, if reimbursement has not yet been made, or if the employer did not advance such payments). The employer will also ensure that workers are paid for any inbound transportation and subsistence costs if such workers have not yet been reimbursed or if the employer has not advanced such costs. Reimbursement for daily subsistence and transportation are $11.42 per day and up to $46.00 a day with receipts under the same terms as Item 17 of this clearance order.

Throughout this contract, for purposes of inbound and outbound transportation and subsistence reimbursement, for H-2A workers, the place from which the worker came to work for the Employer are the designated places of recruitment: Tijuana, Baja California, Mexico. The recruitment location for reimbursement is based on where the applicant applied for and interviewed for the H-2A job opportunity. For U.S. workers who reside outside a reasonable commute distance, the place of recruitment is also where the applicant applied for and interviewed for the H-2A job opportunity.

**Item 13 - Board Arrangements**

Employer will furnish free and convenient cooking and kitchen facilities so workers may prepare their own meals. Employer will provide (on a voluntary basis) transportation to assure workers have access to stores where they can purchase groceries. Employer will also provide cooking utensils if required.

**Item 14 -  Referral Instructions**

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 6 of 14

Dutton Ranch Referral Contact:  Steve Dutton: 10717 Graton Road, Sebastopol, CA
95472, (707) 823-0448.  Contacts may be made by phone or in person on the following
days Monday through Friday, between the hours of 8:00 a.m. to 1:00 p.m.  Directions to
our facilities are provided.

All U.S. workers applying for this job through the California EDD should provide a
resume stating job experience.  Resumes are reviewed and if applicant meets the
experience and qualifications they will be given a start date.  On the start date an
orientation will be conducted and all employment forms filled out.

Documentation of identity and employment authorization (original documents only)
sufficient to complete an I-9 Form, as required by the Immigration Reform and Control
Act, must be in the possession of the worker at the time the worker reports for work and
will be examined by the Company as a condition for completing the hiring process.
Walk-in applicants whose pre-employment paperwork was completed at the time of hire
must have a valid identity document when they report to work.  No worker will be
considered to have completed the hiring process, nor be permitted to start work, and/or
occupy Company-provided housing, without completing (the pertinent sections of) an I-9
Form and presenting required documentation of identity and employment eligibility
within the legally required time frames.  Referring local offices should fully apprise
workers of this requirement.

**Articulo 14 - Instrucciones de Referidos**

El contacto de referencia de Dutton Ranch: Steve Dutton, 10717 Graton Road,
Sebastopol, CA 95472, (707)823-0448.  El contacto deberá ser por teléfono o en persona
durante los siguientes días Lunes a Viernes, entre 8:00 a.m. a 1:00 p.m.  Se proporciona
direcciones a las instalaciones.

Todos los trabajadores de los Estados Unidos que apliquen para este trabajo a través de la
oficina estatal de trabajo (California EDD) deberán proporcionar un currículum vitae
(CV) indicando la experiencia laboral.  El CV será revisado y si el solicitante cumple con
la experiencia y los requisitos se les dará una fecha de inicio.  En la fecha de inicio una
orientación se llevará a cabo y todas las formas de empleo serán llenadas.

La documentación de identidad y autorización de empleo (solo documentos originales)
suficientes para completar un formulario I-9, como es requerido por la Declaración de
Reforma y Control de Inmigración, debe de estar en posesión del trabajador en el
momento que el trabajador se reporte para trabajar y será examinado por la Compañía
como una condición para completar el proceso para empleo.  Los aspirantes no convocados
cuya documentación de pre-empleo fue completada al momento de empleo deben de
tener un documento válido de identidad cuando se reporten a trabajar.  No se considerará
que un trabajador ha completado el proceso de empleo, ni se le permitirá empezar a

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 7 of 14

trabajar, ni ocupará vivienda proveída por el empleador, sin completar (las secciones pertinentes de) un Formulario I-9 y presentando la documentación requerida de identidad y elegibilidad de empleo dentro el periodo requerido por ley. Las oficinas locales de Referencias deberán de informar completamente a los trabajadores de este requisito.

Item 15 – Job Specifications

Agricultural Field Worker (Wine Grapes and Apples)

Work with apples and grapes through growing season. Tasks include pruning; suckering (removing the growth of a plant that produces new shoots at the base or below ground traveling out from the plant base); planting; training; shoot positioning; shoot thinning; shoot trimming; leaf picking or pulling, land prepping; vineyard staking; irrigating; irrigation installations; erosion control; and harvesting apples and grapes. Agricultural work, including hoeing, tying vines, installing and removing apple props, and vineyard staking. Workers will use pruning shears, shovels for planting, hand hoes for hoeing, hands for picking, and knives for grape harvest. Workers may occasionally and/or sporadically perform duties associated with and directly related to field, ranch facilities, vineyard and orchard work including but not limited to packing apples and grapes, closing/stacking boxes in and around the field, ranch facilities, orchards and vineyards, and clean-up functions in and around the field, ranch facilities, orchards, and vineyards. Such work will be temporary and insubstantial agricultural labor.

Must have 3 months work experience with wine grapes and apples in vineyards and orchards including pre-harvest and harvest apple work and pre-harvest grape growing work as defined in this application. Workers must be able to lift 45 lbs frequently. Workers must be able to climb ladders holding bags for harvesting apples. No smoking allowed in the fields or dormitories, cannot be color blind due to the need to distinguish colors of crops, able to use shears and other agricultural tools, conditions of housing include no smoking, illegal drugs, alcohol, or weapons of any sort in the dormitories.

Work is performed outdoors in open fields and can involve exposure to sun, wind, mud, dust, heat, cold and other elements of the normal field environment. Temperatures can range from 20 degrees F to over 100 degrees F during the period of employment. Workers should come prepared with appropriate clothing and footwear for the work and working conditions described.

This work may entail exposure to plant pollens, insects and noxious plants, and to fields and plant materials which have been treated with insect and/or disease control sprays. The employer will comply with all worker protection standards and re-entry restrictions applicable to pesticides and other chemicals used in the fields. Workers are also required to comply with all applicable worker protection standards and re-entry times. Workers must listen to, understand and follow instructions of company supervisors and managers.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 8 of 14

Workers are expected to assist in maintaining work areas and company property in a neat and clean condition by not littering. Lunch must be eaten in the assigned area(s) away from the employee's work site.

Workers will be expected to comply with all provisions of this Clearance Order and the employer's work rules policies and procedures, and to perform any and all assigned tasks in a workmanlike and efficient manner. Failure to do so will subject the worker to the employer's disciplinary procedures.

All safety rules and instructions must be meticulously observed throughout the work day. All Dutton Ranch rules, policies and procedures must be followed, to the extent that they do not conflict with the provisions of this Clearance Order and/or the U.S. Department of Labor's H-2A regulations. A copy of the applicable rules, policies and procedures will be provided to each worker on or before the first day of work. Failure to comply with Company policies and/or meet expectations will result in application of specified disciplinary procedures, up to and including termination.

Employees must not report for work, enter the work site or perform service while under the influence of or having used alcohol or any illegal controlled substance. Employees must not report for work, or perform service, while under the influence of, or impaired by, prescription drugs, medications or other substances that may in any way adversely affect their alertness, coordination, reaction response or safety. The employer may require the worker to submit to a drug test at the employer's expense upon the occurrence of a reportable accident or upon reasonable suspicion.

Artículo 15 – Especificaciones Del Trabajo

Trabajador Agrícola del Campo (Uva de Vino y Manzanas)

Trabaja como miembro de equipo llevando a cabo tareas complejas que requieren juicio limitado. Los trabajadores podrán en ocasiones y/o esporádicamente llevar a cabo deberes asociados con y directamente relacionados con trabajo del campo, instalaciones del rancho, viñedo y huerto incluyendo pero no limitado al empaque de manzanas y uvas, sellando/amontonando cajas en y alrededor del campo, instalaciones del rancho, viñedos y huertos, funciones de limpieza en y alrededor del campo, instalaciones del rancho, viñedos y huertos. Dicho trabajo será labor agrícola temporal e insustancial.

Trabajar con manzanas y uvas durante la temporada de crecimiento. Las tareas incluyen podar; quitar el crecimiento de una planta que produce el brote en la base o bajo tierra saliendo de la base de la planta (chupón); sembrar; entrenar; colocación de brote; disminuir el brote; recorte del brote; recoger hojas; preparar; estacar el viñedo; riego; instalaciones de riego; control de erosión; y cosecha de manzanas y uvas. Trabajo

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 9 of 14

agrícola, incluyendo azadonar, atando viñas, instalando y quitando accesorios de
manzanas, estacar el viñedo, sacar la hojas. Los trabajadores usaran tijeras podadoras,
palas para sembrar, las manos para recoger, y cuchillos para la cosecha de uva.

Debe tener experiencia de 3 meses de trabajo con las uvas de vino y manzanas en viñedos
y frutales, incluyendo pre-cosecha y el trabajo de la cosecha de manzana y el trabajo de
pre-cosecha de cultivo de uva como se define en esta aplicación. Los trabajadores
deberán tener la habilidad de levantar 45 libras frecuentemente. Los trabajadores deberán
subir escaleras mientras que detienen bolsas para cosechar manzanas. Se prohíbe fumar
en los campos o dormitorios, no podrá padecer de daltonismo debido a que el trabajador
deberá distinguir los colores de la cosecha, tener la habilidad de usar tijeras podadoras y
otras herramientas, las condiciones de la vivienda incluyen el no fumar, el uso de
substancias ilegales, bebidas embriagantes o cualquier tipo de armas en los dormitorios.

El trabajo se lleva a cabo al aire libre en los campos abiertos y podrá involucrar la
exposición al sol, vientos, lodo, polvo, calor, frío y otros elementos del ambiente normal
del campo. Las temperaturas podrán variar de 20 grados Fahrenheit hasta 100 grados
Fahrenheit durante el periodo de empleo. Los trabajadores deberán llegar preparados con
la ropa apropiada y el calzado para las condiciones de trabajo descritas.

Este trabajo podrá implicar la exposición a polen de plantas, insectos, plantas nocivas y/o
materiales de plantas que han sido tratados con aerosoles para controlar insectos y
enfermedades. El empleador cumplirá con todos los estándares de protecciones al
trabajador y la re-entrada de restricciones aplicables a las pesticidas y otros químicos
utilizados en el campo. Los trabajadores también serán requeridos en cumplir con todos
los estándares de protección al trabajador y tiempos de re-entrada. Los trabajadores
deberán escuchar, comprender y seguir las instrucciones de los supervisores de la
compañía y los gerentes.

Se espera que los trabajadores mantengan las áreas de trabajo y la propiedad de la
compañía en una manera limpia y ordenada al no tirar basura. La comida se deberá
comer el las áreas asignadas lejos de las estaciones de trabajo.

Se espera que los trabajadores cumplan con todas las provisiones de esta Orden de
Autorización y de las políticas y reglamentos del trabajo, y deberán llevar a cabo todas
las tareas asignadas en una manera eficiente. El no hacerlo sujetara al trabajador a los
procedimientos disciplinarios de trabajo.

Todas las reglas e instrucciones de seguridad se tienen que observar de una forma
meticulosa durante el día laboral. Todas las reglas y políticas de Dutton Ranch se tienen
que seguir, hasta el punto que no interfieran con las provisiones de esta Orden de
Autorización y/o los reglamentos H-2A del Departamento de Trabajo de los Estados
Unidos. Una copia de las reglas y políticas aplicables se proporcionará a cada trabajador

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 10 of 14

antes de o en el primer día del trabajo. El no cumplir con las políticas de la compañía y/o las expectativas resultará en la aplicación de procedimientos disciplinarios, hasta e incluyendo la terminación del empleo.

Los empleados no pueden reportarse a trabajar, ni entrar al sitio de trabajo, ni realizar funciones de trabajo mientras estén bajo la influencia del alcohol o cualquier otra sustancia controlada ilegal. Los empleados no deben de reportarse para trabajar, ni realizar funciones de trabajo mientras estén bajo de la influencia de drogas recetadas, medicamentos u otras sustancias que podrían afectar de cualquier forma su vigilancia, coordinación, reacción, o seguridad. El empleador poda requerir del empleado hacerse una prueba de drogas al gasto del empleador en el caso de un accidente que se pueda reportar, o en el caso de la sospecha razonable.

Item 16– Wage Rates, Special Pay Information and Deductions

**Offered Wage:** Workers will be paid not less than the higher of the AEWR in effect at the time work is performed, the prevailing hourly wage or piece rate, the agreed upon collective bargaining wage, or the Federal or State minimum wage for all hours worked. Employer will pay workers no less than the hourly AEWR of $10.71 when working with apples. Apple harvest is at a piece rate of $18.00 to $35.00 per 1000-lb bin. Employer will pay the hourly rate of $10.71 per hour for wine grape vineyard labor work (non-harvest) and a piece rate for wine grape harvest at a rate of $2.00 per 35-lb picking tray per person for wine grapes but no less than the prevailing hourly rate of $13.67/hr. Employer assures that the required wage rate will be paid at the time that the work is performed. Employer may pay a lower AEWR or prevailing hourly or piece rate as long as such rate remains the highest of the above rates at the time that the work is performed.

If the prevailing wage (hourly or piece rate) increases during the contract period, the employer will pay any higher rate after written notice is received from the Department of Labor. Notice can be in the form of a written letter or publication in the Federal Register.

**Overtime:** Employer will abide by the California overtime rules for agricultural workers working in California (i.e. 150% of the hourly wage rate after 10 hours of work per day or 60 hours per week).

**Incentives:** The employer will not pay workers a bonus.

**Deductions:** The following deductions will be made from the worker's pay: FICA (if applicable); federal income tax withholding (if applicable); state and/or local tax withholding (if applicable); recovery of any loss to the Company due to damage or loss of equipment; housing or furnishings (beyond normal wear and tear) caused by the worker (if any); and deductions expressly authorized by the worker in writing (i.e. advances or loan repayments, if any). No deductions except those required or permitted


CORRECTION APPROVED BY NATIONAL PROCESSING CENTER ON 6/24/19 DATE

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 11 of 14

by law will be made which bring the worker's earnings for any pay period below the
applicable statutory federal or state minimum wage.

**Pay Periods, Earnings Records and Workers Compensation:** Payroll Periods will be
weekly. Workers will be paid on Saturdays. Paychecks will be given directly to the
worker, if still in the employment of the employer, or mailed to the address on the
worker's employment application or any more recent change of address notification
provided by the worker. Photo identification may be required to receive a paycheck. In
the event it is necessary for someone other than the worker to pick up the worker's
paycheck, an authorization form signed by the worker and approved by the worker's
supervisor must be in the possession of the employer.

The employer will furnish to the worker on each payday a written statement with the
following information, pursuant to 20 CFR sec. 655.122(k):

        1.  The workers total earnings for the pay period;
        2.  The workers hourly rate and/or piece rate of pay;
        3.  The hours of employment offered to the worker (showing offers in
            accordance with the Three-fourths guarantee as determined in
            paragraph (i) of this section, separate from any hours offered over and
            above the guarantee);
        4.  The hours actually worked by the worker;
        5.  An itemization of all deductions made from the worker's wages;
        6.  If piece rates are used, the units produced daily;
        7.  Beginning and ending dates of the pay period; and
        8.  The employers name, address, and FEIN.

Employer assures that the earnings records required to be retained in its files will be
made available for inspection as set out in 20 CFR 655.122(j)(2).

All employees are covered by workers compensation insurance in accordance with
California law. This insurance provides payment of medical benefits and time loss
payments to a worker who is accidentally injured on the job.

Item 17 – Transportation Arrangements

Employer will offer transportation at no cost to workers occupying company provided
housing to the worksite and return on a daily basis. Such transportation will be in
accordance with applicable laws and regulations. The use of this transportation is
voluntary and workers are free to use their own transportation. No worker will be
required, as a condition of employment, to utilize the transportation offered by the
Employer. Housing is located on ranch sites and transportation on site is generally not
required.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 12 of 14

The following provisions pertaining to provision or reimbursement for inbound and
return transportation and subsistence apply only to persons recruited from outside normal
commuting distance.

For workers who complete 50 percent of the work period, the Employer will reimburse
the worker for costs incurred by the worker for transportation and reasonable subsistence
from the place from which the worker came to work for the Company to the place of
employment which is the place of recruitment as defined above.  Subsistence will be
reimbursed at the rate of $11.42 per day without documentation and of actual
expenditures, and at actual cost up to a maximum of $46.00 per day with documentation
of actual expenditures.  The amount of reimbursement for transportation shall be the
worker's actual cost, but not more that the most economical and reasonable common
carrier transportation charges for the distance involved.

The Employer may elect, at the Employer's sole discretion, to reimburse workers'
inbound transportation and subsistence costs at an earlier time than set forth in the
preceding paragraph, if the law requires.

If the worker completes the period of employment, the Employer will provide or pay for
the worker's transportation and subsistence from the place of employment to the place
from which the worker came to work for the Employer which is the place of recruitment
as defined above.  Return transportation will not be provided to workers who voluntarily
abandon employment before the end of the employment period or who are terminated for
cause.  For the purposes of this paragraph, the "period of employment" shall be the
period from the first workday the worker is at the Employer's worksite and is ready,
willing, able and eligible to work, until the anticipated ending day of employment set for
in Item 9 of this Clearance order, or until the services of the worker are no longer
required, whichever come first.

Other Clarifications and Assurances

TERMINATIONS:  The employer may terminate the worker with notification to the
Employment Service if the worker: (a) refuses without justified cause to perform work
for which the worker was recruited and hired; (b) commits serious acts of misconduct or
fails to follow company rules set forth in the Employee Handbook; or (c) fails, after
completing any training or break-in period, to reach productions standards when
production standards are applicable.  Workers who fail to properly perform the job duties
after a reasonable period of on-the-job training may be terminated for cause.

Termination for Medical Reasons: In the event of termination for medical reasons
occurring after the arrival on the job, or occurring as a result of employment, or in the
event of termination resulting from an Act of God, the employer will pay or provide

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 13 of 14

reasonable costs of return transportation and subsistence to the place where the worker departed to the employer's place of employment. For H-2A workers coming from outside the United States, the law defines the place from where the worker departed to the employer's place of employment as the place of recruitment. Additionally, the employer will reimburse worker for reasonable costs of transportation and subsistence incurred by the worker to get to the place of employment.

**EMPLOYER FURNISHED TOOLS AND EQUIPMENT:** The employer will furnish, without cost, all tools, supplies, or equipment required in the performance of work.

**TRAINING:** The employer will provide a 1-day training session and workers will be allowed 7 days (break-in period) to reach the production standards of the activity.

**PRODUCTION STANDARDS:** After completion of the training and break-in period, workers will be expected to meet the following production standards: Each worker will be required to work at a normal work pace and keep up with the rest of the crew (85-90% effort level). Specifically, workers are expected to pick approximately 7-8 (seven to eight) 35-lb trays of grapes in one hour; workers are expected to pick 1 bin an hour for apples. Production standards are not greater than the first year that Employer entered into the H-2A program and are in accordance with prevailing practices in the geographic area for similarly employed individuals.

Workers will be notified and can be terminated for failure to meet production standards after the training period.

**INJURIES:** The employer will provide Workers Compensation Insurance or equivalent employer provided insurance, at no cost to the worker, covering injury and disease arising out of, and in the course of, the worker's employment. Employer's proof of insurance coverage will be provided to the ETA field office before certification is granted.

**EMPLOYER OBLIGATION IF EMPLOYMENT EXTENDED:** No extension of employment beyond the period of employment specified in the job order shall relieve the employer from paying the wages already earned, or, if specified in the job order as term of employment, providing return transportation or paying return transportation expenses to the worker.

**TERMS AND CONDITION CHANGES:** The employer will expeditiously notify the order holding office or State agency by telephone immediately upon learning that a crop is maturing earlier or later, or that weather conditions, over-recruitment, or other factors have changed the terms and conditions of employment.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 14 of 14

**PROOF OF CITIZENSHIP:** All workers hired under this order will be required to provide documentation attesting to U.S. citizenship or legal status to work in the U.S.

**AGRICULTURAL WORK AGREEMENT:** A copy of the agricultural work agreement contract or the ETA 790 and attachments will be provided to the worker by the employer no later than on the date the work commences.

**NUMBER OF WORKERS:** The employer expects the total number of seasonal workers to be used on the dates specified in this application to be approximately 130-140, of which 94 will be H-2A workers for which certification is requested, and the balance will be domestic workers. It is anticipated that at least 45-55 of the domestic workers will not require housing. These numbers are estimates as total workforce needs are dependent upon weather, crop conditions, and worker availability.

**REQUIRED DEPARTURE:** H-2A workers must depart the United States at the completion of the work contract period. If registration upon departure is required, employer will notify such H-2A workers of the required departure registration and the place and manner of such registration.

**RETENTION OF DOCUMENTS:** Employer will retain the required documentation in support of its application for 3 years from the date of certification. Earnings records will be retained for not less than 3 years after completion of the work contract.

**Employer requests conditional access into the Interstate and Intrastate Clearance System and assures that the worker housing will meet the applicable Federal Standards not later than 30 days in advance of the date of need reflected on the attached ETA 790.**

Employer requests the SWA to arrange for the required housing inspection.

EXHIBIT B



**U.S. Department Labor**
**Employment and Training Administration**

OMB Control No. 1205-0134
Expiration Date: October 31, 2015

Agricultural and Food Processing Clearance Order ETA Form 790
Orden de Empleo para Obreros/Trabajadores Agricolas y Procesamiento de Alimentos

(Print or type in each field block – To include additional information, go to block # 28 – Please follow Step-By-Step Instructions)
(Favor de usar letra de molde en la solicitud – Para incluir información adicional vea el punto # 28 – Favor de seguir las instrucciones paso-a-paso)

| | |
|---|---|
| 1. Employer's and/or Agent's Name and Address (Number, Street, City, State and Zip Code / Nombre y Dirección del Empleador/Patrón y/o Agente (Número, Calle, Ciudad, Estado y Código Postal ): | **Nos. 4 through 8 for STATE USE ONLY** **Números 4 a 8 para USO ESTATAL** |
| **Dutton Ranch Corporation** | 4. SOC (O*NET/OES) Occupational Code / Código Industrial: 5. Job Order No./ Núm. de Orden de Empleo: |
| **10717 Graton Road        Sebastopol** | 45-2902 |
| **California                95472** | B. SOC (ONET/OES) Occupational Title / Título Ocupacional |  14265934  |
| a) Federal Employer Identification Number (FEIN) / Número federal de Identificación del Empleador: | Farmworkers, Luporers |
| (b) (6) | crop. |
| b) Telephone Number / Número de Teléfono: | 6. Address of Order Holding Office (include Telephone number) / Dirección de la Oficina donde se radica la oferta (Incluya el número de teléfono): |
| (707) 823-0448 | Sonoma Job Link |
| | 2227 Capricorn Way, ste 100 |
| c) Fax Number / Número de Fax: | Santa Rosa, CA 95407 |
| (707) 829-5942 | a. Name of Local Office Representative (include direct dial telephone number) / Nombre del Representante de la Oficina Local (Incluya el número de teléfono de su línea directa): |
| d) E-mail Address / Dirección de Correo Electrónico: | EDD Representative |
| steve@duttonranch.com | (707) 565-5550 |
| 2. Address and Directions to Work Site / Domicilio y Direcciones al lugar de trabajo: | 7. Clearance Order Issue Date / Fecha de Emisión de la Orden de Empleo: |
| Dutton Ranch is located at 10717 Graton Road, Sebastopol, CA, 95472 | 1/28/15 |
| located in Sonoma County.   See Addendum, Item 2 for | 8. Job Order Expiration Date / Fecha de Vencimiento o Expiración de la Orden de Empleo: |
| ranch and field              locations | 8/23/15 |
| | 9. Anticipated Period of Employment / Periodo anticipado o previsto de Empleo: |
| | From / Desde: 03/23/2015    To / Hasta: 01/23/2016 |
| | 10. Number of Workers Requested / Número de Trabajadores Solicitados: |
| | 85 |
| 3. Address and Directions to Housing / Domicilio y Direcciones al lugar de vivienda: | 11. Anticipated Hours of Work per Week / Horas Anticipadas/Previstas de Trabajo por Semana. Total: 40 |
| **Housing is provided at the Dutton Ranch location, 10717 Graton Road, Sebastopol, CA, 95472.** | Sunday / Domingo 0        Thursday / Jueves 8 Monday / Lunes 8        Friday / Viernes 8 Tuesday / Martes 8        Saturday / Sábado 0 Wednesday / Miércoles 8 |
| a)    Description of Housing / Descripción de la vivienda: | 12. Anticipated range of hours for different seasonal activities: / Rango previsto de horas por alas diferentes actividades de la temporada: |
| Housing consists of 3 dormitories with 94 beds. Housing has kitchen facilities with 2 stoves, 6 burners each, and 2 commercial refrigerators. Bathrooms have 2 sinks, 2 toilets, and 2 showers. The employer will offer housing, bedding (mattresses, blankets, sheets, pillows and pillow cases), storage for personal belongings, and utilities at no cost to workers recruited from beyond normal commuting distances who are unable to return to their place of residence on a daily basis. | 100% Wine Grapes and Apples   (see att.) |
| | 13. Collect Calls Accepted from: / Aceptan Llamadas por Cobrar de: |
| | Employer & Employer:  Yes ☒  No ☐ |
| See Addendum, Item 3 | RECEIVED JAN 2 2 2015 WSD |

14.  Describe how the employer intends to provide either 3 meals a day to each worker or furnish free and convenient cooking and kitchen facilities for workers to prepare meals / Describa cómo el empleador tiene la intención de ofrecer, ya sea 3 comidas al día a cada trabajador, o proporcionar gratuitamente instalaciones para cocinar.

Employer will furnish free and convenient cooking and kitchen facilities so workers may prepare their own meals. Kitchens, utilities and cooking and eating utensils will be provided at no cost to occupants of Employer-provided housing. Workers will purchase food at their own expense and prepare their own meals. Kitchen and eating facilities will be shared with other workers occupying the Employer-provided housing facilities. No kitchen facilities or meals are provided to workers not occupying Employer-provided housing.

15. Referral Instructions and Hiring Information / Instrucciones sobre cómo Referir Candidatos/Solicitantes – (Explain how applicants are to be hired or referred, and the Employer's/Agent's available hour to interview workers / Explique cómo los candidatos serán contratados o referidos, y las horas disponibles del empleador/agente para entrevistar a las trabajadoras). See Instructions for more details / Vea las instrucciones para más detalles.

Dutton Ranch Referral Contact: Steve Dutton: 10717 Graton Road, Sebastopol, CA 95472, (707) 823-0448. Contacts may be made by phone or in person on the following days Monday through Friday, between the hours of 8:00 a.m. to 1:00 p.m. Directions to our facilities are provided.

All U.S. workers applying for this job through the California EDD should provide a resume stating job experience. Resumes are reviewed and if applicant meets the experience and qualifications they will be given a start date. On the start date an orientation will be conducted and all employment forms filled out.

Documentation of identity and employment authorization (original documents only) sufficient to complete an I-9 Form, as required by the Immigration Reform and Control Act, must be in the possession of the worker at the time the worker reports for work and will be examined by the Company as a condition for completing the hiring process. Walk-in applicants whose pre-employment paperwork was completed at the time of hire must have a valid identity document when they report to work. No worker will be considered to have completed the hiring process, nor be permitted to start work, and/or occupy Company-provided housing, without completing (the pertinent sections of) an I-9 Form and presenting required documentation of identity and employment eligibility within the legally required time frames. Referring local offices should fully apprise workers of this requirement.

16. Job description and requirements / Descripción y requisitos del trabajo:

Agricultural Field Worker (Wine Grapes and Apples)

Work with apples and grapes through growing season. Tasks include pruning; suckering (removing the growth of a plant that produces new shoots at the base or below ground traveling out from the plant base); planting; training; shoot positioning; shoot thinning; leaf picking or pulling, land prepping; vineyard staking; irrigating; irrigation installations; erosion control; and harvesting apples and grapes. Agricultural work, including hoeing, tying vines, installing and removing apple props, and vineyard staking. Workers will use pruning shears, shovels for planting, hand hoes for hoeing, hands for picking, and knives for grape harvest. Workers may occasionally and/or sporadically perform duties associated with and directly related to field, ranch facilities, vineyard and orchard work including but not limited to packing apples and grapes, closing/stacking boxes in and around the field, ranch facilities, orchards and vineyards, and clean-up functions in and around the field, ranch facilities, orchards, and vineyards. Such work will be temporary and insubstantial agricultural labor.

See Addendum, item 16

1. Is previous work experience preferred? / Se prefiere previa experiencia? Yes / Si ☒  No ☐  If yes, number of months preferred: / Si es así, numero de meses de experiencia: 3 ___

2. Check all requirements that apply:       see attached

☐ Certification/License Requirements / Certificación/Licencia Requisitos
☐ Driver Requirements / Requisitos del conductor
☐ Employer Will Train / Empleador entrenará o adiestrará
☐ Extensive Sitting / Estar sentado largos ratos
☐ Exposure to Extreme Temp. / Expuesto a Temperaturas Extremas
☒ Lifting requirement / Levantar o Cargar 45 ___ lbs /libros
☐ Repetitive Movements / Movimientos repetitivos

☐ Criminal Background Check / Verificación de antecedentes penales
☐ Drug Screen / Detección de Drogas
☐ Extensive Pushing and Pulling / Empujar y Jalar Extensamente
☐ Extensive Walking / Caminar por largos ratos
☐ Frequent Stooping / Inclinándose o agachándose con frecuencia
☐ OT/Holiday is not mandatory / Horas Extras (sobre tiempo) / Dias Feriados no obligatorio

- 3 -

17. Wage Rates, Special Pay Information and Deductions / Tarifa de Pago, Información Sobre Pagos Especiales y Deducciones (Rebajas)

| Crop Activities | Hourly Wage | Piece Rate / Unit(s) | Special Pay (bonus, etc.) | Deductions* | Yes/Si | No | Pay Period / Periodo de Pago |
|---|---|---|---|---|---|---|---|
| Cultivos | Salario por Hora | Pago por Pieza / Unidad(es) | Pagos Especiales (Bono, etc.) | Deducciones | | | / / |
| Apple field wrk | $ 11.33 | $ N/A | N/A | Social Security / Seguro Social | ☒ | ☐ | Weekly / Semanal |
| Apple harvest | $ N/A | $ See Add#17 | N/A | Federal Tax / Impuestos Federales | ☒ | ☐ | ☒ |
| Wine grape vineyrd | $ 11.33 | $ N/A | N/A | State Tax /Impuestos Estatales | ☒ | ☐ | Bi-weekly/ Quincenal |
| labor | $ | $ | | Meals / Comidas | ☐ | ☒ | ☐ |
| Wine grape harvest | $ See Add#17 | $ See Add#17 | N/A | Other (specify) / Otro (especifico) | ☒ | ☐ | Monthly/Mensual |
| | | | | | | | ☐ |
| | | | | | | | Other/Otro |
| | | | | | | | ☐ |

18. More Details About the Pay / Mas Detalles Sobre el Pago:

**Workers will be paid not less than the higher of the AEWR (See Addend #17)**

19. Transportation Arrangements / Arreglos de Transportación

Employer will offer transportation at no cost to workers occupying company provided housing to the worksite and return on a daily basis. Such transportation will be in accordance with applicable laws and regulations. The use of this transportation is voluntary and workers are free to use their own transportation. No worker will be required, as a condition of employment, to utilize the transportation offered by the Employer. Housing is located on ranch sites and transportation on site is generally not required.

The following provisions pertaining to provision or reimbursement for inbound and return transportation and subsistence apply only to persons recruited from outside normal commuting distance.

For workers who complete 50 percent of the work period, the Employer will reimburse the worker for costs incurred by the worker for transportation and reasonable subsistence from the place from which the worker came to work for the Company to the place of employment which is the place of recruitment as defined above. Subsistence will be reimbursed at the rate of $11.58 per day without documentation and of actual expenditures, and at actual cost up to a maximum of $46.00 per day with documentation of actual expenditures. The amount of reimbursement for transportation shall be the worker's actual cost, but not more that the most economical and reasonable common carrier transportation charges for the distance involved.

The Employer may elect, at the Employer's sole discretion, to reimburse workers' inbound transportation and subsistence costs at an earlier time than set forth in the preceding paragraph, if the law requires.

If the worker completes the period of employment, the Employer will provide or pay for the worker's transportation and subsistence from the place of employment to the place from which the worker came to work for the Employer which is the place of recruitment as defined above. Return transportation will not be provided to workers who voluntarily abandon employment before the end of the employment period or who are terminated for cause. For the purposes of this paragraph, the "period of employment" shall be the period from the first workday the worker is at the Employer's worksite and is ready, willing, able and eligible to work, until the anticipated ending day of employment set for in Item 9 of this Clearance order, or until the services of the worker are no longer required, whichever come first.

- 4 -

20. Is it the prevailing practice to use Farm Labor Contractors (FLC) to recruit, supervise, transport, house, and/or pay workers for this (these) crop activity (ies)? / ¿Es la práctica habitual usar Contratistas de Trabajo Agrícola para reclutar, supervisar, transportar, dar vivienda, y/o pagarle a los trabajadores para esto(os) tipo(s) de cosecha(s)?    Yes / Sí  ☐    No ☒

If you have checked yes, what is the FLC wage for each activity? / Si contesto "Sí," cuál es el salario que le paga al Contratista de Trabajo Agrícola por cada actividad?

21. Are workers covered for Unemployment Insurance? / ¿Se le proporcionan Seguro de Desempleo a los trabajadores?    Yes/Sí ☒  No ☐

22. Are workers covered by workers' compensation? / ¿Se le provee seguro de compensación/indemnización al trabajador.    Yes/Sí ☒  No ☐

23. Are tools, supplies, and equipment provided at no charge to the workers? / ¿Se les proveen herramientas y equipos sin costo alguno a los trabajadores?    Yes/S ☒  No ☐

24. List any arrangements which have been made with establishment owners or agents for the payment of a commission or other benefits for sales made to workers. (If there are no such arrangements, enter "None".) / Enumera todos los acuerdos o convenios hechos con los propietarios del establecimiento o sus agentes para el pago de una comisión u otros beneficios por ventas hechas a los trabajadores. (Si no hay ningún acuerdo o convenio, indique "Ninguno".)

None

25. List any strike, work stoppage, slowdown, or interruption of operation by the employees at the place where the workers will be employed. (If there are no such incidents, enter "None".) / Enumere toda huelga, paro o interrupción de operaciones de trabajo por parte de los empleados en el lugar de empleo. (Si no hay incidentes de este tipo, indique "Ninguno".)

None

- 5 -

26. Is this job order to be placed in connection with a future Application for Temporary Employment Certification for H-2A workers? / ¿Esta orden de empleo ha sido puesta en conexión con una futura solicitud de certificación de empleo temporal para trabajadores H-2A?

Yes/Sí [X] No [ ]

27. Employer's Certification: This job order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job. / Certificación del Empleador: Esta orden de trabajo describe los términos y condiciones del empleo que se le ofrece, y contiene todos los términos y condiciones materiales ofrecidos.

**Steven Dutton, President**

Employer's Printed Name & Title / Nombre y Título en Letra de Molde/Imprenta del Empleador

Employer's Signature / Firma y Título del Empleador          Date / Fecha   1/20/15

READ CAREFULLY, In view of the statutorily established basic function of the Employment Service as a no-fee labor exchange, that is, as a forum for bringing together employers and job seekers, neither the Employment and Training Administration (ETA) nor the State agencies are guarantors of the accuracy or truthfulness of information contained on job orders submitted by employers. Nor does any job order accepted or recruited upon by the American Job Center constitute a contractual job offer to which the American Job Center, ETA or a State agency is in any way a party.

LEA CON CUIDADO, En vista de la función básica del Servicio de Empleo establecida por ley, como una entidad de intercambio laboral sin comisiones, es decir, como un foro para reunir a los empleadores y los solicitantes de empleo, ni ETA ni las agencias del estado pueden garantizar la exactitud o veracidad de la información contenida en las órdenes de trabajo sometidas por los empleadores. Ni ninguna orden de trabajo aceptado o contratado en el Centro de Carreras (American Job Center) constituyen una oferta de trabajo contractuales a las que el American Job Center, ETA o un organismo estatal es de ninguna manera una de las partes.

PUBLIC BURDEN STATEMENT
The public reporting burden for responding to ETA Form 790, which is required to obtain or retain benefits (44 USC 3501), is estimated to be approximately 60 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and reviewing the collection. The public need not respond to this collection of information unless it displays a currently valid OMB Control Number. This is public information and there is no expectation of confidentiality. Send comments regarding this burden estimate or any other aspect of this collection, including suggestions for reducing this burden, to the U.S. Department of Labor, Employment and Training Administration, Office of Workforce Investment, Room C-4510, 200 Constitution Avenue, NW, Washington, DC 20210.

DECLARACION DE CARGA PÚBLICA
La carga de información pública para responder a la Forma ETA 790, que se requiere para obtener u retener beneficios (44 USC 3501), se estima en aproximadamente 60 minutos por respuesta, incluyendo el tiempo para revisar las instrucciones, buscar fuentes de datos existentes, recopilar y revisar la colección. El público no tiene por qué responder a esta recopilación de información a menos que muestra un número de control OMB válido. Esta información es pública y no hay ninguna expectativa de confidencialidad. Envíe sus comentarios acerca de esta carga o cualquier otro aspecto de esta colección, incluyendo sugerencias para reducir esta carga, al U.S. Department of Labor, Employment and Training Administration, Office of Workforce Investment, Room C-4510, 200 Constitution Avenue, NW, Washington, DC 20210.

28.  Use this section to provide additional supporting information (including section Box number).  Include attachments, if necessary. / Utilice esta sección para proporcionar información adicional de apoyo; incluya el numero de la sección e incluya archivos adjuntos, si es necesario.

**See enclosed ETA-790 Addendum**

20 CFR 653.501
Assurances

### INTRASTATE AND INTERSTATE CLEARANCE ORDER

The employer agrees to provide to workers referred through the clearance system the number of hours of work per week cited in Item 10 of the clearance order for the week beginning with the anticipated date of need, unless the employer has amended the date of need at least 10 working days prior to the original date of need by so notifying the Order-Holding Office (OHO). If the employer fails to notify the OHO at least 10 working days prior to the original date of need, the employer shall pay eligible workers referred through the intrastate/interstate clearance system the specified hourly rate or pay, or in the absence of a specified hourly rate or pay, the higher of the Federal or State minimum wage rate for the first week starting with the original anticipated date of need. The employer may require workers to perform alternative work if the guarantee is invoked and if such alternative work is stated on the job order.

The employer agrees that no extension of employment beyond the period of employment shown on the job order will relieve the employer from paying the wages already earned, or specified in the job order as a term of employment, providing transportation or paying transportation expenses to the worker's home.

The employer assures that all working conditions comply with applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration and other employment-related laws.

The employer agrees to expeditiously notify the OHO or State agency by telephone immediately upon learning that a crop is maturing earlier or later, or that weather conditions, over recruitment, or other factors have changed the terms and conditions of employment.

The employer, if acting as a farm labor contractor, has a valid farm labor contractor registration certificate.

The employer assures the availability of no cost or public housing which meets applicable Federal and State standards and which is sufficient to house the specified number of workers requested through the clearance system.

The employer also assures that outreach workers shall have reasonable access to the workers in the conduct of outreach activities pursuant to 20 CFR 653.107.

Employer's Name     Steven Dutton, President                    Date: 1/24/15

Employer's Signature  _____

Besides the material terms and conditions of the employment, the employer must agree to these assurances if the job order is to be placed as part of the Agricultural Recruitment System. This assurance statement must be signed by the employer, and it must accompany the ETA Form 790.

ADDENDUM TO FORM ETA-790
AGRICULTURAL AND FOOD PROCESSING CLEARANCE ORDER

85 Agricultural Field Workers (Wine Grapes and Apples) (2015 Season)
Dutton Ranch Corporation
Sebastopol, CA
March 23, 2015 through January 23, 2016

Employer assures compliance with 20 CFR §653.501, 20 CFR §655.122 and assurances contained in 20 CFR §655.135[1]. The working conditions will comply with applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration and other employment-related laws. The employer is an Equal Employment Opportunity employer and will offer U. S workers at least the same opportunities, wages, benefits, and working conditions as those which the employer offers or intends to offer to non-immigrant workers.

This Clearance Order describes the actual terms and conditions of the employment being offered by Dutton Ranch Corporation, and contains all the material terms and conditions of employment for the job opportunities offered through this Clearance Order.

Item 2 - Location and Directions to Work Site

Dutton Ranch is a fixed-site grower which owns and controls its work sites and all agricultural commodities produced at such sites. **Dutton Ranch also operates as a Farm Labor Contractor for specific work sites owned and operated by third parties but which are located adjacent to its fields and orchards.**

Work will be performed at the following locations:

Dutton Ranch is located at 10717 Graton Road, Sebastopol, CA, 95472, located in Sonoma County.

**Ranch and Field Locations:**

ALPER, OTTIMINO VYDS (un lau de Morelli Stakes Grande): 4730 Stoetz Lane, Sebastopol
BATEMAN, PAUL (Abajo de Jorge): 10610 Mill Station Road, Sebastopol
DNA VINEYARDS: 2849 Laguna Road, Santa Rosa
DUTTON BENEFIEL (rancho de shorty): 2001 Coffee Lane, Sebastopol
DUTTON BEST (Molino): 2065 Gravenstein Hwy. No., Sebastopol
DUTTON BILLY GREGORI: 10511 Occidental Road, Sebastopol
DUTTON BOLAND/CARROLL (Manzana de Millstation): 8260 Mill Station Road, Sebastopol
DUTTON BRAUGHTON (casa de Martha): 5455 Vine Hill Road, Sebastopol

---

[1] If there are any discrepancies between the new ETA Form 790 and H-2A regulations or related laws, the H-2A regulations and related laws control.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 2 of 16


DUTTON BUSH: 10560 Upp Road, Sebastopol
DUTTON CARR, BETTY: 4528 Gravenstein Hwy No, Sebastopol
DUTTON CHAPUT, MARC: 5730 Ross Branch Rd, Forestville
DUTTON CLEARY(rancho de Freestone): 990 Scott Robin Way, Freestone
DUTTON COHEN (doctor de Dupont): 13298 Dupont Road, Sebastopol
DUTTON CONGER (un loa de Shorty): 1947 Coffee Lane, Sebastopol
DUTTON COON (laguna): 1881 Laguna Road, Santa Rosa
DUTTON CORDOZA: 7890 Barcagalia Lane, Sebastopol
DUTTON DAVIDSON (rancho de viejito de joe): 10380 Graton Road, Sebastopol
DUTTON DONOHOE(Manzana de vinehill): 4708 Vine Hill Road, Sebastopol
DUTTON DURYEE: 1800 Barlow Lane, Sebastopol
DUTTON FRASIER-ESPINOSA (aeropuerto): 3970/3990 Laughlin Road, Windsor
DUTTON FREI: 3350 Frei Road, Sebastopol
DUTTON GEORGE: 10330 Graton Rd, Sebastopol
DUTTON GERBOTH (de barlow): 1899 Barlow Lane, Sebastopol
DUTTON GERMONE: 8100 Germone Rd., Sebastopol
DUTTON GRAVENSTEIN HWY (Scott): 1386 Gravenstein Hwy No., Sebastopol
DUTTON GREGORI (rancho de peras): 5005 Thomas Road, Sebastopol
DUTTON HALLBERG (Graton): 8611 Oak Grove Ave, Sebastopol
DUTTON HARMONY FARM (tienda de tubos): 3244 Highway 116, Sebastopol
DUTTON HILL (casa de Steven): 11051 Upp Road, Sebastopol
DUTTON JENTOFT: 11701 Occidental Rd., Sebastopol
DUTTON JEWELL: 2740/2760/2860 Sullivan Road, Sebastopol
DUTTON JIMMY GREGORI: 10751 Occidental Road, Sebastopol
DUTTON JOHN GREGORI (Rancho de Juan Gregori): 10581 Occidental Road, Sebastopol
DUTTON JOHNNY GREGORI: 10465 Mill Station Road, Sebastopol
DUTTON LORENZO: 5400 Gravenstein Hwy, Sebastopol
DUTTON MARSHALL (Rancho de Johnny de Millstation): 10191 Mill Station Road, Sebastopol
DUTTON MARTEN: 1791 Green Hill Road, Sebastopol
DUTTON MARTY GREGORI #1 (Martin Ariba): 10850 Green Valley Road, Sebastopol
DUTTON MENGLE (hermana de Pablo): 11300 Graton Road, Sebastopol
DUTTON MILLER (Silva de Garages): 10020 Cherry Ridge, Sebastopol
DUTTON MILLSTATION VINEYARDS: 8745 Poplar Way, Sebastopol
DUTTON MORELLI: 14640 Morelli Lane, Sebastopol
DUTTON O'CONNELL RANCHES: 3601 Vine Hill Road, Sebastopol
DUTTON PERRY: 4225 Green Valley Road, Sebastopol
DUTTON ROSS RANCH (sequatas de Daryl): 1575/1455 Pleasant Hill Road, Sebastopol
DUTTON RUED (rancho de Pablo): 11062 Graton Road, Sebastopol
DUTTON SEBASTOPOL VINEYARDS (116): 8757 Green Valley Road, Sebastopol
DUTTON SHOP (garage): 10717 Graton Road, Sebastopol

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 3 of 16


DUTTON SILVA (Silva de Ariba): 1365 Grandview Road, Sebastopol
DUTTON STILLMAN: 1905 Green Hill Road, Sebastopol
DUTTON STUPPIN (un lao de Aleman): 2162 Coffee Lane, Sebastopol
DUTTON SULLIVAN (cementerio): 3003 Sullivan Road, Sebastopol
DUTTON SUMMERHOME PARK (Rancho Haciendas): 11453 River Rd, Forestville
DUTTON TLC (Orfanatorio): 1800 Gravenstein Hwy No, Sebastopol
DUTTON TRIPLE JS: 10905 Graton Road, Sebastopol
DUTTON WALKER (un lado de Torres): 11480 Graton Road, Sebastopol
DUTTON WIDDOES (casa de Shirley): 3515 Sullivan Road, Sebastopol
DUTTON WINKLER (rancho de Wallace): 4300 Ross Road, Sebastopol
EVERY, PAUL (Suegro de Joe): 2880 Piner Road, Santa Rosa
GALANTE, DR. (Silva de Galnate): 10000 Cherry Ridge, Sebastopol
GREEN HILLS MGMT (Pellini): 10025 Cherry Ridge Road, Sebastopol
JAMES, JEFF (Rancho de Cotati): 6861 Grove St, Cotati
KILCULLEN FAMILY VINEYARDS (coffee lane): 1890 Coffee Lane, Sebastopol
KNECHT, GERALD (un loa de Germone): 8237 Germone Road, Sebastopol
KOZLOWSKI FAMILY VINEYARDS: 5566 Gravenstein Hwy No., Forestville
LYNCH, PETER: 1906 Coffee Lane, Sebastopol
RICH WORNER (casa roja): 9998 Graton Road, Sebastopol
RIDDLE, JIM (Morelli Lane): 5000 Stoetz Lane, Sebastopol
ROAN: 11275 Green Valley Rd., Sebastopol
RUSSIAN HILL /SUNNY VIEW (rancho de Guerneville): 3245 Guerneville Road,
Santa Rosa
RUSSIAN HILL ESTATES (RHEW) (casa blanca): 4525 Slusser Road, Windsor
RUXTON, GEORGE: 6005 Stoez Lane, Sebastopol
SONOMA AG ART ( Coffey Lane): 3882 Coffey Lane, Santa Rosa
SONOMA AG ART (Catie's Corner): 1998 Jones Rd, Windsor
SONOMA AG ART (Matthew's Station): 500 Mark West Station Rd, Windsor
TALAWIND HOLDINGS, LL.C.: 4677 Slusser Road, Windsor
WAT, KATHY: 1025 Gold Ridge Road, Sebastopol


Directions:
US Hwy 101 North to CA Hwy 116 West to Graton Road, Left on Graton Road, 3 miles
to Ranch facilities.


Itinerary:

Due to the proximity of vineyard sites, the Employer will be working at all locations
simultaneously throughout the contract period: March 23, 2015, through January 23,
2016.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 4 of 16

### Item 3 - Location and Description of Employer-Provided Housing

Housing is provided at the Dutton Ranch location, 10717 Graton Road, Sebastopol, CA, 95472.

Housing consists of 3 dormitories with 94 beds. Housing has kitchen facilities with 2 stoves, 6 burners each, and 2 commercial refrigerators. Bathrooms have 2 sinks, 2 toilets, and 2 showers. The employer will offer housing, bedding (mattresses, blankets, sheets, pillows and pillow cases), storage for personal belongings, and utilities at no cost to workers recruited from beyond normal commuting distances who are unable to return to their place of residence on a daily basis.

Housing is offered to workers only. No housing will be provided to non-workers. Employer-provided housing will be clean and in compliance with applicable housing standards when made available for occupancy, and will be maintained in compliance with applicable standards during the period of occupancy. The Employer assures that all rental and/or public accommodations will be clean and meet applicable local, State or Federal Standards. Workers occupying employer-provided housing will be responsible for maintaining their living areas in a neat, clean manner and in compliance with the employer's "Housing Complex Rules", a copy of which will be provided upon assignment to housing. Specifically, workers must maintain housing in the same conditions as provided by the employer at the time of initial occupancy (i.e., beds may not be moved closer together; mattresses may not be moved onto the floor).

Reasonable repair cost of damage, other than that caused by normal wear and tear, will be deducted from the earnings of workers found to have been responsible for damage to housing or furnishings. If both male and female workers are hired, separate toilet, shower facilities, and sleeping rooms, will be provided by the employer. Common areas of the housing may be shared with male workers.

Family Housing:

As provided by the regulation, housing is to be provided to families who request it and only if it is the prevailing practice in the area of intended employment. It is not the practice in Sonoma County to provide family housing.

Workers may be reached at the following address and phone numbers:

ADDRESS:  10717 Graton Road, Sebastopol, CA, 95472.
PHONE:     (707) 823-0448

The following provisions apply to workers occupying employer-provided housing:

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 5 of 16

Workers eligible for employer-provided housing may elect to provide their own housing at the worker's expense. Such election must be in writing. The employer assumes no responsibility whatsoever for housing arranged by workers on their own. The employer will not provide a housing allowance or assistance to workers eligible for employer-provided housing who elect to provide their own housing. Workers who elect to provide their own housing will not be offered daily transportation to and from the work site and transportation to and from shopping facilities, and must provide or arrange their own transportation.

Workers eligible for employer-provided housing who elect to provide their own housing may withdraw such election at any time during the period of employment, and upon doing so will be provided housing by the employer as set forth in this Clearance Order. A worker who elects to provide his or her own housing and subsequently withdraws such election may not again elect to provide his or her own housing during the same employment season.

No tenancy in employer-provided housing is created by the offer of employer-provided housing. The employer retains possession and control of the housing premises at all times. Workers housed under the terms of this Clearance Order shall vacate the housing promptly upon termination of employment.

## Item 11 - Anticipated Work Hours

The anticipated work week is an average of 40 hours unless Acts of God or labor disputes make such a work week impracticable. The normal work week is 8 hours per day, Monday through Friday, 7:00 a.m. to 3:30 p.m. The worker may be requested, but not required, to work on Saturdays and/or on Sundays depending upon the conditions in the fields or orchards, weather and maturity of the crop. Lunch breaks are 30 minutes (unpaid) with two (2) paid 10 minute breaks a day.

This is regular, full-time work for a temporary period of time requiring the worker to be available for work on a daily basis. This is not "day work". Excessive tardiness and/or absences will not be tolerated and will result in disciplinary action.

All workers not occupying employer-provided housing must provide the employer with contact information before the worker commences employment.    This contact information will be used to notify the worker not to report to work due to inclement weather or when work is not available or to notify the worker of any change in the worker's daily work schedule, or for any other reason.

**First Work Week Guarantee:** The Company will provide United States workers referred through this Clearance Order with 40 hours of work for the week beginning with the anticipated starting date of employment set forth in Item 9 (ETA-790 Form) unless

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 6 of 16

the employer amends the date of need in accordance with 20 CFR §653.501 (d) (2) (v). If the worker fails to confirm the starting date of employment with the order-holding office between 5 and 9 working days before the date of need set forth in Item 9 (ETA-790 Form), the worker will be disqualified from this assurance. For the purposes of this guarantee, a workday shall mean 8 hours Monday through Friday, and shall exclude Saturday, Sunday and Federal holidays. The pay rate for purposes of the First Work Week Guarantee will be $11.33 per hour.

The employer may require the worker to perform alternative work if this guarantee is invoked. Alternative work will include any available general farm work. If the worker fails to confirm the starting date of employment with the order-holding office between 9 and 5 working days before the date of need set forth in Item 9, the worker will be disqualified from this assurance.

¾ Guarantee: Employer guarantees to offer employment for a minimum of ¾ of the hours and workdays of the total specified period during which the work contract and all extensions thereof are in effect, beginning with the first day after a worker arrives at the place of employment and ending on the expiration date specified in the work contract or extensions thereof. Employer is not liable for payment of the ¾ guarantee to H-2A workers if the H-2A worker is displaced due to the employer's requirement to hire qualified and available U.S. workers during the recruitment period set out in 20 CFR 655. 135(d) (50 percent rule).

If the employer fails to provide the worker with the amount of work required under this guarantee, the employer will pay the worker the amount the worker would have earned had the worker worked for the guaranteed number of work hours. In determining whether this guarantee of employment has been met, the employer will count all hours of work actually performed (including hours over 8 in a day voluntarily worked, and hours voluntarily worked on Sunday and/or Federal holidays), and any hours of work offered which the worker fails to work, up to a maximum of 8 hours on Monday through Friday, provided such hours offered and not worked are shown on the worker's paystub.

If the worker voluntarily abandons employment before the end of the period of employment set forth in Item 9 (ETA-790 Form), or is terminated for cause, the worker is not entitled to the guarantee set forth above. The hourly rate for purposes of the ¾ guarantee is $11.33/hr.

Abandonment of Employment or Termination for Cause: If a worker voluntarily abandons employment before the end of the contract period, or is terminated for cause, employer will notify the DOL and, if applicable, the DHS, in writing not later than 2 working days after termination. Employees will be deemed to have abandoned the contract regardless of any express termination for cause, if such employee fails to show up for work at the assigned time and place for 5 consecutive work days. When employer

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 7 of 16

timely complies with the notice requirement, employer is not responsible for paying for the worker's return transportation or subsistence to and the worker is not entitled to the ¾ guarantee.

**Contract of Impossibility**: If, before the ending date of the period of employment set forth in Item 9, the services of the worker are no longer required for reasons beyond the control of the Employer, due to fire, weather, or other Act of God that makes the fulfillment of the anticipated period of employment impossible, the Company may terminate the worker's employment.   Whether such an event constitutes a contract impossibility will be determined by the CO.   In the event of such termination, the Company will fulfill the above ¾ guarantee for the period that has elapsed from the first workday the worker is at the Company's place of employment and is ready, willing, able, and is eligible to work, until the date employment is terminated.   The Employer also assures that it will make efforts to transfer the worker to other comparable employment acceptable to the worker and, where applicable, consistent with existing immigration laws.

In situations where a transfer is not affected, the Company will: 1) offer to return the worker at the Company's expense, to the place from which the worker, disregarding intervening employment, came to work for the Company, or 2) transfer the worker to the worker's next certified H-2A employer, whichever the worker prefers; and 3) reimburse the worker the full amount of any deductions made from the worker's pay by the employer for transportation and subsistence expenses to the place of employment (if such deductions exist, if reimbursement has not yet been made, or if the employer did not advance such payments).  The employer will also ensure that workers are paid for any inbound transportation and subsistence costs if such workers have not yet been reimbursed or if the employer has not advanced such costs.  Reimbursement for daily subsistence and transportation are $11.58 per day and up to $46.00 a day with receipts under the same terms as Item 19 of this clearance order.

Throughout this contract, for purposes of inbound and outbound transportation and subsistence reimbursement, for H-2A workers, the place from which the worker came to work for the Employer are the designated places of recruitment: Tijuana, Baja California, Mexico.  The recruitment location for reimbursement is based on where the applicant applied for and interviewed for the H-2A job opportunity.  For U.S. workers who reside outside a reasonable commute distance, the place of recruitment is also where the applicant applied for and interviewed for the H-2A job opportunity.

**Item 14 - Board Arrangements**

Employer will furnish free and convenient cooking and kitchen facilities so workers may prepare their own meals.  Kitchens, utilities and cooking and eating utensils will be provided at no cost to occupants of Employer-provided housing.  Workers will purchase

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 8 of 16

food at their own expense and prepare their own meals. Kitchen and eating facilities will
be shared with other workers occupying the Employer-provided housing facilities. No
kitchen facilities or meals are provided to workers not occupying Employer-provided
housing.

**Item 15 - Referral Instructions**

Dutton Ranch Referral Contact: Steve Dutton: 10717 Graton Road, Sebastopol, CA
95472, (707) 823-0448. Contacts may be made by phone or in person on the following
days Monday through Friday, between the hours of 8:00 a.m. to 1:00 p.m. Directions to
our facilities are provided.

All U.S. workers applying for this job through the California EDD should provide a
resume stating job experience. Resumes are reviewed and if applicant meets the
experience and qualifications they will be given a start date. On the start date an
orientation will be conducted and all employment forms filled out.

Documentation of identity and employment authorization (original documents only)
sufficient to complete an I-9 Form, as required by the Immigration Reform and Control
Act, must be in the possession of the worker at the time the worker reports for work and
will be examined by the Company as a condition for completing the hiring process.
Walk-in applicants whose pre-employment paperwork was completed at the time of hire
must have a valid identity document when they report to work. No worker will be
considered to have completed the hiring process, nor be permitted to start work, and/or
occupy Company-provided housing, without completing (the pertinent sections of) an I-9
Form and presenting required documentation of identity and employment eligibility
within the legally required time frames. Referring local offices should fully apprise
workers of this requirement.

**Artículo 15 - Instrucciones de Referidos**

El contacto de referencia de Dutton Ranch: Steve Dutton, 10717 Graton Road,
Sebastopol, CA 95472, (707)823-0448. El contacto deberá ser por teléfono o en persona
durante los siguientes días Lunes a Viernes, entre 8:00 a.m. a 1:00 p.m. Se proporciona
direcciones a las instalaciones.

Todos los trabajadores de los Estados Unidos que apliquen para este trabajo a través de la
oficina estatal de trabajo (California EDD) deberán proporcionar un currículum vitae
(CV) indicando la experiencia laboral. El CV será revisado y si el solicitante cumple con
la experiencia y los requisitos se les dará una fecha de inicio. En la fecha de inicio una
orientación se llevará a cabo y todas las formas de empleo serán llenadas.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 9 of 16

La documentación de identidad y autorización de empleo (solo documentos originales) suficientes para completar un formulario I-9, como es requerido por la Declaración de Reforma y Control de Inmigración, debe de estar en posesión del trabajador en el momento que el trabajador se reporte para trabajar y será examinado por la Compañía como una condición para completar el proceso de empleo. Los aspirantes no convocados cuya documentación de pre-empleo fue completada al momento de empleo deben de tener un documento válido de identidad cuando se reporten a trabajar. No se considerará que un trabajador ha completado el proceso de empleo, ni se le permitirá empezar a trabajar, ni ocupará vivienda proveída por el empleador, sin completar (las secciones pertinentes de) un Formulario I-9 y presentando la documentación requerida de identidad y elegibilidad de empleo dentro el periodo requerido por ley. Las oficinas locales de Referencias deberán de informar completamente a los trabajadores de este requisito.

Item 16 – Job Specifications

Agricultural Field Worker (Wine Grapes and Apples)

Work with apples and grapes through growing season. Tasks include pruning; suckering (removing the growth of a plant that produces new shoots at the base or below ground traveling out from the plant base); planting; training; shoot positioning; shoot thinning; shoot trimming; leaf picking or pulling, land prepping; vineyard staking; irrigating; irrigation installations; erosion control; and harvesting apples and grapes. Agricultural work, including hoeing, tying vines, installing and removing apple props, and vineyard staking. Workers will use pruning shears, shovels for planting, hand hoes for hoeing, hands for picking, and knives for grape harvest. Workers may occasionally and/or sporadically perform duties associated with and directly related to field, ranch facilities, vineyard and orchard work including but not limited to packing apples and grapes, closing/stacking boxes in and around the field, ranch facilities, orchards and vineyards, and clean-up functions in and around the field, ranch facilities, orchards, and vineyards. Such work will be temporary and insubstantial agricultural labor.

Must have 3 months work experience with wine grapes and apples in vineyards and orchards including pre-harvest and harvest apple work and pre-harvest grape growing work as defined in this application. Workers must be able to lift 45 lbs frequently. Workers must be able to climb ladders holding bags for harvesting apples. No smoking allowed in the fields or dormitories, cannot be color blind due to the need to distinguish colors of crops, able to use shears and other agricultural tools, conditions of housing include no smoking, illegal drugs (no use of marijuana), alcohol, or weapons of any sort in the dormitories.

Work is performed outdoors in open fields and can involve exposure to sun, wind, mud, dust, heat, cold and other elements of the normal field environment. Temperatures can range from 20 degrees F to over 100 degrees F during the period of employment.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 10 of 16

Workers should come prepared with appropriate clothing and footwear for the work and
working conditions described.

This work may entail exposure to plant pollens, insects and noxious plants, and to fields
and plant materials which have been treated with insect and/or disease control sprays.
The employer will comply with all worker protection standards and re-entry restrictions
applicable to pesticides and other chemicals used in the fields. Workers are also required
to comply with all applicable worker protection standards and re-entry times. Workers
must listen to, understand and follow instructions of company supervisors and managers.

Workers are expected to assist in maintaining work areas and company property in a neat
and clean condition by not littering. Lunch must be eaten in the assigned area(s) away
from the employee's work site.

Workers will be expected to comply with all provisions of this Clearance Order and the
employer's work rules policies and procedures, and to perform any and all assigned tasks
in a workmanlike and efficient manner. Failure to do so will subject the worker to the
employer's disciplinary procedures.

All safety rules and instructions must be meticulously observed throughout the work day.
All Dutton Ranch rules, policies and procedures must be followed, to the extent that they
do not conflict with the provisions of this Clearance Order and/or the U.S. Department of
Labor's H-2A regulations. A copy of the applicable rules, policies and procedures will
be provided to each worker on or before the first day of work. Failure to comply with
Company policies and/or meet expectations will result in application of specified
disciplinary procedures, up to and including termination.

Employees must not report for work, enter the work site or perform service while under
the influence of or having used alcohol, marijuana, or any illegal controlled substance.
Employees must not report for work, or perform service, while under the influence of, or
impaired by, prescription drugs, medications or other substances that may in any way
adversely affect their alertness, coordination, reaction response or safety. The employer
may require the worker to submit to a drug test at the employer's expense upon the
occurrence of a reportable accident or upon reasonable suspicion.

Artículo 16 – Especificaciones Del Trabajo

Trabajador Agrícola del Campo (Uva de Vino y Manzanas)

Trabaja como miembro de equipo llevando a cabo tareas complejas que requieren juicio
limitado. Los trabajadores podrán en ocasiones y/o esporádicamente llevar a cabo
deberes asociados con y directamente relacionados con trabajo del campo, instalaciones
del rancho, viñedo y huerto incluyendo pero no limitado al empaque de manzanas y uvas,

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 11 of 16

sellando/amontonando cajas en y alrededor del campo, instalaciones del rancho, viñedos y huertos, funciones de limpieza en y alrededor del campo, instalaciones del rancho, viñedos y huertos. Dicho trabajo será labor agrícola temporal e insustancial.

Trabajar con manzanas y uvas durante la temporada de crecimiento. Las tareas incluyen podar; quitar el crecimiento de una planta que produce el brote en la base o bajo tierra saliendo de la base de la planta (chupon); sembrar; entrenar; colocación de brote; disminuir el brote; recorte del brote; recoger hojas; preparar; estacar el viñedo; riego; instalaciones de riego; control de erosión; y cosecha de manzanas y uvas. Trabajo agrícola, incluyendo azadonar, atando viñas, instalando y quitando accesorios de manzanas, estacar el viñedo, sacar la hojas. Los trabajadores usaran tijeras podadoras, palas para sembrar, las manos para recoger, y cuchillos para la cosecha de uva.

Debe tener experiencia de 3 meses de trabajo con las uvas de vino y manzanas en viñedos y frutales, incluyendo pre-cosecha y el trabajo de la cosecha de manzana y el trabajo de pre-cosecha de cultivo de uva como se define en esta aplicación. Los trabajadores deberán tener la habilidad de levantar 45 libras frecuentemente. Los trabajadores deberán subir escaleras mientras que detienen bolsas para cosechar manzanas. Se prohíbe fumar en los campos o dormitorios, no podrá padecer de daltonismo debido a que el trabajador deberá distinguir los colores de la cosecha, tener la habilidad de usar tijeras podadoras y otras herramientas, las condiciones de la vivienda incluyen el no fumar, no usar substancias ilegales (uso de marijuana), bebidas embriagantes o cualquier tipo de armas en los dormitorios.

El trabajo se lleva a cabo al aire libre en los campos abiertos y podrá involucrar la exposición al sol, vientos, lodo, polvo, calor, frío y otros elementos del ambiente normal del campo. Las temperaturas podrán variar de 20 grados Fahrenheit hasta 100 grados Fahrenheit durante el periodo de empleo. Los trabajadores deberán llegar preparados con la ropa apropiada y el calzado para las condiciones de trabajo descritas.

Este trabajo podrá implicar la exposición a polen de plantas, insectos, plantas nocivas y/o materiales de plantas que han sido tratados con aerosoles para controlar insectos y enfermedades. El empleador cumplirá con todos los estándares de protecciones al trabajador y la re-entrada de restricciones aplicables a las pesticidas y otros químicos utilizados en el campo. Los trabajadores también serán requeridos en cumplir con todos los estándares de protección al trabajador y tiempos de re-entrada. Los trabajadores deberán escuchar, comprender y seguir las instrucciones de los supervisores de la compañía y los gerentes.

Se espera que los trabajadores mantengan las áreas de trabajo y la propiedad de la compañía en una manera limpia y ordenada al no tirar basura. La comida se deberá comer el las áreas asignadas lejos de las estaciones de trabajo.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 12 of 16

Se espera que los trabajadores cumplan con todas las provisiones de esta Orden de Autorización y de las políticas y reglamentos del trabajo, y deberán llevar a cabo todas las tareas asignadas en una manera eficiente. El no hacerlo sujetara al trabajador a los procedimientos disciplinarios de trabajo.

Todas las reglas e instrucciones de seguridad se tienen que observar de una forma meticulosa durante el día laboral. Todas las reglas y políticas de Dutton Ranch se tienen que seguir, hasta el punto que no interfiera con las provisiones de esta Orden de Autorización y/o los reglamentos H-2A del Departamento de Trabajo de los Estados Unidos. Una copia de las reglas y políticas aplicables se proporcionará a cada trabajador antes de o en el primer día del trabajo. El no cumplir con las políticas de la compañía y/o las expectativas resultará en la aplicación de procedimientos disciplinarios, hasta e incluyendo la terminación del empleo.

Los empleados no pueden reportarse a trabajar, ni entrar al sitio de trabajo, ni realizar funciones de trabajo mientras estén bajo la influencia del alcohol, marihuana, o cualquier otra sustancia controlada ilegal. Los empleados no deben de reportarse para trabajar, ni realizar funciones de trabajo mientras estén bajo de la influencia de drogas recetadas, medicamentos u otras sustancias que podrían afectar de cualquier forma su vigilancia, coordinación, reacción, o seguridad. El empleador poda requerir del empleado hacerse una prueba de drogas al gasto del empleador en el caso de un accidente que se pueda reportar, o en el caso de la sospecha razonable.

## Item 17– Wage Rates, Special Pay Information and Deductions

**Offered Wage:** Workers will be paid not less than the higher of the AEWR in effect at the time work is performed, the prevailing hourly wage or piece rate, the agreed upon collective bargaining wage, or the Federal or State minimum wage for all hours worked. Employer will pay workers no less than the hourly AEWR of $11.33 when working with apples. Apple harvest is at a piece rate of $20.00 to $35.00 per 1000-lb bin. Employer will pay the hourly rate of $11.33 per hour for wine grape vineyard labor work (non-harvest) and a piece rate for wine grape harvest at a rate of $2.00 per 35-lb picking tray per person for wine grapes but no less than the prevailing hourly rate of $12.00/hr. Employer assures that the required wage rate will be paid at the time that the work is performed. Employer may pay a lower AEWR or prevailing hourly or piece rate as long as such rate remains the highest of the above rates at the time that the work is performed.

If the prevailing wage (hourly or piece rate) increases during the contract period, the employer will pay any higher rate after written notice is received from the Department of Labor. Notice can be in the form of a written letter or publication in the Federal Register.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 13 of 16

**Overtime:** Employer will abide by the California overtime rules for agricultural workers working in California (i.e. 150% of the hourly wage rate after 10 hours of work per day or 60 hours per week).

**Incentives:** The employer will not pay workers a bonus.

**Deductions:** The following deductions will be made from the worker's pay; FICA (if applicable); federal income tax withholding (if applicable); state and/or local tax withholding (if applicable); recovery of any loss to the Company due to damage or loss of equipment; housing or furnishings (beyond normal wear and tear) caused by the worker (if any); deductions expressly authorized by the worker in writing (i.e. advances or loan repayments, if any); mandatory sick leave (automatic 3 days sick leave at start of employment) as of July 1, 2015; and medical benefits under ACA, if applicable. No deductions except those required or permitted by law will be made which bring the worker's earnings for any pay period below the applicable statutory federal or state minimum wage.

**Pay Periods, Earnings Records and Workers Compensation:** Payroll Periods will be weekly. Workers will be paid on Saturdays. Paychecks will be given directly to the worker, if still in the employment of the employer, or mailed to the address on the worker's employment application or any more recent change of address notification provided by the worker. Photo identification may be required to receive a paycheck. In the event it is necessary for someone other than the worker to pick up the worker's paycheck, an authorization form signed by the worker and approved by the worker's supervisor must be in the possession of the employer.

The employer will furnish to the worker on each payday a written statement with the following information, pursuant to 20 CFR sec. 655.122(k):

1. The workers total earnings for the pay period;
2. The workers hourly rate and/or piece rate of pay;
3. The hours of employment offered to the worker (showing offers in accordance with the Three-fourths guarantee as determined in paragraph (i) of this section, separate from any hours offered over and above the guarantee);
4. The hours actually worked by the worker;
5. An itemization of all deductions made from the worker's wages;
6. If piece rates are used, the units produced daily;
7. Beginning and ending dates of the pay period; and
8. The employers name, address, and FEIN.

Employer assures that the earnings records required to be retained in its files will be made available for inspection as set out in 20 CFR 655.122(j)(2).

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 14 of 16

All employees are covered by workers compensation insurance in accordance with
California law. This insurance provides payment of medical benefits and time loss
payments to a worker who is accidentally injured on the job.

**Item 19 – Transportation Arrangements**

Employer will offer transportation at no cost to workers occupying company provided
housing to the worksite and return on a daily basis. Such transportation will be in
accordance with applicable laws and regulations. The use of this transportation is
voluntary and workers are free to use their own transportation. No worker will be
required, as a condition of employment, to utilize the transportation offered by the
Employer. Housing is located on ranch sites and transportation on site is generally not
required.

The following provisions pertaining to provision or reimbursement for inbound and
return transportation and subsistence apply only to persons recruited from outside normal
commuting distance.

For workers who complete 50 percent of the work period, the Employer will reimburse
the worker for costs incurred by the worker for transportation and reasonable subsistence
from the place from which the worker came to work for the Company to the place of
employment which is the place of recruitment as defined above. Subsistence will be
reimbursed at the rate of $11.58 per day without documentation and of actual
expenditures, and at actual cost up to a maximum of $46.00 per day with documentation
of actual expenditures. The amount of reimbursement for transportation shall be the
worker's actual cost, but not more that the most economical and reasonable common
carrier transportation charges for the distance involved.

The Employer may elect, at the Employer's sole discretion, to reimburse workers'
inbound transportation and subsistence costs at an earlier time than set forth in the
preceding paragraph, if the law requires.

If the worker completes the period of employment, the Employer will provide or pay for
the worker's transportation and subsistence from the place of employment to the place
from which the worker came to work for the Employer which is the place of recruitment
as defined above. Return transportation will not be provided to workers who voluntarily
abandon employment before the end of the employment period or who are terminated for
cause. For the purposes of this paragraph, the "period of employment" shall be the
period from the first workday the worker is at the Employer's worksite and is ready,
willing, able and eligible to work, until the anticipated ending day of employment set for
in Item 9 of this Clearance order, or until the services of the worker are no longer
required, whichever come first.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 15 of 16

**Other Clarifications and Assurances**

**TERMINATIONS:** The employer may terminate the worker with notification to the Employment Service if the worker: (a) refuses without justified cause to perform work for which the worker was recruited and hired; (b) commits serious acts of misconduct or fails to follow company rules set forth in the Employee Handbook; or (c) fails, after completing any training or break-in period, to reach productions standards when production standards are applicable. Workers who fail to properly perform the job duties after a reasonable period of on-the-job training may be terminated for cause.

**Termination for Medical Reasons:** In the event of termination for medical reasons occurring after the arrival on the job, or occurring as a result of employment, or in the event of termination resulting from an Act of God, the employer will pay or provide reasonable costs of return transportation and subsistence to the place where the worker departed to the employer's place of employment. For H-2A workers coming from outside the United States, the law defines the place from where the worker departed to the employer's place of employment as the place of recruitment. Additionally, the employer will reimburse worker for reasonable costs of transportation and subsistence incurred by the worker to get to the place of employment.

**EMPLOYER FURNISHED TOOLS AND EQUIPMENT:** The employer will furnish, without cost, all tools, supplies, or equipment required in the performance of work.

**TRAINING:** The employer will provide a 1-day training session from each worker's initial date of employment and workers will be allowed 7 days (break-in period) from the initial date of employment to reach the production standards of the activity.

**PRODUCTION STANDARDS:** After completion of the training (1 day) and break-in period (7 days), workers will be expected to meet the following production standards: Each worker will be required to work at a normal work pace and keep up with the rest of the crew (85-90% effort level). Specifically, workers are expected to pick approximately 7-8 (seven to eight) 35-lb trays of grapes in one hour; workers are expected to pick 1 bin an hour for apples. Production standards are not greater than the first year that Employer entered into the H-2A program and are in accordance with prevailing practices in the geographic area for similarly employed individuals.

Workers will be notified and can be terminated for failure to meet production standards after the training period.

**INJURIES:** The employer will provide Workers Compensation Insurance or equivalent employer provided insurance, at no cost to the worker, covering injury and disease arising out of, and in the course of, the worker's employment. Employer's proof of

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 16 of 16

insurance coverage will be provided to the ETA field office before certification is granted.

**EMPLOYER OBLIGATION IF EMPLOYMENT EXTENDED:** No extension of employment beyond the period of employment specified in the job order shall relieve the employer from paying the wages already earned, or, if specified in the job order as term of employment, providing return transportation or paying return transportation expenses to the worker.

**TERMS AND CONDITION CHANGES:** The employer will expeditiously notify the order holding office or State agency by telephone immediately upon learning that a crop is maturing earlier or later, or that weather conditions, over-recruitment, or other factors have changed the terms and conditions of employment.

**PROOF OF CITIZENSHIP:** All workers hired under this order will be required to provide documentation attesting to U.S. citizenship or legal status to work in the U.S.

**AGRICULTURAL WORK AGREEMENT:** A copy of the agricultural work agreement contract or the ETA 790 and attachments will be provided to the worker by the employer no later than on the date the work commences.

**NUMBER OF WORKERS:** The Company's total work force need in this occupation at the work site covered by this application is 85 workers. Therefore, the Company seeks certification for 85 workers. These numbers are estimates as total workforce needs are dependent upon weather, crop conditions, and worker availability.

**REQUIRED DEPARTURE:** H-2A workers must depart the United States at the completion of the work contract period. If registration upon departure is required, employer will notify such H-2A workers of the required departure registration and the place and manner of such registration.

**RETENTION OF DOCUMENTS:** Employer will retain the required documentation in support of its application for 3 years from the date of certification. Earnings records will be retained for not less than 3 years after completion of the work contract.

**Employer requests conditional access into the Interstate and Intrastate Clearance System and assures that the worker housing will meet the applicable Federal Standards not later than 30 days in advance of the date of need reflected on the attached ETA 790.**

Employer requests the SWA to arrange for the required housing inspection.

EXHIBIT C



U.S. Department Labor
Employment and Training Administration

OMB Control No. 1205-0134
Expiration Date: October 31, 2016

Agricultural and Food Processing Clearance Order ETA Form 790
Orden de Empleo para Obreros/Trabajadores Agrícolas y Procesamiento de Alimentos

(Print or type in each field block – To include additional information, go to block # 28 – Please follow Step-By-Step Instructions)
(Favor de usar letra de molde en la solicitud – Para incluir información adicional vea el punto # 28 – Favor de seguir las instrucciones paso-a-paso)

| 1. Employer's and/or Agent's Name and Address (Number, Street, City, State, and Zip Code / Nombre y Dirección del Empleador/Patrón y/o Agente (Número, Calle, Ciudad, Estado y Código Postal ): | Nos. 4 through 8 for STATE USE ONLY Números 4 a 8 para USO ESTATAL |
|---|---|

Dutton Ranch Corporation

10717 Graton Road          Sebastopol

California          95472

a) Federal Employer Identification Number (FEIN) / Número federal de identificación del Empleador:

(b) (6)

b) Telephone Number / Número de Teléfono:

(707) 823-0446

c) Fax Number / Número de Fax:

(707) 829-5842

d) E-mail Address / Dirección de Correo Electrónico:

stove@duttonranch.com

4. SOC (O*NET/OES) Occupational Code / Código Industrial:

45-2902

a. SOC (ONET/OES) Occupational Title / Título Ocupacional

Farm labor and crop

5. Job Order No. / Num. de Orden de Empleo:

14669013

6. Address of Order Holding Office (Include Telephone number) / Dirección de la Oficina donde se radicó la oferta (Incluya el número de teléfono):

Sonoma Job Link 3227 Capricorn way, ste 100 Santa Rosa, CA 95407

a. Name of Local Office Representative (include direct dial telephone number) / Nombre del Representante de la Oficina Local (incluya el número de teléfono de su línea directa):

Eno Representative (707) 565-5550

7. Clearance Order Issue Date / Fecha de Emisión de la Orden de Empleo:

2/2/16

8. Job Order Expiration Date / Fecha de Vencimiento o Expiración de la Orden de Empleo:

9/3/16

| 2. Address and Directions to Work Site / Domicilio y Direcciones al lugar de trabajo: | |
|---|---|

Dutton Ranch is located at 10717 Graton Road, Sebastopol, CA 95472

located in Sonoma County.   See Addendum, Item 2 for

ranch and field          locations

RECEIVED JAN 28, 2016

9. Anticipated Period of Employment / Período anticipado o previsto de Empleo:

From / Desde: 04/04/2016          To / Hasta: 02/03/2017

10. Number of Workers Requested / Número de Trabajadores Solicitados:

85

11. Anticipated Hours of Work per Week / Horas Anticipadas/Previstas de Trabajo por Semana. Total: 40

| Sunday / Domingo 0 | Thursday / Jueves 8 |
| Monday / Lunes 8 | Friday / Viernes 8 |
| Tuesday / Martes 8 | Saturday / Sábado 0 |
| Wednesday / Miércoles 8 | |

| 3. Address and Directions to Housing / Domicilio y Direcciones al lugar de vivienda: | |
|---|---|

Housing is provided at the Dutton Ranch location, 10717 Graton Road, Sebastopol, CA, 95472.

Directions:
US Hwy 101 North to CA Hwy 116 West to Graton Road. Left on Graton Road, 3 miles to Ranch facilities.

e) Description of Housing / Descripción de la vivienda:

Housing consists of 3 dormitories with 94 beds. Housing has kitchen facilities with 2 stoves, 8 burners each, and 2 commercial refrigerators. Bathrooms have 2 sinks, 2 toilets, and 2 showers. The employer will offer housing, bedding (mattresses, blankets, sheets, pillows and pillow cases), storage for personal belongings, and utilities at no cost to workers recruited from beyond normal commuting distances who are unable to return to their place of residence on a daily basis.

See Addendum, Item 3

12. Anticipated range of hours for different seasonal activities / Rango previsto de horas por días diferentes actividades de la temporada:

100% Wine Grapes and Apples

13. Collect Calls Accepted from: / Aceptan Llamadas por Cobrar de:

Employer / Empleador:          Yes / Sí [X]   No [ ]

14.    Describe how the employer intends to provide other 3 meals a day to each worker or furnish free and convenient cooking and kitchen facilities for workers to prepare meals / Describa cómo el empleador tiene la intención de ofrecer, ya sea 3 comidas al día a cada trabajador, o proporcionar gratuitamente instalaciones para cocinar.

Employer will furnish free and convenient cooking and kitchen facilities so workers may prepare their own meals. Kitchens, utilities and cooking and eating utensils will be provided at no cost to occupants of Employer-provided housing. Workers will purchase food at their own expense and prepare their own meals. Kitchen and eating facilities will be shared with other workers occupying the Employer-provided housing facilities. No kitchen facilities or meals are provided to workers not occupying Employer-provided housing.

15. Referral Instructions and Hiring Information / Instrucciones sobre cómo Referir Candidatos/Solicitantes - (Explain how applicants are to be hired or referred, and the Employer's/Agent's available hour to interview workers / Explique cómo los candidatos serán contratados o referidos, y las horas disponibles del empleador/agente para entrevistar a los trabajadores). See instructions for more details / Vea las instrucciones para más detalles.

**Dutton Ranch Referral Contact: Steve Dutton: 10717 Graton Road, Sebastopol, CA 95472, (707) 823-0448. Contacts may be made by phone or in person on the following days Monday through Friday, between the hours of 8:00 a.m. to 1:00 p.m. Directions to our facilities are provided.**

**All U.S. workers applying for this job through the California EDD should provide a resume stating job experience. Resumes are reviewed and if applicant meets the experience and qualifications they will be given a start date. On the start date an orientation will be conducted and all employment forms filled out.**

Documentation of identity and employment authorization (original documents only) sufficient to complete an I-9 Form, as required by the Immigration Reform and Control Act, must be in the possession of the worker at the time the worker reports for work and will be examined by the Company as a condition for completing the hiring process. Walk-in applicants whose pre-employment paperwork was completed at the time of hire must have a valid identity document when they report to work. No worker will be considered to have completed the hiring process, nor be permitted to start work, and/or occupy Company-provided housing, without completing (the pertinent sections of) an I-9 Form and presenting required documentation of identity and employment eligibility within the legally required time frames. Referring local offices should fully apprise workers of this requirement.

16. Job description and requirements / Descripción y requisitos del trabajo:

Work with apples and grapes through growing season. Tasks include pruning; suckering (removing the growth of a plant that produces new shoots at the base or below ground traveling out from the plant base); planting; training; shoot positioning; shoot thinning; shoot trimming; leaf picking; propping; vineyard staking; irrigating; irrigation installations; erosion control; and harvesting apples and grapes. Agricultural work, including hoeing, tying vines, installing and removing apple props, vineyard staking, leaf pulling. Workers will use pruning shears, shovels for planting, hands for picking, and knives for grape harvest. New: Read carefully: Workers may occasionally and/or sporadically perform duties associated with and directly related to field, vineyard and orchard work including but not limited to packing apples and grapes, closing/stacking boxes in and around the field, orchards and vineyards, and clean-up functions in and around the field, orchards and vineyards. Such work will be temporary and insubstantial agricultural labor.

1. Is previous work experience preferred? / Se prefiere previa experiencia? Yes / Si ☒  No ☐  If yes, number of months preferred: / Si es así, número de meses de experiencia: 3

2. Check all requirements that apply:

☐ Certification/License Requirements / Certificación/Licencia Requisitos
☐ Driver Requirements / Requisitos del conductor
☐ Employer Will Train / Empleador entrenará o adiestrará
☐ Extensive Sitting / Estar sentado largos ratos
☐ Exposure to Extreme Temp. / Expuesto a Temperaturas Extremas
☒ Lifting requirement / Levantar o Cargar 45 ___ lbs./libras
☐ Repetitive Movements / Movimientos repetitivos

☐ Criminal Background Check / Verificación de antecedentes penales
☒ Drug Screen / Detección de Drogas
☐ Extensive Pushing and Pulling / Empujar y Jalar Extensamente
☐ Extensive Walking / Caminar por largos ratos
☐ Frequent Stooping / Inclinándose o agachándose con frecuencia
☐ OT/Holiday is not mandatory / Horas Extras (sobre tiempo) / Días Feriados no obligatorio

- 3 -

**17. Wage Rates, Special Pay Information and Deductions / Tarifa de Pago, Información Sobre Pagos Especiales y Deducciones (Rebajas)**

| Crop Activities | Hourly Wage | Piece Rate / Unit(s) | Special Pay (bonus, etc.) | Deductions* | Yes/Sí | No | Pay Period / Período de Pago |
|---|---|---|---|---|---|---|---|
| Cultivos | Salario por Hora | Pago por Pieza / Unidad(es) | Pagos Especiales (Bono, etc.) | Deducciones | | | / / |
| Apple field wrk | $ 11.89 | $ N/A | N/A | Social Security / Seguro Social | ☒ | ☐ | Weekly / Semanal |
| Apple harvest | $ N/A | $ See Add#17 | N/A | Federal Tax / Impuestos Federales | ☒ | ☐ | ☒ |
| Wine grape vineyrd | $ 11.80 | $ N/A | N/A | State Tax /Impuestos Estatales | ☒ | ☐ | Bi-weekly/ Quincenal |
| Labor | $ | $ | | Meals / Comidas | ☐ | ☒ | ☐ |
| Wine grape harvest | $ See Add#17 | $ See Add#17 | N/A | Other (specify) / Otro (especifica) | ☒ | ☐ | Monthly/Mensual ☐ |
| | | | | | | | Other/Otro ☐ |

**18. More Details About the Pay / Mas Detalles Sobre el Pago;**

Workers will be paid not less than the higher of the AEWR (See Addend #17)

**19. Transportation Arrangements / Arreglos de Transportación**

Employer will offer transportation at no cost to workers occupying company provided housing to the worksite and return on a daily basis. Such transportation will be in accordance with applicable laws and regulations. The use of this transportation is voluntary and workers are free to use their own transportation. No worker will be required, as a condition of employment, to utilize the transportation offered by the Employer. Housing is located on ranch sites and transportation on site is generally not required.

If the worker has contracted with a subsequent employer who has not agreed in such work contract to provide or pay for the worker's transportation and daily subsistence expenses from the employer's worksite to such subsequent employer's worksite, the employer must provide for such expenses. If the worker has contracted with a subsequent employer who has agreed in such work contract to provide or pay for the worker's transportation and daily subsistence expenses from the employer's worksite to such subsequent employer's worksite, the subsequent employer must provide or pay for such expenses. The employer is not relieved of the obligation to provide or pay for return transportation and subsistence if an H-2A worker is displaced as a result of the employer's compliance with the 50 percent rule as described in sec. 655.135(d) of this subpart with respect to the referrals made after the employer's date of need.

The following provisions pertaining to provision or reimbursement for inbound and return transportation and subsistence apply only to persons recruited from outside normal commuting distance.

For workers who complete 50 percent of the work period, the Employer will reimburse the worker for costs incurred by the worker for transportation and reasonable subsistence from the place from which the worker came to work for the Company to the place of employment which is the place of recruitment as defined above. Subsistence will be reimbursed at the rate of $11.58 per day without documentation and of actual expenditures, and at actual cost up to a maximum of $55.00 per day with documentation of actual expenditures. This amount of reimbursement for transportation shall be the worker's actual cost, but not more that the most economical and reasonable common carrier transportation charges for the distance involved.

The Employer may elect, at the Employer's sole discretion, to reimburse workers' inbound transportation and subsistence costs at an earlier time than set forth in the preceding paragraph, if the law requires.

If the worker completes the period of employment, the Employer will provide or pay for the worker's transportation and subsistence from the place of employment to the place from which the worker came to work for the Employer which is the place of recruitment as defined above. Return transportation will not be provided to workers who voluntarily abandon employment before the end of the employment period or who are terminated for cause. For the purposes of this paragraph, the "period of employment" shall be the period from the first working the worker is at the Employer's worksite and is ready, willing, able and eligible to work, until the anticipated ending day of employment set for in item 9 of this Clearance order, or until the services of the worker are no longer required, whichever comes first.

- 4 -

20. Is it the prevailing practice to use Farm Labor Contractors (FLC) to recruit, supervise, transport, house, and/or pay workers for this (these) crop activity (ies)? / ¿Es la práctica habitual usar Contratistas de Trabajo Agrícola para reclutar, supervisar, transportar, dar vivienda, y/o pagarle a los trabajadores para esto(os) tipo(s) de cosecha(s)?    Yes / Sí ☐    No ☒

If you have checked yes, what is the FLC wage for each activity? / Si contestó "Sí," cuál es el salario que le paga al Contratista de Trabajo Agrícola por cada actividad?

21. Are workers covered for Unemployment Insurance? / ¿Se le proporcionan Seguro de Desempleo a los trabajadores?    Yes/Sí ☒  No ☐

22. Are workers covered by workers' compensation? / ¿Se le provee seguro de compensación/indemnización al trabajador:    Yes/Sí ☒  No ☐

23. Are tools, supplies, and equipment provided at no charge to the workers? / ¿Se les proveen herramientas y equipos sin costo alguno a los trabajadores?    Yes/Sí ☒  No ☐

24. List any arrangements which have been made with establishment owners or agents for the payment of a commission or other benefits for sales made to workers. (If there are no such arrangements, enter "None".) / Enumere todos los acuerdos o convenios hechos con los propietarios del establecimiento o sus agentes para el pago de una comisión u otros beneficios por ventas hechas a los trabajadores. (Si no hay ningún acuerdo o convenio, indique "Ninguno".)

None

25. List any strike, work stoppage, slowdown, or interruption of operation by the employees at the place where the workers will be employed. (If there are no such incidents, enter "None".) / Enumere toda huelga, paro o interrupción de operaciones de trabajo por parte de los empleados en el lugar de empleo. (Si no hay incidentes de este tipo, indique "Ninguno".)

None

26. In this job order to be placed in connection with a future Application for Temporary Employment Certification for H-2A workers? / ¿Esta orden de empleo ha sido puesta en conexión con una futura solicitud de certificación de empleo temporal para trabajadores H-2A?

Yes/Si ☒ No ☐

27. Employer's Certification: This job order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job. / Certificación del Empleador: Esta orden de trabajo describe los términos y condiciones del empleo que se lo ofrece, y contiene todos los términos y condiciones materiales ofrecidos.

Steven Dutton                           President
Employer's Printed Name & Title / Nombre y Título en Letra de Molde/imprenta del Empleador

_____          1/26/16
Employer's Signature / Firma y Título del Empleador          Date / Fecha

READ CAREFULLY, in view of the statutorily established basic function of the Employment Service as a no-fee labor exchange, that is, as a forum for bringing together employers and job seekers, neither the Employment and Training Administration (ETA) nor the State agencies are guarantors of the accuracy or truthfulness of information contained on job orders submitted by employers. Nor does any job order accepted or recruited upon by the American Job Center constitute a contractual job offer to which the American Job Center, ETA or a State agency is in any way a party.

LEA CON CUIDADO, En vista de la función básica del Servicio de Empleo establecida por ley, como una entidad de intercambio laboral sin comisiones, es decir, como un foro para reunir a los empleadores y los solicitantes de empleo, ni ETA ni las agencias del estado pueden garantizar la exactitud o veracidad de la información contenida en las órdenes de trabajo sometidas por los empleadores. Ni ninguna orden de trabajo aceptado o contratado en el Centro de Carreras (American Job Center) constituyen una oferta de trabajo contractuales a las que el American Job Center, ETA o un organismo estatal es de ninguna manera una de las partes.

PUBLIC BURDEN STATEMENT
The public reporting burden for responding to ETA Form 790, which is required to obtain or retain benefits (44 USC 3501), is estimated to be approximately 60 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and reviewing the collection. The public need not respond to this collection of information unless it displays a currently valid OMB Control Number. This is a public information and there is no expectation of confidentiality. Send comments regarding this burden estimate or any other aspect of this collection, including suggestions for reducing this burden, to the U.S. Department of Labor, Employment and Training Administration, Office of Workforce Investment, Room C-4510, 200 Constitution Avenue, NW, Washington, DC 20210.

DECLARACION DE CARGA PÚBLICA
La carga de información pública para responder a la Forma ETA 790, que se requiere para obtener o retener beneficios (44 USC 3501), se estima en aproximadamente 60 minutos por respuesta, incluyendo el tiempo para revisar las instrucciones, buscar fuentes de datos existentes, recopilar y revisar la colección. El público no tiene por qué responder a esta recopilación de información a menos que muestre un número de control OMB válido. Esta información es pública y no hay ninguna expectativa de confidencialidad. Envíe sus comentarios acerca de esta carga o cualquier otro aspecto de esta colección, incluyendo sugerencias para reducir esta carga, al U.S. Department of Labor, Employment and Training Administration, Office of Workforce Investment, Room C-4510, 200 Constitution Avenue, NW, Washington, DC 20210.

- 6 -

28. Use this section to provide additional supporting information (including section Box number). Include attachments, if necessary. / Utilice esta sección para proporcionar información adicional de apoyo; incluya el número de la sección o incluya archivos adjuntos, si es necesario.

See enclosed ETA-790 Addendum.

**20 CFR 653.501**
Assurances

### INTRASTATE AND INTERSTATE CLEARANCE ORDER

The employer agrees to provide to workers referred through the clearance system the number of hours of work per week cited in Item 10 of the clearance order for the week beginning with the anticipated date of need, unless the employer has amended the date of need at least 10 working days prior to the original date of need by so notifying the Order-Holding Office (OHO). If the employer fails to notify the OHO at least 10 working days prior to the original date of need, the employer shall pay eligible workers referred through the intrastate/interstate clearance system the specified hourly rate or pay, or in the absence of a specified hourly rate or pay, the higher of the Federal or State minimum wage rate for the first week starting with the original anticipated date of need. The employer may require workers to perform alternative work if the guarantee is invoked and if such alternative work is stated on the job order.

The employer agrees that no extension of employment beyond the period of employment shown on the job order will relieve the employer from paying the wages already earned, or specified in the job order as a term of employment, providing transportation or paying transportation expenses to the worker's home.

The employer assures that all working conditions comply with applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration and other employment-related laws.

The employer agrees to expeditiously notify the OHO or State agency by telephone immediately upon learning that a crop is maturing earlier or later, or that weather conditions, over recruitment, or other factors have changed the terms and conditions of employment.

The employer, if acting as a farm labor contractor, has a valid farm labor contractor registration certificate.

The employer assures the availability of no cost or public housing which meets applicable Federal and State standards and which is sufficient to house the specified number of workers requested through the clearance system.

The employer also assures that outreach workers shall have reasonable access to the workers in the conduct of outreach activities pursuant to 20 CFR 653.107.

Employer's Name   Steven Dutton                    Date: 1/26/16

Employer's Signature   _Steven Dutton_

Besides the material terms and conditions of the employment, the employer must agree to these assurances if the job order is to be placed as part of the Agricultural Recruitment System. This assurance statement must be signed by the employer, and it must accompany the ETA Form 790.

- 8 -

## ADDENDUM TO FORM ETA-790
## AGRICULTURAL AND FOOD PROCESSING CLEARANCE ORDER

### 85 Agricultural Field Workers (Wine Grapes and Apples) (2016 Season)
### Dutton Ranch Corporation
### Sebastopol, CA
### April 4, 2016 through February 3, 2017

Employer assures compliance with 20 CFR §653.501, 20 CFR §655.122 and assurances contained in 20 CFR §655.135[1]. The working conditions will comply with applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration and other employment-related laws. The employer is an Equal Employment Opportunity employer and will offer U. S workers at least the same opportunities, wages, benefits, and working conditions as those which the employer offers or intends to offer to non-immigrant workers.

This Clearance Order describes the actual terms and conditions of the employment being offered by Dutton Ranch Corporation, and contains all the material terms and conditions of employment for the job opportunities offered through this Clearance Order.

### Item 2 - Location and Directions to Work Site

Dutton Ranch is a fixed-site grower which owns and controls its work sites and all agricultural commodities produced at such sites. **Dutton Ranch also operates as a Farm Labor Contractor for specific work sites owned and operated by third parties but which are located adjacent to its fields and orchards.**

Work will be performed at the following locations:

Dutton Ranch is located at 10717 Graton Road, Sebastopol, CA, 95472, located in Sonoma County.

### Ranch and Field Locations:

ALPER, OTTIMINO VYDS (un lau de Morelli Stakes Grande): 4730 Stoetz Lane, Sebastopol
BATEMAN, PAUL (Abajo de Jorge): 10610 Mill Station Road, Sebastopol
BELLO, AL (Ranch Bello): 4708 Stoez Lane, Sebastopol
DNA VINEYARDS: 2849 Laguna Road, Santa Rosa
DUTTON BENEFIEL (rancho de shorty): 2001 Coffee Lane, Sebastopol
DUTTON BEST (Molino): 2065 Gravenstein Hwy. No., Sebastopol
DUTTON BILLY GREGORI: 10511 Occidental Road, Sebastopol
DUTTON BOLAND/CARROLL (Manzana de Millstation): 8260 Mill Station Road, Sebastopol

---

[1] If there are any discrepancies between the new ETA Form 790 and H-2A regulations or related laws, the H-2A regulations and related laws control.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 2 of 17

DUTTON BRAUGHTON (casa de Martha): 5455 Vine Hill Road, Sebastopol
DUTTON BUSH: 10560 Upp Road, Sebastopol
DUTTON CARR, BETTY: 4528 Gravenstein Hwy No, Sebastopol
DUTTON CHAPUT, MARC: 5730 Ross Branch Rd, Forestville
DUTTON CLEARY(rancho de Freestone): 990 Scott Robin Way, Freestone
DUTTON COHEN (doctor de Dupont): 13298 Dupont Road, Sebastopol
DUTTON CONGER (un loa de Shorty): 1947 Coffee Lane, Sebastopol
DUTTON COON (laguna): 1881 Laguna Road, Santa Rosa
DUTTON CORDOZA: 7890 Barcagalia Lane, Sebastopol
DUTTON DAVE HANSON: 2715 Joy Road, Occidental
DUTTON DAVIDSON (rancho de viejito de joe): 10380 Graton Road, Sebastopol
DUTTON DONOHOE (Manzana de vinehill): 4708 Vine Hill Road, Sebastopol
DUTTON DURYEE: 1800 Barlow Lane, Sebastopol
DUTTON FRASIER-ESPINOSA (aeropuerto): 3970/3990 Laughlin Road, Windsor
DUTTON FREI: 3350 Frei Road, Sebastopol
DUTTON GEORGE: 10330 Graton Rd, Sebastopol
DUTTON GERBOTH (de barlow): 1899 Barlow Lane, Sebastopol
DUTTON GERMONE: 8100 Germone Rd., Sebastopol
DUTTON GRAVENSTEIN HWY (Scott): 1386 Gravenstein Hwy No., Sebastopol
DUTTON GREGORI (rancho de peras): 5005 Thomas Road, Sebastopol
DUTTON HALLBERG (Graton): 8611 Oak Grove Ave, Sebastopol
DUTTON HARMONY FARM (tienda de tubos): 3244 Highway 116, Sebastopol
DUTTON HILL (casa de Steven): 11051 Upp Road, Sebastopol
DUTTON JENTOFT: 11701 Occidental Rd., Sebastopol
DUTTON JEWELL: 2740/2760/2860 Sullivan Road, Sebastopol
DUTTON JIMMY GREGORI: 10751 Occidental Road, Sebastopol
DUTTON JOHN GREGORI (Rancho de Juan Gregori): 10581 Occidental Road, Sebastopol
DUTTON JOHNNY GREGORI: 10465 Mill Station Road, Sebastopol
DUTTON LORENZO: 5400 Gravenstein Hwy, Sebastopol
DUTTON MARTEN: 1791 Green Hill Road, Sebastopol
DUTTON MARTY GREGORI #1 (Martin Ariba): 10850 Green Valley Road, Sebastopol
DUTTON MENGLE (hermana de Pablo): 11300 Graton Road, Sebastopol
DUTTON MILLER (Silva de Garages): 10020 Cherry Ridge, Sebastopol
DUTTON MILLSTATION VINEYARDS: 8745 Poplar Way, Sebastopol
DUTTON MORELLI: 14640 Morelli Lane, Sebastopol
DUTTON O'CONNELL RANCHES: 3601 Vine Hill Road, Sebastopol
DUTTON PERRY: 4225 Green Valley Road, Sebastopol
DUTTON ROSS RANCH (sequatas de Daryl): 1575/1455 Pleasant Hill Road, Sebastopol
DUTTON SEBASTOPOL VINEYARDS (116): 8757 Green Valley Road, Sebastopol
DUTTON SHOP (garage): 10717 Graton Road, Sebastopol
DUTTON SILVA (Silva de Ariba): 1365 Grandview Road, Sebastopol

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 3 of 17

DUTTON STILLMAN: 1905 Green Hill Road, Sebastopol
DUTTON STUPPIN (un lao de Aleman): 2162 Coffee Lane, Sebastopol
DUTTON SULLIVAN (cementerio): 3003 Sullivan Road, Sebastopol
DUTTON SUMMERHOME PARK (Rancho Haciendas): 11453 River Rd, Forestville
DUTTON TLC (Orfanatorio): 1800 Gravenstein Hwy No, Sebastopol
DUTTON TRIPLE JS: 10905 Graton Road, Sebastopol
DUTTON WALKER (un lado de Torres): 11480 Graton Road, Sebastopol
DUTTON WIDDOES (casa de Shirley): 3515 Sullivan Road, Sebastopol
DUTTON WINKLER (rancho de Wallace): 4300 Ross Road, Sebastopol
EVERY, PAUL (Suegro de Joe): 2880 Piner Road, Santa Rosa
GALANTE, DR. (Silva de Galnate): 10000 Cherry Ridge, Sebastopol
GREEN HILLS MGMT (Pellini): 10025 Cherry Ridge Road, Sebastopol
JAMES, JEFF (Rancho de Cotati): 6861 Grove St, Cotati
KILCULLEN FAMILY VINEYARDS (coffee lane): 1890 Coffee Lane, Sebastopol
KNECHT, GERALD (un loa de Germone): 8237 Germone Road, Sebastopol
KOZLOWSKI FAMILY VINEYARDS: 5566 Gravenstein Hwy No., Forestville
LYNCH, PETER: 1906 Coffee Lane, Sebastopol
RICH WORNER (casa roja): 9998 Graton Road, Sebastopol
RIDDLE, JIM (Morelli Lane): 5000 Stoetz Lane, Sebastopol
ROAN: 11275 Green Valley Rd., Sebastopol
RUSSIAN HILL /SUNNY VIEW (WMS Ventures)(rancho de Guerneville): 3245
Guerneville Road, Santa Rosa
RUSSIAN HILL ESTATES (RHEW) (WMS Ventures)(casa blanca): 4525 Slusser Road,
Windsor
RUXTON, GEORGE: 6005 Stoez Lane, Sebastopol
SONOMA AG ART ( Coffey Lane): 3882 Coffey Lane, Santa Rosa
SONOMA AG ART (Catie's Corner): 1998 Jones Rd, Windsor
SONOMA AG ART (Matthew's Station): 500 Mark West Station Rd, Windsor
TALAWIND HOLDINGS, LLC.: 4677 Slusser Road, Windsor
WAT, KATHY: 1025 Gold Ridge Road, Sebastopol

**Directions:**
US Hwy 101 North to CA Hwy 116 West to Graton Road, Left on Graton Road, 3 miles
to Ranch facilities.

**Itinerary:**

Due to the proximity of vineyard sites, the Employer will be working at all locations
simultaneously throughout the contract period: April 4, 2016, through February 3, 2017.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 4 of 17

**Item 3 - Location and Description of Employer-Provided Housing**

Housing is provided at the Dutton Ranch location, 10717 Graton Road, Sebastopol, CA, 95472.

**Directions:**
US Hwy 101 North to CA Hwy 116 West to Graton Road, Left on Graton Road, 3 miles to Ranch facilities.

Housing consists of 3 dormitories with 94 beds. Housing has kitchen facilities with 2 stoves, 6 burners each, and 2 commercial refrigerators. Bathrooms have 2 sinks, 2 toilets, and 2 showers. The employer will offer housing, bedding (mattresses, blankets, sheets, pillows and pillow cases), storage for personal belongings, and utilities at no cost to workers recruited from beyond normal commuting distances who are unable to return to their place of residence on a daily basis.

Housing is offered to workers only. No housing will be provided to non-workers. Employer-provided housing will be clean and in compliance with applicable housing standards when made available for occupancy, and will be maintained in compliance with applicable standards during the period of occupancy. The Employer assures that all rental and/or public accommodations will be clean and meet applicable local, State or Federal Standards. Workers occupying employer-provided housing will be responsible for maintaining their living areas in a neat, clean manner and in compliance with the employer's "Housing Complex Rules", a copy of which will be provided upon assignment to housing. Specifically, workers must maintain housing in the same conditions as provided by the employer at the time of initial occupancy (i.e., beds may not be moved closer together; mattresses may not be moved onto the floor).

Reasonable repair cost of damage, other than that caused by normal wear and tear, will be deducted from the earnings of workers found to have been responsible for damage to housing or furnishings. If both male and female workers are hired, separate toilet, shower facilities, and sleeping rooms, will be provided by the employer. Common areas of the housing may be shared with male workers.

Family Housing:

As provided by the regulation, housing is to be provided to families who request it and only if it is the prevailing practice in the area of intended employment. It is not the practice in Sonoma County to provide family housing.

Workers may be reached at the following address and phone numbers:

ADDRESS:    10717 Graton Road, Sebastopol, CA, 95472.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 5 of 17


PHONE:       (707) 823-0448

The following provisions apply to workers occupying employer-provided housing:

Workers eligible for employer-provided housing may elect to provide their own housing
at the worker's expense.  Such election must be in writing.  The employer assumes no
responsibility whatsoever for housing arranged by workers on their own.  The employer
will not provide a housing allowance or assistance to workers eligible for employer-
provided housing who elect to provide their own housing.  Workers who elect to provide
their own housing will not be offered daily transportation to and from the work site and
transportation to and from shopping facilities, and must provide or arrange their own
transportation.

Workers eligible for employer-provided housing who elect to provide their own housing
may withdraw such election at any time during the period of employment, and upon
doing so will be provided housing by the employer as set forth in this Clearance Order.
A worker who elects to provide his or her own housing and subsequently withdraws such
election may not again elect to provide his or her own housing during the same
employment season.

No tenancy in employer-provided housing is created by the offer of employer-provided
housing.  The employer retains possession and control of the housing premises at all
times.  Workers housed under the terms of this Clearance Order shall vacate the housing
promptly upon termination of employment.

**Item 11 - Anticipated Work Hours**

The anticipated work week is an average of 40 hours unless Acts of God or labor disputes
make such a work week impracticable. The normal work week is 8 hours per day,
Monday through Friday, 7:00 a.m. to 3:30 p.m.  The worker may be requested, but not
required, to work on Saturdays and/or on Sundays depending upon the conditions in the
fields or orchards, weather and maturity of the crop.  Lunch breaks are 30 minutes
(unpaid) with two (2) paid 10 minute breaks a day.

This is regular, full-time work for a temporary period of time requiring the worker to be
available for work on a daily basis.  This is not "day work".  Excessive tardiness and/or
absences will not be tolerated and will result in disciplinary action.

All workers not occupying employer-provided housing must provide the employer with
contact information before the worker commences employment.    This contact
information will be used to notify the worker not to report to work due to inclement
weather or when work is not available or to notify the worker of any change in the
worker's daily work schedule, or for any other reason.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 6 of 17

**First Work Week Guarantee:** The Company will provide United States workers referred through this Clearance Order with 40 hours of work for the week beginning with the anticipated starting date of employment set forth in Item 9 (ETA-790 Form) unless the employer amends the date of need in accordance with 20 CFR §653.501 (d) (2) (v). If the worker fails to confirm the starting date of employment with the order-holding office between 5 and 9 working days before the date of need set forth in Item 9 (ETA-790 Form), the worker will be disqualified from this assurance. For the purposes of this guarantee, a workday shall mean 8 hours Monday through Friday, and shall exclude Saturday, Sunday and Federal holidays. The pay rate for purposes of the First Work Week Guarantee will be $11.89 per hour.

The employer may require the worker to perform alternative work if this guarantee is invoked. Alternative work will include any available general farm work. If the worker fails to confirm the starting date of employment with the order-holding office between 9 and 5 working days before the date of need set forth in Item 9, the worker will be disqualified from this assurance.

**¾ Guarantee:** Employer guarantees to offer employment for a minimum of ¾ of the hours and workdays of the total specified period during which the work contract and all extensions thereof are in effect, beginning with the first day after a worker arrives at the place of employment and ending on the expiration date specified in the work contract or extensions thereof. Employer is not liable for payment of the ¾ guarantee to H-2A workers if the H-2A worker is displaced due to the employer's requirement to hire qualified and available U.S. workers during the recruitment period set out in 20 CFR 655. 135(d) (50 percent rule).

If the employer fails to provide the worker with the amount of work required under this guarantee, the employer will pay the worker the amount the worker would have earned had the worker worked for the guaranteed number of work hours. In determining whether this guarantee of employment has been met, the employer will count all hours of work actually performed (including hours over 8 in a day voluntarily worked, and hours voluntarily worked on Sunday and/or Federal holidays), and any hours of work offered which the worker fails to work, up to a maximum of 8 hours on Monday through Friday, provided such hours offered and not worked are shown on the worker's paystub.

If the worker voluntarily abandons employment before the end of the period of employment set forth in Item 9 (ETA-790 Form), or is terminated for cause, the worker is not entitled to the guarantee set forth above. The hourly rate for purposes of the ¾ guarantee is $11.89/hr.

**Abandonment of Employment or Termination for Cause:** If a worker voluntarily abandons employment before the end of the contract period, or is terminated for cause,

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 7 of 17

employer will notify the DOL and, if applicable, the DHS, in writing not later than 2 working days after termination. Employees will be deemed to have abandoned the contract regardless of any express termination for cause, if such employee fails to show up for work at the assigned time and place for 5 consecutive work days. When employer timely complies with the notice requirement, employer is not responsible for paying for the worker's return transportation or subsistence to and the worker is not entitled to the ¾ guarantee.

**Contract of Impossibility:** If, before the ending date of the period of employment set forth in Item 9, the services of the worker are no longer required for reasons beyond the control of the Employer, due to fire, weather, or other Act of God that makes the fulfillment of the anticipated period of employment impossible, the Company may terminate the worker's employment. Whether such an event constitutes a contract impossibility will be determined by the CO. In the event of such termination, the Company will fulfill the above ¾ guarantee for the period that has elapsed from the first workday the worker is at the Company's place of employment and is ready, willing, able, and is eligible to work, until the date employment is terminated. The Employer also assures that it will make efforts to transfer the worker to other comparable employment acceptable to the worker and, where applicable, consistent with existing immigration laws.

In situations where a transfer is not affected, the Company will: 1) offer to return the worker at the Company's expense, to the place from which the worker, disregarding intervening employment, came to work for the Company, or 2) transfer the worker to the worker's next certified H-2A employer, whichever the worker prefers; and 3) reimburse the worker the full amount of any deductions made from the worker's pay by the employer for transportation and subsistence expenses to the place of employment (if such deductions exist, if reimbursement has not yet been made, or if the employer did not advance such payments). The employer will also ensure that workers are paid for any inbound transportation and subsistence costs if such workers have not yet been reimbursed or if the employer has not advanced such costs. Reimbursement for daily subsistence and transportation are $11.86 per day and up to $46.00 a day with receipts under the same terms as Item 19 of this clearance order.

Throughout this contract, for purposes of inbound and outbound transportation and subsistence reimbursement, for H-2A workers, the place from which the worker came to work for the Employer are the designated places of recruitment: Tijuana, Baja California, Mexico. The recruitment location for reimbursement is based on where the applicant applied for and interviewed for the H-2A job opportunity. For U.S. workers who reside outside a reasonable commute distance, the place of recruitment is also where the applicant applied for and interviewed for the H-2A job opportunity.

**Item 14 - Board Arrangements**

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 8 of 17

Employer will furnish free and convenient cooking and kitchen facilities so workers may prepare their own meals. Kitchens, utilities and cooking and eating utensils will be provided at no cost to occupants of Employer-provided housing. Workers will purchase food at their own expense and prepare their own meals. Kitchen and eating facilities will be shared with other workers occupying the Employer-provided housing facilities. No kitchen facilities or meals are provided to workers not occupying Employer-provided housing.

## Item 15 - Referral Instructions

Dutton Ranch Referral Contact: Steve Dutton; 10717 Graton Road, Sebastopol, CA 95472, (707) 823-0448. Contacts may be made by phone or in person on the following days Monday through Friday, between the hours of 8:00 a.m. to 1:00 p.m. Directions to our facilities are provided.

All U.S. workers applying for this job through the California EDD should provide a resume stating job experience. Resumes are reviewed and if applicant meets the experience and qualifications they will be given a start date. On the start date an orientation will be conducted and all employment forms filled out.

Documentation of identity and employment authorization (original documents only) sufficient to complete an I-9 Form, as required by the Immigration Reform and Control Act, must be in the possession of the worker at the time the worker reports for work and will be examined by the Company as a condition for completing the hiring process. Walk-in applicants whose pre-employment paperwork was completed at the time of hire must have a valid identity document when they report to work. No worker will be considered to have completed the hiring process, nor be permitted to start work, and/or occupy Company-provided housing, without completing (the pertinent sections of) an I-9 Form and presenting required documentation of identity and employment eligibility within the legally required time frames. Referring local offices should fully apprise workers of this requirement.

## Articulo 15 - Instrucciones de Referidos

El contacto de referencia de Dutton Ranch: Steve Dutton, 10717 Graton Road, Sebastopol, CA 95472, (707)823-0448. El contacto deberá ser por teléfono o en persona durante los siguientes días Lunes a Viernes, entre 8:00 a.m. a 1:00 p.m. Se proporciona direcciones a las instalaciones.

Todos los trabajadores de los Estados Unidos que apliquen para este trabajo a través de la oficina estatal de trabajo (California EDD) deberán proporcionar un curriculum vitae (CV) indicando la experiencia laboral. El CV será revisado y si el solicitante cumple con

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 9 of 17

la experiencia y los requisitos se les dará una fecha de inicio. En la fecha de inicio una orientación se llevará a cabo y todas las formas de empleo serán llenadas.

La documentación de identidad y autorización de empleo (solo documentos originales) suficientes para completar un formulario I-9, como es requerido por la Declaración de Reforma y Control de Inmigración, debe de estar en posesión del trabajador en el momento que el trabajador se reporte para trabajar y será examinado por la Compañía como una condición para completar el proceso de empleo. Los aspirantes no convocados cuya documentación de pre-empleo fue completada al momento de empleo deben de tener un documento válido de identidad cuando se reporten a trabajar. No se considerará que un trabajador ha completado el proceso de empleo, ni se le permitirá empezar a trabajar, ni ocupará vivienda proveída por el empleador, sin completar (las secciones pertinentes de) un Formulario I-9 y presentando la documentación requerida de identidad y elegibilidad de empleo dentro el periodo requerido por ley. Las oficinas locales de Referencias deberán de informar completamente a los trabajadores de este requisito.

**Item 16 – Job Specifications**

Agricultural Field Worker (Wine Grapes and Apples)

Work with apples and grapes through growing season. Tasks include pruning; suckering (removing the growth of a plant that produces new shoots at the base or below ground traveling out from the plant base); planting; training; shoot positioning; shoot thinning; shoot trimming; leaf picking or pulling, land prepping; vineyard staking; irrigating; irrigation installations; erosion control; and harvesting apples and grapes. Agricultural work, including hoeing, tying vines, installing and removing apple props, and vineyard staking. Workers will use pruning shears, shovels for planting, hand hoes for hoeing, hands for picking, and knives for grape harvest. Workers may occasionally and/or sporadically perform duties associated with and directly related to field, ranch facilities, vineyard and orchard work including but not limited to packing apples and grapes, closing/stacking boxes in and around the field, ranch facilities, orchards and vineyards, and clean-up functions in and around the field, ranch facilities, orchards, and vineyards. Such work will be temporary and insubstantial agricultural labor.

Must have 3 months work experience with wine grapes and apples in vineyards and orchards including pre-harvest and harvest apple work and pre-harvest grape growing work as defined in this application. Workers must be able to lift 45 lbs frequently. Workers must be able to climb ladders holding bags for harvesting apples. No smoking allowed in the fields or dormitories, cannot be color blind due to the need to distinguish colors of crops, able to use shears and other agricultural tools, conditions of housing include no smoking, illegal drugs (no use of marijuana), alcohol, or weapons of any sort in the dormitories.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 10 of 17

Work is performed outdoors in open fields and can involve exposure to sun, wind, mud, dust, heat, cold and other elements of the normal field environment. Temperatures can range from 20 degrees F to over 100 degrees F during the period of employment. Workers should come prepared with appropriate clothing and footwear for the work and working conditions described.

This work may entail exposure to plant pollens, insects and noxious plants, and to fields and plant materials which have been treated with insect and/or disease control sprays. The employer will comply with all worker protection standards and re-entry restrictions applicable to pesticides and other chemicals used in the fields. Workers are also required to comply with all applicable worker protection standards and re-entry times. Workers must listen to, understand and follow instructions of company supervisors and managers.

Workers are expected to assist in maintaining work areas and company property in a neat and clean condition by not littering. Lunch must be eaten in the assigned area(s) away from the employee's work site.

Workers will be expected to comply with all provisions of this Clearance Order and the employer's work rules policies and procedures, and to perform any and all assigned tasks in a workmanlike and efficient manner. Failure to do so will subject the worker to the employer's disciplinary procedures.

All safety rules and instructions must be meticulously observed throughout the work day. All Dutton Ranch rules, policies and procedures must be followed, to the extent that they do not conflict with the provisions of this Clearance Order and/or the U.S. Department of Labor's H-2A regulations. A copy of the applicable rules, policies and procedures will be provided to each worker on or before the first day of work. Failure to comply with Company policies and/or meet expectations will result in application of specified disciplinary procedures, up to and including termination.

Employees must not report for work, enter the work site or perform service while under the influence of or having used alcohol, marijuana, or any illegal controlled substance. Employees must not report for work, or perform service, while under the influence of, or impaired by, prescription drugs, medications or other substances that may in any way adversely affect their alertness, coordination, reaction response or safety. The employer may require the worker to submit to a drug test at the employer's expense upon the occurrence of a reportable accident or upon reasonable suspicion.

## Artículo 16 – Especificaciones Del Trabajo

Trabajador Agrícola del Campo (Uva de Vino y Manzanas)

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 11 of 17

Trabaja como miembro de equipo llevando a cabo tareas complejas que requieren juicio limitado. Los trabajadores podrán en ocasiones y/o esporádicamente llevar a cabo deberes asociados con y directamente relacionados con trabajo del campo, instalaciones del rancho, viñedo y huerto incluyendo pero no limitado al empaque de manzanas y uvas, sellando/amontonando cajas en y alrededor del campo, instalaciones del rancho, viñedos y huertos, funciones de limpieza en y alrededor del campo, instalaciones del rancho, viñedos y huertos. Dicho trabajo será labor agrícola temporal e insustancial.

Trabajar con manzanas y uvas durante la temporada de crecimiento. Las tareas incluyen podar; quitar el crecimiento de una planta que produce el brote en la base o bajo tierra saliendo de la base de la planta (chupon); sembrar; entrenar; colocación de brote; disminuir el brote; recorte del brote; recoger hojas; preparar; estacar el viñedo; riego; instalaciones de riego; control de erosión; y cosecha de manzanas y uvas. Trabajo agrícola, incluyendo azadonar, atando viñas, instalando y quitando accesorios de manzanas, estacar el viñedo, sacar la hojas. Los trabajadores usaran tijeras podadoras, palas para sembrar, las manos para recoger, y cuchillos para la cosecha de uva.

Debe tener experiencia de 3 meses de trabajo con las uvas de vino y manzanas en viñedos y frutales, incluyendo pre-cosecha y el trabajo de la cosecha de manzana y el trabajo de pre-cosecha de cultivo de uva como se define en esta aplicación. Los trabajadores deberán tener la habilidad de levantar 45 libras frecuentemente. Los trabajadores deberán subir escaleras mientras que detienen bolsas para cosechar manzanas. Se prohíbe fumar en los campos o dormitorios, no podrá padecer de daltonismo debido a que el trabajador deberá distinguir los colores de la cosecha, tener la habilidad de usar tijeras podadoras y otras herramientas, las condiciones de la vivienda incluyen el no fumar, no usar substancias ilegales (uso de marijuana), bebidas embriagantes o cualquier tipo de armas en los dormitorios.

El trabajo se lleva a cabo al aire libre en los campos abiertos y podrá involucrar la exposición al sol, vientos, lodo, polvo, calor, frió y otros elementos del ambiente normal del campo. Las temperaturas podrán variar de 20 grados Fahrenheit hasta 100 grados Fahrenheit durante el periodo de empleo. Los trabajadores deberán llegar preparados con la ropa apropiada y el calzado para las condiciones de trabajo descritas.

Este trabajo podrá implicar la exposición a polen de plantas, insectos, plantas nocivas y/o materiales de plantas que han sido tratados con aerosoles para controlar insectos y enfermedades. El empleador cumplirá con todos los estándares de protecciones al trabajador y la re-entrada de restricciones aplicables a las pesticidas y otros químicos utilizados en el campo. Los trabajadores también serán requeridos en cumplir con todos los estándares de protección al trabajador y tiempos de re-entrada. Los trabajadores deberán escuchar, comprender y seguir las instrucciones de los supervisores de la compañía y los gerentes.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 12 of 17

Se espera que los trabajadores mantengan las áreas de trabajo y la propiedad de la compañía en una manera limpia y ordenada al no tirar basura. La comida se deberá comer el las áreas asignadas lejos de las estaciones de trabajo.

Se espera que los trabajadores cumplan con todas las provisiones de esta Orden de Autorización y de las políticas y reglamentos del trabajo, y deberán llevar a cabo todas las tareas asignadas en una manera eficiente. El no hacerlo sujetara al trabajador a los procedimientos disciplinarios de trabajo.

Todas las reglas e instrucciones de seguridad se tienen que observar de una forma meticulosa durante el día laboral. Todas las reglas y políticas de Dutton Ranch se tienen que seguir, hasta el punto que no interfiera con las provisiones de esta Orden de Autorización y/o los reglamentos H-2A del Departamento de Trabajo de los Estados Unidos. Una copia de las reglas y políticas aplicables se proporcionará a cada trabajador antes de o en el primer día del trabajo. El no cumplir con las políticas de la compañía y/o las expectativas resultará en la aplicación de procedimientos disciplinarios, hasta e incluyendo la terminación del empleo.

Los empleados no pueden reportarse a trabajar, ni entrar al sitio de trabajo, ni realizar funciones de trabajo mientras estén bajo la influencia del alcohol, marihuana, o cualquier otra sustancia controlada ilegal. Los empleados no deben de reportarse para trabajar, ni realizar funciones de trabajo mientras estén bajo de la influencia de drogas recetadas, medicamentos u otras sustancias que podrían afectar de cualquier forma su vigilancia, coordinación, reacción, o seguridad. El empleador poda requerir del empleado hacerse una prueba de drogas al gasto del empleador en el caso de un accidente que se pueda reportar, o en el caso de la sospecha razonable.

## Item 17– Wage Rates, Special Pay Information and Deductions

**Offered Wage:** Workers will be paid not less than the higher of the AEWR in effect at the time work is performed, the prevailing hourly wage or piece rate, the agreed upon collective bargaining wage, or the Federal or State minimum wage for all hours worked. Employer will pay workers no less than the hourly AEWR of $11.89 when working with apples. Apple harvest is at a piece rate of $20.00 to $35.00 per 1000-lb bin. Employer will pay the hourly rate of $11.89 per hour for wine grape vineyard labor work (non-harvest) and a piece rate for wine grape harvest at a rate of $2.00 per 35-lb picking tray per person for wine grapes but no less than the prevailing hourly rate of $12.00/hr. Employer assures that the required wage rate will be paid at the time that the work is performed. Employer may pay a lower AEWR or prevailing hourly or piece rate as long as such rate remains the highest of the above rates at the time that the work is performed.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 13 of 17

If the prevailing wage (hourly or piece rate) increases during the contract period, the employer will pay any higher rate after written notice is received from the Department of Labor. Notice can be in the form of a written letter or publication in the Federal Register.

**Overtime:** Employer will abide by the California overtime rules for agricultural workers working in California (i.e. 150% of the hourly wage rate after 10 hours of work per day or 60 hours per week).

**Incentives:** The employer will not pay workers a bonus.

**Deductions:** The following deductions will be made from the worker's pay:  FICA (if applicable); federal income tax withholding (if applicable); state and/or local tax withholding (if applicable); recovery of any loss to the Company due to damage or loss of equipment; housing or furnishings (beyond normal wear and tear) caused by the worker (if any); deductions expressly authorized by the worker in writing (i.e. advances or loan repayments, if any); mandatory sick leave (automatic 3 days sick leave at start of employment) as of July 1, 2015; and medical benefits under ACA, if applicable.  No deductions except those required or permitted by law will be made which bring the worker's earnings for any pay period below the applicable statutory federal or state minimum wage.

**Pay Periods, Earnings Records and Workers Compensation:** Payroll Periods will be weekly.  Workers will be paid on Saturdays.  Paychecks will be given directly to the worker, if still in the employment of the employer, or mailed to the address on the worker's employment application or any more recent change of address notification provided by the worker.  Photo identification may be required to receive a paycheck.  In the event it is necessary for someone other than the worker to pick up the worker's paycheck, an authorization form signed by the worker and approved by the worker's supervisor must be in the possession of the employer.

The employer will furnish to the worker on each payday a written statement with the following information, pursuant to 20 CFR sec. 655.122(k):

1. The workers total earnings for the pay period;
2. The workers hourly rate and/or piece rate of pay;
3. The hours of employment offered to the worker (showing offers in accordance with the Three-fourths guarantee as determined in paragraph (i) of this section, separate from any hours offered over and above the guarantee);
4. The hours actually worked by the worker;
5. An itemization of all deductions made from the worker's wages;
6. If piece rates are used, the units produced daily;
7. Beginning and ending dates of the pay period; and

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 14 of 17

8. The employers name, address, and FEIN.

Employer assures that the earnings records required to be retained in its files will be made available for inspection as set out in 20 CFR 655.122(j)(2).

All employees are covered by workers compensation insurance in accordance with California law. This insurance provides payment of medical benefits and time loss payments to a worker who is accidentally injured on the job.

**Item 19 – Transportation Arrangements**

Employer will offer transportation at no cost to workers occupying company provided housing to the worksite and return on a daily basis. Such transportation will be in accordance with applicable laws and regulations. The use of this transportation is voluntary and workers are free to use their own transportation. No worker will be required, as a condition of employment, to utilize the transportation offered by the Employer. Housing is located on ranch sites and transportation on site is generally not required.

If the worker has contracted with a subsequent employer who has not agreed in such work contract to provide or pay for the worker's transportation and daily subsistence expenses from the employer's worksite to such subsequent employer's worksite, the employer must provide for such expenses. If the worker has contracted with a subsequent employer who has agreed in such work contract to provide or pay for the worker's transportation and daily subsistence expenses from the employer's worksite to such subsequent employer's worksite, the subsequent employer must provide or pay for such expenses. The employer is not relieved of its obligation to provide or pay for return transportation and subsistence if an H-2A worker is displaced as a result of the employer's compliance with the 50 percent rule as described in sec. 655.135(d) of this subpart with respect to the referrals made after the employer's date of need.

The following provisions pertaining to provision or reimbursement for inbound and return transportation and subsistence apply only to persons recruited from outside normal commuting distance.

For workers who complete 50 percent of the work period, the Employer will reimburse the worker for costs incurred by the worker for transportation and reasonable subsistence from the place from which the worker came to work for the Company to the place of employment which is the place of recruitment as defined above. Subsistence will be reimbursed at the rate of $11.86 per day without documentation and of actual expenditures, and at actual cost up to a maximum of $46.00 per day with documentation of actual expenditures. The amount of reimbursement for transportation shall be the

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 15 of 17

worker's actual cost, but not more that the most economical and reasonable common carrier transportation charges for the distance involved.

The Employer may elect, at the Employer's sole discretion, to reimburse workers' inbound transportation and subsistence costs at an earlier time than set forth in the preceding paragraph, if the law requires.

If the worker completes the period of employment, the Employer will provide or pay for the worker's transportation and subsistence from the place of employment to the place from which the worker came to work for the Employer which is the place of recruitment as defined above. Return transportation will not be provided to workers who voluntarily abandon employment before the end of the employment period or who are terminated for cause. For the purposes of this paragraph, the "period of employment" shall be the period from the first workday the worker is at the Employer's worksite and is ready, willing, able and eligible to work, until the anticipated ending day of employment set for in Item 9 of this Clearance order, or until the services of the worker are no longer required, whichever comes first.

**Other Clarifications and Assurances**

**TERMINATIONS:** The employer may terminate the worker with notification to the Employment Service if the worker: (a) refuses without justified cause to perform work for which the worker was recruited and hired; (b) commits serious acts of misconduct or fails to follow company rules set forth in the Employee Handbook; or (c) fails, after completing any training or break-in period, to reach productions standards when production standards are applicable. Workers who fail to properly perform the job duties after a reasonable period of on-the-job training may be terminated for cause.

**Termination for Medical Reasons:** In the event of termination for medical reasons occurring after the arrival on the job, or occurring as a result of employment, or in the event of termination resulting from an Act of God, the employer will pay or provide reasonable costs of return transportation and subsistence to the place where the worker departed to the employer's place of employment. For H-2A workers coming from outside the United States, the law defines the place from where the worker departed to the employer's place of employment as the place of recruitment. Additionally, the employer will reimburse worker for reasonable costs of transportation and subsistence incurred by the worker to get to the place of employment.

**EMPLOYER FURNISHED TOOLS AND EQUIPMENT:** The employer will furnish, without cost, all tools, supplies, or equipment required in the performance of work.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 16 of 17

**TRAINING:** The employer will provide a 1-day training session from each worker's initial date of employment and workers will be allowed 7 days (break-in period) from the initial date of employment to reach the production standards of the activity.

**PRODUCTION STANDARDS:** After completion of the training (1 day) and break-in period (7 days), workers will be expected to meet the following production standards: Each worker will be required to work at a normal work pace and keep up with the rest of the crew (85-90% effort level). Specifically, workers are expected to pick approximately 7-8 (seven to eight) 35-lb trays of grapes in one hour; workers are expected to pick 1 bin an hour for apples. Production standards are not greater than the first year that Employer entered into the H-2A program and are in accordance with prevailing practices in the geographic area for similarly employed individuals.

Workers will be notified and can be terminated for failure to meet production standards after the training period.

**INJURIES:** The employer will provide Workers Compensation Insurance or equivalent employer provided insurance, at no cost to the worker, covering injury and disease arising out of, and in the course of, the worker's employment. Employer's proof of insurance coverage will be provided to the ETA field office before certification is granted.

**EMPLOYER OBLIGATION IF EMPLOYMENT EXTENDED:** No extension of employment beyond the period of employment specified in the job order shall relieve the employer from paying the wages already earned, or, if specified in the job order as term of employment, providing return transportation or paying return transportation expenses to the worker.

**TERMS AND CONDITION CHANGES:** The employer will expeditiously notify the order holding office or State agency by telephone immediately upon learning that a crop is maturing earlier or later, or that weather conditions, over-recruitment, or other factors have changed the terms and conditions of employment.

**PROOF OF CITIZENSHIP:** All workers hired under this order will be required to provide documentation attesting to U.S. citizenship or legal status to work in the U.S.

**AGRICULTURAL WORK AGREEMENT:** A copy of the agricultural work agreement contract or the ETA 790 and attachments will be provided to the worker by the employer no later than on the date the work commences.

**NUMBER OF WORKERS REQUESTED**

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 17 of 17

The Employer seeks certification for 85 workers. These numbers are estimates as total workforce needs are dependent upon weather, crop conditions, and worker availability.

**REQUIRED DEPARTURE:** H-2A workers must depart the United States at the completion of the work contract period. If registration upon departure is required, employer will notify such H-2A workers of the required departure registration and the place and manner of such registration.

**RETENTION OF DOCUMENTS:** Employer will retain the required documentation in support of its application for 3 years from the date of certification. Earnings records will be retained for not less than 3 years after completion of the work contract.

**Employer requests conditional access into the Interstate and Intrastate Clearance System and assures that the worker housing will meet the applicable Federal Standards not later than 30 days in advance of the date of need reflected on the attached ETA 790.**

Employer requests the SWA to arrange for the required housing inspection.

EXHIBIT D



**U.S. Department Labor**
**Employment and Training Administration**

OMB Control No. 1205-0134
Expiration Date: March 31, 2019

Agricultural and Food Processing Clearance Order ETA Form 790
Orden de Empleo para Obreros/Trabajadores Agricolas y Procesamiento de Alimentos

(Print or type in each field block – To include additional information, go to block # 28 – Please follow Step-By-Step Instructions)
(Favor de usar letra de molde en la solicitud – Para incluir información adicional vea el punto # 28 – Favor de seguir las instrucciones paso-a-paso)

| 1. Employer's and/or Agent's Name and Address (Number, Street, City, State and Zip Code / Nombre y Dirección del Empleador/Patrón y/o Agente ): | Nos. 4 through 8 for STATE USE ONLY Números 4 a 8 para USO ESTATAL | |
|---|---|---|
| **Dutton Ranch Corporation** | 4. SOC (O'NET/OES) Occupational Code / Código Industrial: 45-2092 | 5.Job Order No. / Núm. de Orden de Empleo: 15195752 |
| **10717 Graton Road**　　　　**Sebastopol** | a. SOC (ONET/OES) Occupational Title / Título Ocupacional: Farmworkers and Laborers, Crop | |
| **California**　　　　　**95472** | | |
| a) Federal Employer Identification Number (FEIN) / Número federal de Identificación del Empleador: | 6. Address of Order Holding Office (include Telephone number) / Dirección de la Oficina donde se radica la oferta (Incluya el número de teléfono): | |
| (b) (6) | Sonoma Job Link | |
| b) Telephone Number / Número de Teléfono: **(707) 823-0448** | 2227 Capricorn Way, Suite 100  Santa Rosa, CA 95407 | |
| | a. Name of Local Office Representative (include direct dial telephone number) / Nombre del Representante de la Oficina Local (incluya el número de teléfono de su línea directa): | |
| c) Fax Number / Número de Fax: **(707) 829-5942** | EDD Representative | |
| d) E-mail Address / Dirección de Correo Electrónico: steve@duttonranch.com | (707) 565-5550 | |
| 2. Address and Directions to Work Site / Domicilio y Direcciones al lugar de trabajo: | 7. Clearance Order Issue Date / Fecha de Emisión de la Orden de Empleo: 1-30-17 | |
| Work will be performed at the following locations in Sonoma County: | | |
| Dutton Ranch is located at 10717 Graton **Road, Sebastopol, CA, 95472** | 8. Job Order Expiration Date / Fecha de Vencimiento o Expiración de la Orden de Empleo: 8-27-17 | |
| **See Addendum, Item 2** | | |
| | 9. Anticipated Period of Employment / Período anticipado o previsto de Empleo: From / Desde: 04/03/2017　　To / Hasta: 01/20/2018 | |
| | 10. Number of Workers Requested / Número de Trabajadores Solicitados: 85 | |
| 3. Address and Directions to Housing / Domicilio y Direcciones al lugar de vivienda: | 11. Anticipated Hours of Work per Week / Horas Anticipadas/Previstas de Trabajo por Semana. Total: 40 | |
| **Housing is provided at the Dutton Ranch location, 10717 Graton Road, Sebastopol, CA, 95472.** | Sunday / Domingo 0　　Thursday / Jueves 8 Monday / Lunes 8　　　Friday / Viernes 8 Tuesday / Martes 8　　Saturday / Sábado 0 Wednesday / Miércoles 8 | |
| a) Description of Housing / Descripción de la vivienda: | 12. Anticipated range of hours for different seasonal activities: / Rango previsto de horas par eles diferentes actividades de la temporada: 100% wine grapes & apples | |
| **Housing consists of 3 dormitories with 94 beds and 1 duplex with 3 beds. Housing has kitchen facilities with 2 stoves, 6 burners each, and 2 commercial refrigerators. Bathrooms have 2 sinks, 2 toilets, and 2 showers. Each worker will be provided with their own bed. Laundry facilities are on site.** | 13. Collect Calls Accepted from: / Aceptan Llamadas por Cobrar de: Employer / Empleador　　　　Yes / Sí ☐　No ☒ | |
| | RECEIVED JAN 1 8 2017 | |

14.  Describe how the employer intends to provide either 3 meals a day to each worker or furnish free and convenient cooking and kitchen facilities for workers to prepare meals / Describa cómo el empleador tiene la intención de ofrecer, ya sea 3 comidas al día a cada trabajador, o proporcionar gratuitamente instalaciones para cocinar.

Employer will furnish free and convenient cooking and kitchen facilities so workers may prepare their own meals. Kitchens, utilities and cooking and eating utensils will be provided at no cost to occupants of Employer-provided housing. Workers will purchase food at their own expense and prepare their own meals. Kitchen and eating facilities will be shared with other workers occupying the Employer-provided housing facilities. No kitchen facilities or meals are provided to workers not occupying Employer-provided housing.

15. Referral Instructions and Hiring Information / Instrucciones sobre cómo Referir Candidatos/Solicitantes - (Explain how applicants are to be hired or referred, and the Employer's/Agent's available hour to interview workers / Explique cómo los candidatos serán contratados o referidos, y las horas disponibles del empleador/agente para entrevistar a los trabajadores). See Instructions for more details / Vea las Instrucciones para más detalles.

Dutton Ranch Referral Contact: Steve Dutton: 10717 Graton Road, Sebastopol, CA 95472, (707) 823-0448. Contacts may be made by phone or in person on the following days Monday through Friday, between the hours of 8:00 a.m. to 1:00 p.m. Directions to our facilities are provided.

All U.S. workers applying for this job through the California EDD should provide a resume stating job experience. Resumes are reviewed and if applicant meets the experience and qualifications they will be given a start date. On the start date an orientation will be conducted and all employment forms filled out.

Walk-in applicants whose pre-employment paperwork was completed at the time of hire must have a valid identity document when they report to work. No worker will be considered to have completed the hiring process, nor be permitted to start work, and/or occupy Company-provided housing, without completing (the pertinent sections of) an I-9 Form and presenting required documentation of identity and employment eligibility within the legally required time frames. Referring local offices should fully apprise workers of this requirement.

10. Job description and requirements / Descripción y requisitos del trabajo:
Work with apples and grapes through growing season. Tasks include pruning; suckering (removing the growth of a plant that produces new shoots at the base or below ground travelling out from the plant base); planting; training; shoot positioning; shoot thinning; shoot trimming; leaf picking or pulling; land prepping; vineyard staking; irrigating; irrigation installations; erosion control; and harvesting apples and grapes. Agricultural work, including hoeing, tying vines, installing and removing apple props, and vineyard staking. Workers will use pruning shears, shovels for planting, hand hoes for hoeing, hands for picking, and knives for grape harvest. Workers may occasionally and/or sporadically perform duties associated with and directly related to field, ranch facilities, vineyard and orchard work including but not limited to packing apples and grapes, closing/stacking boxes in and around the field, ranch facilities, orchards and vineyards, and clean-up functions in and around the field, ranch facilities, orchards, and vineyards. Such work will be temporary and insubstantial agricultural labor. (See Addendum, Item 10)

1. Is previous work experience preferred? / Se prefiere previa experiencia?   Yes / Sí ☒   No ☐   If yes, number of months preferred: / Si es así, numero de meses de experiencia: 3 - see attached

2. Check all requirements that apply:

☐ Certification/License Requirements / Certificación/Licencie Requisitos
☐ Driver Requirements / Requisitos del conductor
☒ Employer Will Train / Empleador entrenará o adiestrará
☐ Extensive Sitting / Estar sentado largos ratos
☒ Exposure to Extreme Temp. / Expuesto a Temperaturas Extremas
☒ Lifting requirement / Levantar o Cargar 45____ lbs./libras
☒ Repetitive Movements / Movimientos repetitivos

☐ Criminal Background Check / Verificación de antecedentes penales
☒ Drug Screen / Detección de Drogas
☐ Extensive Pushing and Pulling / Empujar y Jalar Extensamente
☐ Extensive Walking / Caminar por largos ratos
☒ Frequent Stooping / Inclinándose o agachándose con frecuencia
☐ OT/Holiday is not mandatory / Horas Extras (sobre tiempo) / Días Feriados no obligatorio

## 17. Wage Rates, Special Pay Information and Deductions / Tarifa de Pago, Información Sobre Pagos Especiales y Deducciones (Rebajas)

| Crop Activities / Cultivos | Hourly Wage / Salario por Hora | Piece Rate / Unit(s) / Pago por Pieza / Unidad(es) | Special Pay (bonus, etc.) / Pagos Especiales (Bono, etc.) | Deductions' / Deducciones | Yes/Sí | No | Pay Period / Período de Pago / / |
|---|---|---|---|---|---|---|---|
| Apple field wrk | $ 12.57 | $ N/A | N/A | Social Security / Seguro Social | ☒ | ☐ | Weekly / Semanal |
| Apple harvest | $ N/A | $ See Add#17 | N/A | Federal Tax / Impuestos Federales | ☒ | ☐ | |
| Wine grape vineyard | $ 12.57 | $ N/A | N/A | State Tax /Impuestos Estatales | ☒ | ☐ | Bi-weekly/ Quincenal |
| labor wrk(non-hrvst) | $ | $ | N/A | Meals / Comidas | ☐ | ☒ | |
| Wine grape harvest | $ N/A | $ See Add#17 | N/A | Other (specify) / Otro (específica) | ☒ | ☐ | Monthly/Mensual ☐ |
| | | | | | | | Other/Otro ☐ |

### 18. More Details About the Pay / Mas Detalles Sobre el Pago:

Offered Wage: Workers will be paid not less than the higher of the AEWR in effect at the time work is performed, the prevailing hourly wage or piece rate, the agreed upon collective bargaining wage, or the Federal or State minimum wage for all hours worked. Employer will pay workers no less than the hourly AEWR of $12.57 when working with apples. Apple harvest is at a piece rate of $10.50 to $13.00 per 1000-lb bin. Employer will pay the hourly rate of $12.57 per hour for wine grape vineyard labor work (non-harvest) and a piece rate for wine grape harvest at a rate of $2.05 per 35-lb picking tray per person for wine grapes but no less than the AEWR of $12.57/hr. Employer assures that the required wage rate will be paid at the time that the work is performed. Employer may pay a lower AEWR or prevailing hourly or piece rate as long as such rate remains the highest of the above rates at the time that the work is performed.

If the prevailing wage or AEWR (hourly or piece rate) increases during the contract period, the employer will pay any higher rate after written notice is received from the Department of Labor. Notice can be in the form of a written letter or publication in the Federal Register. If such rates decrease, Employer may pay the lower rate as long as such rate remains the highest of the required rates at the time that the work is performed.

Overtime: The Employer abides by California Wage Order 14 including, but not limited to, the following:

In accordance with the California Wage Order 14:

(A) The following overtime provisions are applicable to employees 18 years of age or over and to employees 16 or 17 years of age who are not required by law to attend school: such employees shall not be employed more than ten (10) hours in any one workday or more than six (6) days in any workweek unless the employee receives one and one-half (1 1/2) times such employee's regular rate of pay for all hours worked over ten (10) hours in any workday and for the first eight (8) hours on the seventh (7th) day of work and double the employee's regular rate of pay for all hours worked over eight (8) on the seventh (7th) day of work in the workweek.

(B) An employee may be employed on seven (7) workdays in one workweek with no overtime pay required when the total hours of employment during such workweek do not exceed 30 and the total hours of employment in any one workday thereof do not exceed six (6).

Incentives: The employer will not pay workers a bonus.

See Addendum, Item 17

### 19. Transportation Arrangements / Arreglos de Transportación

Employer will offer transportation at no cost to workers occupying company provided housing to the worksite and return on a daily basis. Such transportation will be in accordance with applicable laws and regulations. The use of this transportation is voluntary and workers are free to use their own transportation. No worker will be required, as a condition of employment, to utilize the transportation offered by the Employer. Housing is located on ranch sites and transportation on site is generally not required.

If the worker has contracted with a subsequent employer who has not agreed in such work contract to provide or pay for the worker's transportation and daily subsistence expenses from the employer's worksite to such subsequent employer's worksite, the subsequent employer must provide for such expenses. If the worker has contracted with such subsequent employer who has agreed in such work contract to provide or pay for the worker's transportation and daily subsistence expenses from the employer's worksite to such subsequent employer's worksite, the subsequent employer must provide or pay for such expenses. The employer is not relieved of its obligation to provide or pay for return transportation and subsistence if an H-2A worker is displaced as a result of the employer's compliance with the 50 percent rule as described in sec. 655.135(d) of this subpart with respect to the referrals made after the employer's date of need.

The following provisions pertaining to provision or reimbursement for inbound and return transportation and subsistence apply only to persons recruited from outside normal commuting distance.

For workers who complete 50 percent of the work period, the Employer will reimburse the worker for costs incurred by the worker for transportation and reasonable subsistence from the place from which the worker came to work for the Company to the place of employment which is the place of recruitment as defined above. Subsistence will be reimbursed at the rate of $12.09 per day without documentation and of actual expenditures; and at actual cost up to a maximum of $51.00 per day with documentation of actual expenditures. The amount of reimbursement for transportation shall be the worker's actual cost, but not more that the most economical and reasonable common carrier transportation charges for the distance involved.

The Employer may elect, at the Employer's sole discretion, to reimburse workers' inbound transportation and subsistence costs at an earlier time than set forth in the preceding paragraph, if the law requires.

If the worker completes the period of employment, the Employer will provide or pay for the worker's transportation and subsistence from the place of employment to the place from which the worker came to work for the Employer which is the place of recruitment as defined above. Return transportation will not be provided to workers who voluntarily abandon employment before the end of the employment period or who are terminated for cause. For the purposes of this paragraph, the "period of employment" shall be the period from the first workday the worker is at the Employer's worksite and is ready, willing, able and eligible to work, until the anticipated ending day of employment set for in item 9 of this Clearance order, or until the services of the worker are no longer required, whichever comes first.

- 4 -

20. Is it the prevailing practice to use Farm Labor Contractors (FLC) to recruit, supervise, transport, house, and/or pay workers for this (these) crop activity (ies)? / ¿Es la práctica habitual usar Contratistas de Trabajo Agrícola para reclutar, supervisar, transportar, dar vivienda, y/o pagarle a los trabajadores para este(os) tipo(s) de cosecha(s)?      Yes / SI ☐    No ☒

If you have checked yes, what is the FLC wage for each activity? / SI contestó "SI," cuál es el salario que le paga el Contratista de Trabajo Agrícola por cada actividad?

21. Are workers covered for Unemployment insurance? / ¿Se le proporcionan Seguro de Desempleo a los trabajadores?      Yes/SI ☒  No ☐

22. Are workers covered by workers' compensation? / ¿Se le provee seguro de compensación/indemnización al trabajador:      Yes/SI ☒  No ☐

23. Are tools, supplies, and equipment provided at no charge to the workers? / ¿Se les proveen herramientas y equipos sin costo alguno a los trabajadores?      Yes/SI ☒  No ☐

24. List any arrangements which have been made with establishment owners or agents for the payment of a commission or other benefits for sales made to workers. (If there are no such arrangements, enter "None".) / Enumere todos los acuerdos o convenios hechos con los propietarios del establecimiento o sus agentes para el pago de una comisión u otros beneficios por ventas hechas a los trabajadores. (SI no hay ningún acuerdo o convenio, indique "Ninguno".)

None

25. List any strike, work stoppage, slowdown, or interruption of operation by the employees at the place where the workers will be employed. (If there are no such incidents, enter "None".) / Enumere toda huelga, paro o interrupción de operaciones de trabajo por parte de los empleados en el lugar de empleo. (SI no hay incidentes de este tipo, indique "Ninguno".)

None

- 5 -

26. Is this job order to be placed in connection with a future Application for Temporary Employment Certification for H-2A workers? / ¿Esta orden de empleo ha sido puesta en conexión con una futura solicitud de certificación de empleo temporal para trabajadores H-2A?

Yes/Sí [X] No [ ]

27. Employer's Certification: This job order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job. / Certificación del Empleador: Esta orden de trabajo describe los términos y condiciones del empleo que se le ofrece, y contiene todos los términos y condiciones materiales ofrecidos.

Steven Dutton, President
Employer's Printed Name & Title / Nombre y Título en Letra de Molde/Imprenta del Empleador

Employer's Signature / Firma y Título del Empleador                1/5/17
                                                                    Date / Fecha

READ CAREFULLY. In view of the statutorily established basic function of the Employment Service as a no-fee labor exchange, that is, as a forum for bringing together employers and job seekers, neither the Employment and Training Administration (ETA) nor the State agencies are guarantors of the accuracy or truthfulness of information contained on job orders submitted by employers. Nor does any job order accepted or recruited upon by the American Job Center constitute a contractual job offer to which the American Job Center, ETA or a State agency is in any way a party.

LEA CON CUIDADO. En vista de la función básica del Servicio de Empleo establecido por ley, como una entidad de intercambio laboral sin comisiones, es decir, como un foro para reunir a los empleadores y los solicitantes de empleo, ni ETA ni las agencias del estado pueden garantizar la exactitud o veracidad de la información contenida en las órdenes de trabajo sometidas por los empleadores. Ni ninguna orden de trabajo aceptada o contratada en el Centro de Carreras (American Job Center) constituyen una oferta de trabajo contractuales a las que el American Job Center, ETA o un organismo estatal es de ninguna manera una de las partes.

PUBLIC BURDEN STATEMENT
The public reporting burden for responding to ETA Form 790, which is required to obtain or retain benefits (44 USC 3501), is estimated to be approximately 60 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and reviewing the collection of information. The public need not respond to this collection of information unless it displays a currently valid OMB Control Number. This is public information and there is no expectation of confidentiality. Send comments regarding this burden estimate or any other aspect of this collection, including suggestions for reducing this burden, to the U.S. Department of Labor, Employment and Training Administration, Office of Workforce Investment, Room C-4510, 200 Constitution Avenue, NW, Washington, DC 20210.

DECLARACIÓN DE CARGA PÚBLICA
La carga de información pública para responder a la Forma ETA 790, que se requiere para obtener o retener beneficios (44 USC 3501), se estima en aproximadamente 60 minutos por respuesta, incluyendo el tiempo para revisar las instrucciones, buscar fuentes de datos existentes, recopilar y revisar la colección. El público no tiene por qué responder a esta recopilación de información a menos que muestre un número de control OMB válido. Esta información es pública y no hay ninguna expectativa de confidencialidad. Envíe sus comentarios acerca de esta carga o cualquier otro aspecto de esta colección, incluyendo sugerencias para reducir esta carga, al U.S. Department of Labor, Employment and Training Administration, Office of Workforce Investment, Room C-4510, 200 Constitution Avenue, NW, Washington, DC 20210.

28. Use this section to provide additional supporting information (including section Box number). Include attachments, if necessary. / Utilice esta sección para proporcionar información adicional de apoyo; incluya el número de la sección e incluya archivos adjuntos, si es necesario.

**See enclosed ETA-790 & Addendum**

20 CFR 653.501
Assurances

## INTRASTATE AND INTERSTATE CLEARANCE ORDER

The employer agrees to provide to workers referred through the clearance system the number of hours of work per week cited in Item 11 of the clearance order for the week beginning with the anticipated date of need, unless the employer has amended the date of need at least 10 working days prior to the original date of need by so notifying the Order-Holding Office (OHO). If the employer fails to notify the OHO at least 10 working days prior to the original date of need, the employer shall pay eligible workers referred through the intrastate/interstate clearance system the specified hourly rate or pay, or in the absence of a specified hourly rate or pay, the higher of the Federal or State minimum wage rate for the first week starting with the original anticipated date of need. The employer may require workers to perform alternative work if the guarantee is invoked and if such alternative work is stated on the job order.

The employer agrees that no extension of employment beyond the period of employment shown on the job order will relieve the employer from paying the wages already earned, or specified in the job order as a term of employment, providing transportation or paying transportation expenses to the worker's home.

The employer assures that all working conditions comply with applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration and other employment-related laws.

The employer agrees to expeditiously notify the OHO or State agency by telephone immediately upon learning that a crop is maturing earlier or later, or that weather conditions, over recruitment, or other factors have changed the terms and conditions of employment.

The employer, if acting as a farm labor contractor, has a valid farm labor contractor registration certificate.

The employer assures the availability of no cost or public housing which meets applicable Federal and State standards and which is sufficient to house the specified number of workers requested through the clearance system.

The employer also assures that outreach workers shall have reasonable access to the workers in the conduct of outreach activities pursuant to 20 CFR 653.107.

Employer's Name    Steven Dutton, President _____    Date: 1/5/10

Employer's Signature    _Stsn Dutton_____

Besides the material terms and conditions of the employment, the employer must agree to these assurances if the job order is to be placed as part of the Agricultural Recruitment System. This assurance statement must be signed by the employer, and it must accompany the ETA Form 790.

# ADDENDUM TO FORM ETA-790
## AGRICULTURAL AND FOOD PROCESSING CLEARANCE ORDER

### 85 Agricultural Field Workers (Wine Grapes and Apples) (2017 Season)
### Dutton Ranch Corporation
### Sebastopol, CA
### April 3, 2017 through January 20, 2018

Employer assures compliance with 20 CFR §653.501, 20 CFR §655.122 and assurances contained in 20 CFR §655.135[1]. The working conditions will comply with applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration and other employment-related laws. The employer is an Equal Employment Opportunity employer and will offer U. S workers at least the same opportunities, wages, benefits, and working conditions as those which the employer offers or intends to offer to non-immigrant workers.

This Clearance Order describes the actual terms and conditions of the employment being offered by Dutton Ranch Corporation, and contains all the material terms and conditions of employment for the job opportunities offered through this Clearance Order.

## Item 2 - Location and Directions to Work Site

Dutton Ranch is a fixed-site grower which owns and controls its work sites and all agricultural commodities produced at such sites. Dutton Ranch also operates as a Farm Labor Contractor for specific work sites owned and operated by third parties but which are located adjacent to its fields and orchards.

Work will be performed at the following locations in Sonoma County:

Dutton Ranch is located at 10717 Graton Road, Sebastopol, CA, 95472.

## Ranch and Field Locations:

ALPER, OTTIMINO VYDS (un lau de Morelli Stakes Grande),     4730 Stoetz Lane, Sebastopol
BATEMAN, PAUL (Abajo de Jorge), 10610 Mill Station Road, Sebastopol
DNA VINEYARDS, 2849 Laguna Road, Santa Rosa
DUTTON BENEFIEL (rancho de shorty), 2001 Coffee Lane, Sebastopol
DUTTON BEST (Molino), 8681 Oak Grove Ave, Sebastopol
DUTTON BILLY GREGORI, 10511 Occidental Road, Sebastopol
DUTTON BOLAND/CARROLL (Manzana de Millstation), 8260 Mill Station Road, Sebastopol
DUTTON BRAUGHTON (casa de Martha), 5455 Vine Hill Road, Sebastopol
DUTTON BUSH, 10560 Upp Road, Sebastopol

---

[1] If there are any discrepancies between the new ETA Form 790 and H-2A regulations or related laws, the H-2A regulations and related laws control.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 2 of 17

DUTTON CARR, BETTY, 4528 Gravenstein Hwy No, Sebastopol
DUTTON CHAPUT, MARC, 5730 Ross Branch Rd, Forestville
DUTTON CLEARY (rancho de Freestone), 990 Scott Robin Way, Freestone
DUTTON COHEN (doctor de Dupont), 13298 Dupont Road, Sebastopol
DUTTON CONGER (un lion de Shorty), 1947 Coffee Lane, Sebastopol
DUTTON COON (laguna), 1881 Laguna Road, Santa Rosa
DUTTON CORDOZA, 7890 Barcaglia Lane, Sebastopol
DUTTON DAVIDSON (rancho de viejito de joe), 10380 Graton Road, Sebastopol
DUTTON DONOHOE (Manzana de vinehill, 4708 Vine Hill Road, Sebastopol
DUTTON DURYEE, 1800 Barlow Lane, Sebastopol
DUTTON FRASIER-ESPINOSA (aeropuerto), 3970 / 3990 Laughlin Road, Windsor
DUTTON FREI, 3350 Frei Road, Sebastopol
DUTTON GARMEN, 10805 & 10815 Graton Rd, Sebastopol
DUTTON GEORGE, 10330 Graton Rd, Sebastopol
DUTTON GERBOTH (de barlow), 1899 Barlow Lane, Sebastopol
DUTTON GERMONE, 8100 Germone Rd., Sebastopol
DUTTON GRAVENSTEIN HWY (Scott), 1386 Gravenstein Hwy No., Sebastopol
DUTTON GREGORI (rancho de peras), 5005 Thomas Road, Sebastopol
DUTTON HALLBERG (Graton), 8611 Oak Grove Ave,    Sebastopol
DUTTON HARMONY FARM (tienda de tubos), 3244 Highway 116, Sebastopol
DUTTON HILL (casa de Steven), 11051 Upp Road, Sebastopol
DUTTON JENTOFT, 11701 Occidental Rd., Sebastopol
DUTTON JEWELL, 2740/2760/2860 Sullivan Road, Sebastopol
DUTTON JIMMY GREGORI, 10751 Occidental Road, Sebastopol
DUTTON JOHN GREGORI (Rancho de Juan Gregori), 10581 Occidental Road,
Sebastopol
DUTTON JOHNNY GREGORI, 10465 Mill Station Road, Sebastopol
DUTTON JOY ROAD (Hanson), 2715 Joy Road, Occidental
DUTTON LORENZO, 5400 Gravenstein Hwy, Sebastopol
DUTTON MARTEN, 1791 Green Hill Road, Sebastopol
DUTTON MARTY GREGORI #1 (Martin Ariba), 10850 Green Valley Road, Sebastopol
DUTTON MENGLE (hermana de Pablo), 11300 Graton Road, Sebastopol
DUTTON MILLER (Silva de Garages), 10020 Cherry Ridge, Sebastopol
DUTTON MILLSTATION VINEYARDS, 8745 Poplar Way, Sebastopol
DUTTON MORELLI, 14640 Morelli Lane, Sebastopol
DUTTON O'CONNELL RANCHES, 3601 Vine Hill Road , Sebastopol
DUTTON PERRY, 4225 Green Valley Road, Sebastopol
DUTTON ROSS RANCH (Pleasant Hill), 1575/1455 Pleasant Hill Road, Sebastopol
DUTTON SEBASTOPOL VINEYARDS (116), 8757 Green Valley Road, Sebastopol
DUTTON SHOP (garage), 10717 Graton Road    , Sebastopol
DUTTON SILVA (Silva de Ariba), 1365 Grandview Road, Sebastopol
DUTTON SNOW, 10493 Mill Station Road, Sebastopol
DUTTON STILLMAN, 1905 Green Hill Road, Sebastopol

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 3 of 17

DUTTON STUPPIN (un lao de Aleman), 2162 Coffee Lane, Sebastopol
DUTTON SULLIVAN (cementerio), 3003 Sullivan Road, Sebastopol
DUTTON SUMMERHOME PARK (Rancho Haciendas), 11453 River Rd, Forestville
DUTTON TLC (Orfanatorio), 1800 Gravenstein Hwy No, Sebastopol
DUTTON TRIPLE JS, 10905 Graton Road, Sebastopol
DUTTON WALKER (un lado de Torres), 11480 Graton Road, Sebastopol
DUTTON WIDDOES (casa de Shirley), 3515 Sullivan Road, Sebastopol
DUTTON WINKLER (rancho de Wallace), 4300 Ross Road, Sebastopol
EVERY, PAUL (Suegro de Joe), 2880 Piner Road, Santa Rosa
GALANTE, DR. (Silva de Galnate), 10000 Cherry Ridge, Sebastopol
GREEN HILLS MGMT (Pellini), 10025 Cherry Ridge Road, Sebastopol
JAMES, JEFF (Rancho de Cotati), 6861 Grove St., Cotati
KILCULLEN FAMILY VINEYARDS (coffee lane), 1890 Coffee Lane, Sebastopol
KNECHT, GERALD (un loa de Germone), 8237 Germone Road, Sebastopol
KOZLOWSKI FAMILY VINEYARDS, 5566 Gravenstein Hwy No., Forestville
LYNCH, PETER, 1906 Coffee Lane, Sebastopol
RICH WORNER (casa roja), 9997 Graton Road, Sebastopol
RIDDLE, JIM (Morelli Lane), 5000 Stoetz Lane, Sebastopol
ROAN, 11275 Green Valley Rd., Sebastopol
RUSSIAN HILL /SUNNY VIEW (rancho de Guerneville), 3245 Guerneville Road, Santa
Rosa
RUSSIAN HILL ESTATES (RHEW) (casa blanca), 4525 Slusser Road, Windsor
RUXTON VINEYARD, 6005 Stoetz Lane, Sebastopol
SONOMA AG ART (Coffey Lane), 3882 Coffey Lane, Santa Rosa
SONOMA AG ART (Catie's Corner), 1998 Jones Rd, Windsor
SONOMA AG ART (Matthew's Station), 500 Mark West Station Rd, Windsor
TALAWIND HOLDINGS, LLC. 4677 Slusser Road, Windsor
WAT, KATHY, 1025 Gold Ridge Road, Sebastopol

**Directions:** US Hwy 101 North to CA Hwy 116 West to Graton Road, Left on Graton
Road, 3 miles to Ranch facilities.

**Itinerary:**

Due to the proximity of vineyard sites, the Employer will be working at all locations
simultaneously throughout the contract period: April 3, 2017 through January 20, 2018.

**Item 3 - Location and Description of Employer-Provided Housing**

The employer will offer housing, bedding (mattresses, blankets, sheets, pillows and
pillow cases), storage for personal belongings, and utilities at no cost to workers recruited
from beyond normal commuting distances who are unable to return to their place of
residence on a daily basis.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 4 of 17

Housing is provided at the Dutton Ranch location, 10717 Graton Road, Sebastopol, CA, 95472.

Housing consists of 3 dormitories with 94 beds and 1 duplex with 3 beds. Housing has kitchen facilities with 2 stoves, 6 burners each, and 2 commercial refrigerators. Bathrooms have 2 sinks, 2 toilets, and 2 showers. Each worker will be provided with their own bed. Laundry facilities are on site.

**Directions:** US Hwy 101 North to CA Hwy 116 West to Graton Road, Left on Graton Road, 3 miles to Ranch facilities.

Housing is offered to <u>workers only</u>. No housing will be provided to non-workers. Employer-provided housing will be clean and in compliance with applicable housing standards when made available for occupancy, and will be maintained in compliance with applicable standards during the period of occupancy. The Employer assures that all rental and/or public accommodations will be clean and meet applicable local, State or Federal Standards. Workers occupying employer-provided housing will be responsible for maintaining their living areas in a neat, clean manner and in compliance with the employer's "Housing Complex Rules", a copy of which will be provided upon assignment to housing. Specifically, workers must maintain housing in the same conditions as provided by the employer at the time of initial occupancy (i.e., beds may not be moved closer together; mattresses may not be moved onto the floor).

Reasonable repair cost of damage, other than that caused by normal wear and tear, will be deducted from the earnings of workers found to have been responsible for damage to housing or furnishings. The employer will not make any deduction from the wage or require any reimbursement from an employee for any cash shortage, breakage, or loss of equipment, unless such shortage, breakage, or loss is caused by a dishonest or willful act, or by the gross negligence of the employee.

If both male and female workers are hired, separate toilet, shower facilities, and sleeping rooms, will be provided by the employer. Common areas of the housing may be shared with male workers.

<u>Family Housing:</u>

As provided by the regulation, housing is to be provided to families who request it and only if it is the prevailing practice in the area of intended employment. It is not the practice in Sonoma County to provide family housing.

Workers may be reached at the following address and phone numbers:

ADDRESS:    10717 Graton Road, Sebastopol, CA, 95472.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 5 of 17

PHONE:    (707) 823-0448

The following provisions apply to workers occupying employer-provided housing:

Workers eligible for employer-provided housing may elect to provide their own housing at the worker's expense. Such election must be in writing. The employer assumes no responsibility whatsoever for housing arranged by workers on their own. The employer will not provide a housing allowance or assistance to workers eligible for employer-provided housing who elect to provide their own housing. Workers who elect to provide their own housing will not be offered daily transportation to and from the work site and transportation to and from shopping facilities, and must provide or arrange their own transportation.

Workers eligible for employer-provided housing who elect to provide their own housing may withdraw such election at any time during the period of employment, and upon doing so will be provided housing by the employer as set forth in this Clearance Order. A worker who elects to provide his or her own housing and subsequently withdraws such election may not again elect to provide his or her own housing during the same employment season.

No tenancy in employer-provided housing is created by the offer of employer-provided housing. The employer retains possession and control of the housing premises at all times. Workers housed under the terms of this Clearance Order shall vacate the housing promptly upon termination of employment.

## Item 11 - Anticipated Work Hours

The anticipated work week is an average of 40 hours unless Acts of God or labor disputes make such a work week impracticable. The normal work week is 8 hours per day, Monday through Friday, 7:00 a.m. to 3:30 p.m. The worker may be requested, but not required, to work on Saturdays and/or on Sundays depending upon the conditions in the fields or orchards, weather and maturity of the crop. Lunch breaks are 30 minutes (unpaid) with two (2) paid 10 minute breaks a day.

This is regular, full-time work for a temporary period of time requiring the worker to be available for work on a daily basis. This is not "day work". Excessive tardiness and/or absences will not be tolerated and will result in disciplinary action.

All workers not occupying employer-provided housing must provide the employer with contact information before the worker commences employment. This contact information will be used to notify the worker not to report to work due to inclement weather or when work is not available or to notify the worker of any change in the worker's daily work schedule, or for any other reason.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 6 of 17

**First Work Week Guarantee:** The Company will provide United States workers referred through this Clearance Order with 40 hours of work for the week beginning with the anticipated starting date of employment set forth in Item 9 (ETA-790 Form) unless the employer amends the date of need in accordance with 20 CFR §653.501 (d) (2) (v). If the worker fails to confirm the starting date of employment with the order-holding office between 5 and 9 working days before the date of need set forth in Item 9 (ETA-790 Form), the worker will be disqualified from this assurance. For the purposes of this guarantee, a workday shall mean 8 hours Monday through Friday, and shall exclude Saturday, Sunday and Federal holidays. The pay rate for purposes of the First Work Week Guarantee will be $12.57 per hour.

The employer may require the worker to perform alternative work if this guarantee is invoked. Alternative work will include any available general farm work. If the worker fails to confirm the starting date of employment with the order-holding office between 9 and 5 working days before the date of need set forth in Item 9, the worker will be disqualified from this assurance.

**¾ Guarantee:** Employer guarantees to offer employment for a minimum of ¾ of the hours and workdays of the total specified period during which the work contract and all extensions thereof are in effect, beginning with the first day after a worker arrives at the place of employment and ending on the expiration date specified in the work contract or extensions thereof. Employer is not liable for payment of the ¾ guarantee to H-2A workers if the H-2A worker is displaced due to the employer's requirement to hire qualified and available U.S. workers during the recruitment period set out in 20 CFR 655. 135(d) (50 percent rule).

If the employer fails to provide the worker with the amount of work required under this guarantee, the employer will pay the worker the amount the worker would have earned had the worker worked for the guaranteed number of work hours. In determining whether this guarantee of employment has been met, the employer will count all hours of work actually performed (including hours over 8 in a day voluntarily worked, and hours voluntarily worked on Sunday and/or Federal holidays), and any hours of work offered which the worker fails to work, up to a maximum of 8 hours on Monday through Friday, provided such hours offered and not worked are shown on the worker's paystub.

If the worker voluntarily abandons employment before the end of the period of employment set forth in Item 9 (ETA-790 Form), or is terminated for cause, the worker is not entitled to the guarantee set forth above. The hourly rate for purposes of the ¾ guarantee is $12.57/hr.

**Abandonment of Employment or Termination for Cause:** If a worker voluntarily abandons employment before the end of the contract period, or is terminated for cause,

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 7 of 17

employer will notify the DOL and, if applicable, the DHS, in writing not later than 2 working days after termination. Employees will be deemed to have abandoned the contract regardless of any express termination for cause, if such employee fails to show up for work at the assigned time and place for 5 consecutive work days. When employer timely complies with the notice requirement, employer is not responsible for paying for the worker's return transportation or subsistence to and the worker is not entitled to the ¾ guarantee.

Contract of Impossibility: If, before the ending date of the period of employment set forth in Item 9, the services of the worker are no longer required for reasons beyond the control of the Employer, due to fire, weather, or other Act of God that makes the fulfillment of the anticipated period of employment impossible, the Company may terminate the worker's employment. Whether such an event constitutes a contract impossibility will be determined by the CO. In the event of such termination, the Company will fulfill the above ¾ guarantee for the period that has elapsed from the first workday the worker is at the Company's place of employment and is ready, willing, able, and is eligible to work, until the date employment is terminated. The Employer also assures that it will make efforts to transfer the worker to other comparable employment acceptable to the worker and, where applicable, consistent with existing immigration laws.

In situations where a transfer is not affected, the Company will: 1) offer to return the worker at the Company's expense, to the place from which the worker, disregarding intervening employment, came to work for the Company, or 2) transfer the worker to the worker's next certified H-2A employer, whichever the worker prefers; and 3) reimburse the worker the full amount of any deductions made from the worker's pay by the employer for transportation and subsistence expenses to the place of employment (if such deductions exist, if reimbursement has not yet been made, or if the employer did not advance such payments). The employer will also ensure that workers are paid for any inbound transportation and subsistence costs if such workers have not yet been reimbursed or if the employer has not advanced such costs. Reimbursement for daily subsistence and transportation are $12.09 per day and up to $51.00 a day with receipts under the same terms as Item 19 of this clearance order.

Throughout this contract, for purposes of inbound and outbound transportation and subsistence reimbursement, for H-2A workers, the place from which the worker came to work for the Employer are the designated places of recruitment: Tijuana, Baja California, Mexico. The recruitment location for reimbursement is based on where the applicant applied for and interviewed for the H-2A job opportunity. For U.S. workers who reside outside a reasonable commute distance, the place of recruitment is also where the applicant applied for and interviewed for the H-2A job opportunity.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 8 of 17

## Item 14 - Board Arrangements

Employer will furnish free and convenient cooking and kitchen facilities so workers may prepare their own meals. Kitchens, utilities and cooking and eating utensils will be provided at no cost to occupants of Employer-provided housing. Workers will purchase food at their own expense and prepare their own meals. Kitchen and eating facilities will be shared with other workers occupying the Employer-provided housing facilities. No kitchen facilities or meals are provided to workers not occupying Employer-provided housing.

## Item 15 - Referral Instructions

Dutton Ranch Referral Contact: Steve Dutton: 10717 Graton Road, Sebastopol, CA 95472, (707) 823-0448. Contacts may be made by phone or in person on the following days Monday through Friday, between the hours of 8:00 a.m. to 1:00 p.m. Directions to our facilities are provided.

All U.S. workers applying for this job through the California EDD should provide a resume stating job experience. Resumes are reviewed and if applicant meets the experience and qualifications they will be given a start date. On the start date an orientation will be conducted and all employment forms filled out.

Walk-in applicants whose pre-employment paperwork was completed at the time of hire must have a valid identity document when they report to work. No worker will be considered to have completed the hiring process, nor be permitted to start work, and/or occupy Company-provided housing, without completing (the pertinent sections of) an I-9 Form and presenting required documentation of identity and employment eligibility within the legally required time frames. Referring local offices should fully apprise workers of this requirement.

## Articulo 15 - Instrucciones de Referidos

El contacto de referencia de Dutton Ranch: Steve Dutton, 10717 Graton Road, Sebastopol, CA 95472, (707)823-0448. El contacto deberá ser por teléfono o en persona durante los siguientes días Lunes a Viernes, entre 8:00 a.m. a 1:00 p.m. Se proporciona direcciones a las instalaciones.

Todos los trabajadores de los Estados Unidos que apliquen para este trabajo a través de la oficina estatal de trabajo (California EDD) deberán proporcionar un currículum vitae (CV) indicando la experiencia laboral. El CV será revisado y si el solicitante cumple con la experiencia y los requisitos se les dará una fecha de inicio. En la fecha de inicio una orientación se llevará a cabo y todas las formas de empleo serán llenadas.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 9 of 17

Los aspirantes no convocados cuya documentación de pre-empleo fue completada al momento de empleo deben de tener un documento válido de identidad cuando se reporten a trabajar. No se considerará que un trabajador ha completado el proceso de empleo, ni se le permitirá empezar a trabajar, ni ocupará vivienda proveída por el empleador, sin completar (las secciones pertinentes de) un Formulario I-9 y presentando la documentación requerida de identidad y elegibilidad de empleo dentro el periodo requerido por ley. Las oficinas locales de Referencias deberán de informar completamente a los trabajadores de este requisito.

## Item 16 – Job Specifications

Agricultural Field Worker (Wine Grapes and Apples)

Work with apples and grapes through growing season. Tasks include pruning; suckering (removing the growth of a plant that produces new shoots at the base or below ground traveling out from the plant base); planting; training; shoot positioning; shoot thinning; shoot trimming; leaf picking or pulling, land prepping; vineyard staking; irrigating; irrigation installations; erosion control; and harvesting apples and grapes. Agricultural work, including hoeing, tying vines, installing and removing apple props, and vineyard staking. Workers will use pruning shears, shovels for planting, hand hoes for hoeing, hands for picking, and knives for grape harvest. Workers may occasionally and/or sporadically perform duties associated with and directly related to field, ranch facilities, vineyard and orchard work including but not limited to packing apples and grapes, closing/stacking boxes in and around the field, ranch facilities, orchards and vineyards, and clean-up functions in and around the field, ranch facilities, orchards, and vineyards. Such work will be temporary and insubstantial agricultural labor.

Must have 3 months work experience with wine grapes and apples in vineyards and orchards including pre-harvest and harvest apple work and pre-harvest grape growing work as defined in this application. Workers must be able to lift 45 lbs frequently. Workers must be able to climb ladders holding bags for harvesting apples. No smoking allowed in the fields or dormitories, cannot be color blind due to the need to distinguish colors of crops, able to use shears and other agricultural tools, conditions of housing include no smoking, illegal drugs, no use of marijuana, alcohol, or weapons of any sort in the dormitories.

Work is performed outdoors in open fields and can involve exposure to sun, wind, mud, dust, heat, cold and other elements of the normal field environment. Temperatures can range from 20 degrees F to over 100 degrees F during the period of employment. Workers should come prepared with appropriate clothing and footwear for the work and working conditions described.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 10 of 17

This work may entail exposure to plant pollens, insects and noxious plants, and to fields and plant materials which have been treated with insect and/or disease control sprays. The employer will comply with all worker protection standards and re-entry restrictions applicable to pesticides and other chemicals used in the fields. Workers are also required to comply with all applicable worker protection standards and re-entry times. Workers must listen to, understand and follow instructions of company supervisors and managers.

Workers are expected to assist in maintaining work areas and company property in a neat and clean condition by not littering. Lunch must be eaten in the assigned area(s) away from the employee's work site.

Workers will be expected to comply with all provisions of this Clearance Order and the employer's work rules policies and procedures, and to perform any and all assigned tasks in a workmanlike and efficient manner. Failure to do so will subject the worker to the employer's disciplinary procedures.

All safety rules and instructions must be meticulously observed throughout the work day. All Dutton Ranch rules, policies and procedures must be followed, to the extent that they do not conflict with the provisions of this Clearance Order and/or the U.S. Department of Labor's H-2A regulations. A copy of the applicable rules, policies and procedures will be provided to each worker on or before the first day of work. Failure to comply with Company policies and/or meet expectations will result in application of specified disciplinary procedures, up to and including termination.

Employees must not report for work, enter the work site or perform service while under the influence of or having used alcohol, marijuana, or any illegal controlled substance. Employees must not report for work, or perform service, while under the influence of, or impaired by, prescription drugs, medications or other substances that may in any way adversely affect their alertness, coordination, reaction response or safety. The employer may require the worker to submit to a drug test at the employer's expense upon the occurrence of a reportable accident or upon reasonable suspicion.

### Artículo 16 – Especificaciones Del Trabajo

Trabajador Agrícola del Campo (Uva de Vino y Manzanas)

Trabajar con las manzanas y uvas a través de la temporada de crecimiento. Las tareas incluyen la poda; eliminación del crecimiento de una planta que produce nuevos brotes en la base o debajo del suelo que viajan fuera de la base de la planta; siembra; formación; Posicionamiento de los brotes; hacer brote menos denso; Recorte de brotes; Pizca o extracción de hojas, preparación de tierras; Estacar viñedo; Irrigación; Instalaciones de riego; control de la erosión; Y la cosecha de manzanas y uvas. Trabajo agrícola, incluyendo azadonar, atado de vides, instalación y eliminación de accesorios de manzana,

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 11 of 17

y estacado de viñedos. Los trabajadores usarán tijeras de podar, palas para plantar, azadas de mano para azadonar, manos para pizcar y cuchillos para la cosecha de uva. Los trabajadores pueden ocasionalmente y / o esporádicamente desempeñar tareas relacionadas con las instalaciones de campo, las fincas, los viñedos y los huertos, incluyendo, pero no limitado a empaque de manzanas y uvas, cerrar / apilar cajas dentro y alrededor del campo, las instalaciones del rancho, huertos y viñedos, y funciones de limpieza en y alrededor del campo, de las instalaciones del rancho, de los huertos, y de los viñedos. Tal trabajo será trabajo agrícola temporal e insubstancial.

Debe tener experiencia de 3 meses de trabajo con las uvas de vino y manzanas en viñedos y frutales, incluyendo pre-cosecha y el trabajo de la cosecha de manzana y el trabajo de pre-cosecha de cultivo de uva como se define en esta aplicación. Los trabajadores deberán tener la habilidad de levantar 45 libras frecuentemente. Los trabajadores deberán subir escaleras mientras que detienen bolsas para cosechar manzanas. Se prohíbe fumar en los campos o dormitorios, no podrá padecer de daltonismo debido a que el trabajador deberá distinguir los colores de la cosecha, tener la habilidad de usar tijeras podadoras y otras herramientas, las condiciones de la vivienda incluyen el no fumar, no usar substancias ilegales, no usar marijuana, bebidas embriagantes o cualquier tipo de armas en los dormitorios.

El trabajo se lleva a cabo al aire libre en los campos abiertos y podrá involucrar la exposición al sol, vientos, lodo, polvo, calor, frío y otros elementos del ambiente normal del campo. Las temperaturas podrán variar de 20 grados Fahrenheit hasta 100 grados Fahrenheit durante el periodo de empleo. Los trabajadores deberán llegar preparados con la ropa apropiada y el calzado para las condiciones de trabajo descritas.

Este trabajo podrá implicar la exposición a polen de plantas, insectos, plantas nocivas y/o materiales de plantas que han sido tratados con aerosoles para controlar insectos y enfermedades. El empleador cumplirá con todos los estándares de protecciones al trabajador y la re-entrada de restricciones aplicables a las pesticidas y otros químicos utilizados en el campo. Los trabajadores también serán requeridos en cumplir con todos los estándares de protección al trabajador y tiempos de re-entrada. Los trabajadores deberán escuchar, comprender y seguir las instrucciones de los supervisores de la compañía y los gerentes.

Se espera que los trabajadores mantengan las áreas de trabajo y la propiedad de la compañía en una manera limpia y ordenada al no tirar basura. La comida se deberá comer en las áreas asignadas lejos de las estaciones de trabajo.

Se espera que los trabajadores cumplan con todas las provisiones de esta Orden de Autorización y de las políticas y reglamentos del trabajo, y deberán llevar a cabo todas las tareas asignadas en una manera eficiente. El no hacerlo sujetará al trabajador a los procedimientos disciplinarios de trabajo.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 12 of 17

Todas las reglas e instrucciones de seguridad se tienen que observar de una forma meticulosa durante el día laboral. Todas las reglas y políticas de Dutton Ranch se tienen que seguir, hasta el punto que no interfiera con las provisiones de esta Orden de Autorización y/o los reglamentos H-2A del Departamento de Trabajo de los Estados Unidos. Una copia de las reglas y políticas aplicables se proporcionará a cada trabajador antes de o en el primer día del trabajo. El no cumplir con las políticas de la compañía y/o las expectativas resultará en la aplicación de procedimientos disciplinarios, hasta e incluyendo la terminación del empleo.

Los empleados no pueden reportarse a trabajar, ni entrar al sitio de trabajo, ni realizar funciones de trabajo mientras estén bajo la influencia del alcohol, marihuana, o cualquier otra sustancia controlada ilegal. Los empleados no deben de reportarse para trabajar, ni realizar funciones de trabajo mientras estén bajo de la influencia de drogas recetadas, medicamentos u otras sustancias que podrían afectar de cualquier forma su vigilancia, coordinación, reacción, o seguridad. El empleador poda requerir del empleado hacerse una prueba de drogas al gasto del empleador en el caso de un accidente que se pueda reportar, o en el caso de la sospecha razonable.

**Item 17– Wage Rates, Special Pay Information and Deductions**

**Offered Wage:** Workers will be paid not less than the higher of the AEWR in effect at the time work is performed, the prevailing hourly wage or piece rate, the agreed upon collective bargaining wage, or the Federal or State minimum wage for all hours worked. Employer will pay workers no less than the hourly AEWR of $12.57 when working with apples. Apple harvest is at a piece rate of $20.00 to $35.00 per 1000-lb bin. Employer will pay the hourly rate of $12.57 per hour for wine grape vineyard labor work (non-harvest) and a piece rate for wine grape harvest at a rate of $2.05 per 35-lb picking tray per person for wine grapes but no less than the AEWR of $12.57/hr. Employer assures that the required wage rate will be paid at the time that the work is performed. Employer may pay a lower AEWR or prevailing hourly or piece rate as long as such rate remains the highest of the above rates at the time that the work is performed.

If the prevailing wage or AEWR (hourly or piece rate) increases during the contract period, the employer will pay any higher rate after written notice is received from the Department of Labor. Notice can be in the form of a written letter or publication in the Federal Register. If such rates decrease, Employer may pay the lower rate as long as such rate remains the highest of the required rates at the time that the work is performed.

**Overtime:** The Employer abides by California Wage Order 14 including, but not limited to, the following:

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 13 of 17

In accordance with the California Wage Order 14:

(A) The following overtime provisions are applicable to employees 18 years of age or over and to employees 16 or 17 years of age who are not required by law to attend school: such employees shall not be employed more than ten (10) hours in any one workday or more than six (6) days in any workweek unless the employee receives one and one-half (11/2) times such employee's regular rate of pay for all hours worked over ten (10) hours in any workday and for the first eight (8) hours on the seventh (7th) day of work and double the employee's regular rate of pay for all hours worked over eight (8) on the seventh (7th) day of work in the workweek.

(B) An employee may be employed on seven (7) workdays in one workweek with no overtime pay required when the total hours of employment during such workweek do not exceed 30 and the total hours of employment in any one workday thereof do not exceed six (6).

**Incentives:** The employer will not pay workers a bonus.

**Deductions:** The following deductions will be made from the worker's pay: FICA (if applicable); federal income tax withholding (if applicable); state and/or local tax withholding (if applicable); recovery of any loss to the Company due to damage or loss of equipment; housing or furnishings (beyond normal wear and tear) caused by the worker (if any); the employer will not deduct from the wage or require any reimbursement from an employee for any cash shortage, breakage, or loss of equipment, unless it can be shown that such shortage, breakage, or loss is caused by a dishonest or willful act, or by the gross negligence of the employee; deductions expressly authorized by the worker in writing (i.e. advances or loan repayments, if any); and medical insurance payments, if applicable. No deductions except those required or permitted by law will be made which bring the worker's earnings for any pay period below the applicable statutory federal or state minimum wage.

**Pay Periods, Earnings Records and Workers Compensation:** Payroll Periods will be weekly. Workers will be paid on Saturdays. Paychecks will be given directly to the worker, if still in the employment of the employer, or mailed to the address on the worker's employment application or any more recent change of address notification provided by the worker. Photo identification may be required to receive a paycheck. In the event it is necessary for someone other than the worker to pick up the worker's paycheck, an authorization form signed by the worker and approved by the worker's supervisor must be in the possession of the employer.

The employer will furnish to the worker on each payday a written statement with the following information, pursuant to 20 CFR sec. 655.122(k):

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 14 of 17

1.  The workers total earnings for the pay period;
2.  The workers hourly rate and/or piece rate of pay;
3.  The hours of employment offered to the worker (showing offers in accordance with the Three-fourths guarantee as determined in paragraph (i) of this section, separate from any hours offered over and above the guarantee);
4.  The hours actually worked by the worker;
5.  An itemization of all deductions made from the worker's wages;
6.  If piece rates are used, the units produced daily;
7.  Beginning and ending dates of the pay period; and
8.  The employers name, address, and FEIN.

Employer assures that the earnings records required to be retained in its files will be made available for inspection as set out in 20 CFR 655.122(j)(2).

All employees are covered by workers' compensation insurance in accordance with California law. This insurance covers injury or disease out of and in the course of the worker's employment. Employer assures that its workers' compensation policy will remain valid throughout the contract period.

## Item 19 – Transportation Arrangements

Employer will offer transportation at no cost to workers occupying company provided housing to the worksite and return on a daily basis. Such transportation will be in accordance with applicable laws and regulations. The use of this transportation is voluntary and workers are free to use their own transportation. No worker will be required, as a condition of employment, to utilize the transportation offered by the Employer. Housing is located on ranch sites and transportation on site is generally not required.

If the worker has contracted with a subsequent employer who has not agreed in such work contract to provide or pay for the worker's transportation and daily subsistence expenses from the employer's worksite to such subsequent employer's worksite, the employer must provide for such expenses. If the worker has contracted with a subsequent employer who has agreed in such work contract to provide or pay for the worker's transportation and daily subsistence expenses from the employer's worksite to such subsequent employer's worksite, the subsequent employer must provide or pay for such expenses. The employer is not relieved of its obligation to provide or pay for return transportation and subsistence if an H-2A worker is displaced as a result of the employer's compliance with the 50 percent rule as described in sec. 655.135(d) of this subpart with respect to the referrals made after the employer's date of need.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 15 of 17

The following provisions pertaining to provision or reimbursement for inbound and return transportation and subsistence apply only to persons recruited from outside normal commuting distance.

For workers who complete 50 percent of the work period, the Employer will reimburse the worker for costs incurred by the worker for transportation and reasonable subsistence from the place from which the worker came to work for the Company to the place of employment which is the place of recruitment as defined above. Subsistence will be reimbursed at the rate of $12.09 per day without documentation and of actual expenditures, and at actual cost up to a maximum of $51.00 per day with documentation of actual expenditures. The amount of reimbursement for transportation shall be the worker's actual cost, but not more that the most economical and reasonable common carrier transportation charges for the distance involved.

The Employer may elect, at the Employer's sole discretion, to reimburse workers' inbound transportation and subsistence costs at an earlier time than set forth in the preceding paragraph, if the law requires.

If the worker completes the period of employment, the Employer will provide or pay for the worker's transportation and subsistence from the place of employment to the place from which the worker came to work for the Employer which is the place of recruitment as defined above. Return transportation will not be provided to workers who voluntarily abandon employment before the end of the employment period or who are terminated for cause. For the purposes of this paragraph, the "period of employment" shall be the period from the first workday the worker is at the Employer's worksite and is ready, willing, able and eligible to work, until the anticipated ending day of employment set for in Item 9 of this Clearance order, or until the services of the worker are no longer required, whichever comes first.

Other Clarifications and Assurances

TERMINATIONS: The employer may terminate the worker with notification to the Employment Service if the worker: (a) refuses without justified cause to perform work for which the worker was recruited and hired; (b) commits serious acts of misconduct or fails to follow company rules set forth in the Employee Handbook; or (c) fails, after completing any training or break-in period, to reach productions standards when production standards are applicable. Workers who fail to properly perform the job duties after a reasonable period of on-the-job training may be terminated for cause.

Termination for Medical Reasons: In the event of termination for medical reasons occurring after the arrival on the job, or occurring as a result of employment, or in the event of termination resulting from an Act of God, the employer will pay or provide reasonable costs of return transportation and subsistence to the place where the worker

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 16 of 17

departed to the employer's place of employment. For H-2A workers coming from outside the United States, the law defines the place from where the worker departed to the employer's place of employment as the place of recruitment. Additionally, the employer will reimburse worker for reasonable costs of transportation and subsistence incurred by the worker to get to the place of employment.

**EMPLOYER FURNISHED TOOLS AND EQUIPMENT:** The employer will furnish, without cost, all tools, supplies, or equipment required in the performance of work.

**TRAINING:** The employer will provide a 1-day training session from each worker's initial date of employment and workers will be allowed 7 days (break-in period) from the initial date of employment to reach the production standards of the activity.

**PRODUCTION STANDARDS:** After completion of the training (1 day) and break-in period (7 days), workers will be expected to meet the following production standards: Each worker will be required to work at a normal work pace and keep up with the rest of the crew (85-90% effort level). Specifically, workers are expected to pick approximately 7-8 (seven to eight) 35-lb trays of grapes in one hour; workers are expected to pick 1 bin an hour for apples. Production standards are not greater than the first year that the Employer entered into the H-2A program and are in accordance with prevailing practices in the geographic area for similarly employed individuals.

Workers will be notified and can be terminated for failure to meet production standards after the training period.

**INJURIES:** The employer will provide Workers Compensation Insurance or equivalent employer provided insurance, at no cost to the worker, covering injury and disease arising out of, and in the course of, the worker's employment. Employer's proof of insurance coverage will be provided to the ETA field office before certification is granted.

**EMPLOYER OBLIGATION IF EMPLOYMENT EXTENDED:** No extension of employment beyond the period of employment specified in the job order shall relieve the employer from paying the wages already earned, or, if specified in the job order as term of employment, providing return transportation or paying return transportation expenses to the worker.

**TERMS AND CONDITION CHANGES:** The employer will expeditiously notify the order holding office or State agency by telephone immediately upon learning that a crop is maturing earlier or later, or that weather conditions, over-recruitment, or other factors have changed the terms and conditions of employment.

Addendum to Form ETA-790
Dutton Ranch Corporation

Page 17 of 17

**PROOF OF CITIZENSHIP:** All workers hired under this order will be required to provide documentation attesting to U.S. citizenship or legal status to work in the U.S.

**AGRICULTURAL WORK AGREEMENT:** A copy of the agricultural work agreement contract or the ETA 790 and attachments will be provided to the worker by the employer no later than on the date the work commences. A copy of the work contract will be in the language understood by the worker. H-2A workers will be given a copy of the contract no later than the date of the visa appointment at the U.S. consulate. A copy of the work contract will be provided to an H-2A worker coming from another H-2A employer no later than the time an offer of employment is made.

**NUMBER OF WORKERS REQUESTED:** The Employer seeks certification for 85 workers. These numbers are estimates as total workforce needs are dependent upon weather, crop conditions, and worker availability.

**REQUIRED DEPARTURE:** H-2A workers must depart the United States at the completion of the work contract period. If registration upon departure is required, employer will notify such H-2A workers of the required departure registration and the place and manner of such registration.

**RETENTION OF DOCUMENTS:** Employer will retain the required documentation in support of its application for 3 years from the date of certification. Earnings records will be retained for not less than 3 years after completion of the work contract.

Employer requests conditional access into the Interstate and Intrastate Clearance System and assures that the worker housing will meet the applicable Federal Standards not later than 30 days in advance of the date of need reflected on the attached ETA 790.

Employer requests the SWA to arrange for the required housing inspection.