Josephine Weinberg, SBN 274950
Ana Vicente de Castro, SBN 309958
CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
3 Williams Road
Salinas, CA 93950
Tel: (831) 757-5221
Fax: (831) 757-6212
jweinberg@crla.org
avicente@crla.org

Estella M. Cisneros, SBN 287733
CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
3747 E. Shields Ave.
Fresno, CA 93726
Tel: (559) 441-8721
Fax: (559) 441-0724
ecisneros@crla.org

Attorneys for Plaintiff Omar Hernandez Hernandez

Peter Rukin SBN 178336
Valerie Brender SBN 298224
RUKIN HYLAND & RIGGIN LLP
1939 Harrison Street, Suite 290
Oakland, CA 94612
Tel: (415) 421-1800
Fax: (415) 421-1700
prukin@rukinhyland.com
vbrender@rukinhyland.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR HERNANDEZ HERNANDEZ, and ANTONIO HERNANDEZ SANTIAGO on behalf of themselves and other aggrieved employees,<br><br>      Plaintiffs,<br><br>v.<br><br>DUTTON RANCH CORPORATION, STEVE DUTTON and DOES 1-40, INCLUSIVE,<br><br>      Defendants. | CASE NO.: 19-cv-00817-EMC<br><br>**NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Date: January 28, 2021<br>Time: 1:30 p.m.<br>Place: Courtroom 4, 17th Floor<br>Judge: Hon. Edward M. Chen |

**NOTICE OF MOTION**

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

 **PLEASE TAKE NOTICE** that on January 28, 2021 in the courtroom of the Honorable Edward M. Chen in Courtroom 5 — 17th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs will and hereby do move this Court for preliminary approval of a Settlement reached in this Fair Labor Standards Act (FLSA) and Private Attorneys General Act (PAGA) case against Defendants Dutton Ranch Corp. and Steve Dutton. This motion is based on this Notice of Motion and Motion for Preliminary Approval of Settlement, the attached Memorandum of Points and Authorities in Support of Motion, the Declaration of Josephine Weinberg and its attached exhibits, and the Declaration of Valerie Brender and its attached exhibits, all of which Plaintiffs file concurrently with this Motion, and all other pleadings and papers on file in this action, and such argument as the Court may hear.


Dated: December 23, 2020      CALIFORNIA RURAL LEGAL ASSISTANCE, INC.

             _____

               Josephine Weinberg
           *Attorney for Plaintiff Omar Hernandez Hernandez*


Dated: December 23, 2020       RUKIN HYLAND & RIGGIN LLP

             _____

               Valerie Brender
              *Attorney for Plaintiffs*

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................................1

II. FACTUAL AND PROCEDURAL BACKROUND.................................................................2

III. SETTLEMENT AGREEMENT .......................................................................................3

    A.  MONETARY TERMS.................................................................................................4

    B.  DEFINITION OF PAGA GROUP AND FLSA GROUP.................................................4

    C.  PAYMENT ALLOCATIONS AND DISTRIBUTION.......................................................4

    D.  NOTICE TO FLSA COLLECTIVE MEMBERS..........................................................5

    E.  RELEASE OF CLAIMS.............................................................................................5

    F.  SETTLEMENT ADMINISTRATION AND DISTRIBUTION OF FUNDS. .........................6

IV. THE FLSA SETTLEMENT IS A FAIR AND REASONABLE SETTLEMENT OF A BONA
    FIDE DISPUTE...........................................................................................................6

    A.  A BONA FIDE DISPUTE EXISTS. .............................................................................7

    B.  THE SETTLEMENT IS FAIR AND REASONABLE. ......................................................7

       1.  The Settlement Represents a Significant Portion of Plaintiffs' Estimated Value of the
           Claim. ..............................................................................................................8

       2.  The Parties Made an Informed Decision Based on the Stage of Proceedings and
           Amount of Discovery Completed. .....................................................................8

       3.  Plaintiff Faced Significant Risks of a Lesser Recovery. .............................................9

       4.  Scope of the FLSA Release is Not Overbroad. .........................................................10

       5.  The Experience and Views of Counsel and the Opinion of the Participating Plaintiff
           Favor Approval. ...............................................................................................11

       6.  There Was No Fraud or Collusion. .........................................................................11

V.  THE COURT SHOULD APPROVE THE PAGA SETTLEMENT........................................12

    A.  THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE. .........................12

       1.  The Settlement Reflects the Informed Views of Experienced Counsel and is the
           Product of Serious, Arms-Length Negotiations Conducted After Investigation and
           Discovery. ........................................................................................................12

2.      The Settlement is Fair Given the Strength of Plaintiffs' Case and the Risk, Expense, and Complexity of Further Litigation. ....................................................13

a.    The PAGA Settlement Includes Substantial Affirmative Relief. .............................13

b.    The PAGA settlement value is equal to or greater than similar cases. ....................14

c.    Plaintiffs risked that if successful, any PAGA award would be substantially reduced. ........................................................................................16

**VI. PLAINTIFFS' ATTORNEYS' FEE REQUEST IS REASONABLE** .......................................**18**

A.    THE FEES REQUESTED ARE REASONABLE CONSIDERING THE VALUE OF THE WHOLE SETTLEMENT. ....................................................................................18

B.    A LODESTAR CROSSCHECK FURTHER SUPPORTS THE FEES REQUESTED. ......................21

**VII. PLAINTIFFS' COUNSEL'S COSTS ARE REASONABLE** ...................................**22**

**VIII. THE SERVICE AWARDS ARE REASONABLE** ....................................................**22**

**IX. CONCLUSION** ........................................................................................**24**

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abelar v. Am. Residential Servs., L.L.C.*,
2019 U.S. Dist. LEXIS 198772 (C.D. Cal. Nov. 14, 2019) ..........................................12

*Arriaga v. Fla. Pac. Farms, L.L.C.*,
305 F.3d 1228 (11th Cir. 2002)............................................................................................9

*Barbosa v. Cargill Meat Sols. Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013) .......................................................................................19

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
450 U.S. 728 (1981) ..............................................................................................................6

*Bernstein v. Virgin Am., Inc.*,
365 F. Supp. 3d 980 (N.D. Cal. 2019) ..........................................................................17, 18

*Browning v. Yahoo! Inc.*,
2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007)................................................16

*Bruce v. Del Monte Foods, Inc.*,
2018 U.S. Dist. LEXIS 53800 (N.D. Cal. Mar. 19, 2018) ...............................................22

*Cardenas v. McLane Foodservice, Inc.*,
2011 U.S. Dist. LEXIS 13126 (C.D. Cal. Jan. 31, 2011)..................................................16

*Chamberlain v. Hughes*,
2020 U.S. Dist. LEXIS 134582 (E.D. Cal. July 29, 2020).........................................14, 15

*Chambers v. Whirlpool Corp.*,
214 F. Supp. 3d 877 (C.D. Cal. 2016)...............................................................................24

*Dowdell v. City of Apopka, Florida*,
698 F.2d 1181 (11th Cir. 1983)..........................................................................................22

*Dunn v. Teachers Ins. & Annuity Ass'n of Am.*,
2016 U.S. Dist. LEXIS 4338 (N.D. Cal. Jan. 13, 2016) ..................................................10

*Fleming v. Covidien, Inc.*,
2011 U.S. Dist. LEXIS 154590 (C.D. Cal. Aug. 12, 2011) ..............................................17

*Flores v. TFI Int'l, Inc.*,
2019 U.S. Dist. LEXIS 65754 (N.D. Cal. Apr. 17, 2019)....................................18, 19, 21

*Garner v. State Farm Mut. Auto Ins. Co.*,
2010 U.S. Dist. LEXIS 49477 (N.D. Cal. Apr. 22, 2010)....................................12, 22, 23

iii

**Page(s)**

*Gonzalez v. Fallanghina, LLC,*
   2017 U.S. Dist. LEXIS 58430 (N.D. Cal. Apr. 17, 2017)..............................................6, 7

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998)..............................................................................12, 18

*Haralson v. U.S. Aviation Servs. Corp.,*
   383 F. Supp. 3d 959 (N.D. Cal. 2019) ........................................................................15

*Haworth v. State of Nevada,*
   56 F.3d 1048 (9th Cir. 1995)......................................................................................18

*In re Bluetooth Headset Products Liability Litigation,*
   654 F.3d 935 (9th Cir. 2011)..............................................................................11, 18

*In re FPI/Agretech Securities Litig.,*
   105 F.3d 469 (9th Cir.1997)......................................................................................18

*In re Mego Fin. Corp. Sec. Litig.,*
   213 F.3d 454 (9th Cir. 2000)......................................................................................19

*In re Toys R Us-Delaware, Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.,*
   295 F.R.D. 438 (C.D. Cal. 2014) ................................................................................24

*Jennings v. Open Door Mktg., LLC,*
   2018 U.S. Dist. LEXIS 171356 (N.D. Cal. October 3, 2018).................................7, 8, 11

*Jones v. Agilysys, Inc.,*
   2014 U.S. Dist. LEXIS 68562 (N.D. Cal. May 19, 2014) ...............................................22

*Kasten v. Saint-Gobain Performance Plastics Corp.,*
   563 U.S. 1 (2011) .........................................………………………………….6

*K.H. v. Sec'y of the Dep't of Homeland Sec.,*
   2018 U.S. Dist. LEXIS 125459 (N.D. Cal. July 26, 2018)..............................................7

*Lusby v. Gamestop Inc.,*
   2015 U.S. Dist. LEXIS 42637 (N.D. Cal. Mar. 31, 2015)..............................................19

*Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin.,*
   *Wage & Hour Div.,*
   679 F.2d 1350 (11th Cir. 1982) ..............................................................................6, 7

*Maciel* v. *Bar 20 Dairy, Ltd. Liab. Co.,*
   2020 U.S. Dist. LEXIS 156961 (E.D. Cal. Aug. 28, 2020) ...........................................14

iv

**Page(s)**

*McKeen-Chaplin v. Provident Sav. Bank,*
　2018 U.S. Dist. LEXIS 121149 (E.D. Cal. July 19, 2018)...................................... Passim

*McLeod v. Bank of Am., N.A.,*
　2018 U.S. Dist. LEXIS 195314 (N.D. Cal. Nov. 14, 2018) ............................................14

*O'Connor v. Uber Techs.,*
　201 F. Supp. 3d 1110 (N.D. Cal. 2016) .................................................................12, 13

*Patel v. Nike Retail Servs.,*
　2019 U.S. Dist. LEXIS 77988 (N.D. Cal. May 8, 2019)) .........................................16, 19

*Radcliffe v. Experian Info. Solutions Inc.,*
　715 F.3d 1157 (9th Cir. 2013) ...............................................................................23

*Ramirez v. Benito Valley Farms, LLC,*
　2017 U.S. Dist. LEXIS 137272 (N.D. Cal. August 25, 2017) ....................................12, 16

*Rigo v. Kason Indus.,*
　2013 U.S. Dist. LEXIS 99357 (S.D. Cal. July 16, 2013) ..............................................19

*Rivera v. Peri & Sons Farms, Inc.,*
　735 F.3d 892 (9th Cir. 2013) ................................................................................9, 10

*Rodriguez v. West Publishing Corp.,*
　563 F.3d 948 (9th Cir. 2009) .................................................................................22

*Saleh v. Valbin Corp.,*
　2018 U.S. Dist. LEXIS 195348 (N.D. Cal. Nov. 15, 2018) ............................................8

*Selk v. Pioneers Mem'l Healthcare Dist.,*
　159 F. Supp. 3d 1164 (S.D. Cal. 2016) .....................................................................8

*Slezak v. City of Palo Alto,*
　2017 U.S. Dist. LEXIS 96900 (N.D. Cal. June 22, 2017) ...................................... Passim

*Staton v. Boeing Co.,*
　327 F.3d 938 (9th Cir. 2003)...........................................................................20, 22

*Stuart v. Radioshack Corp.,*
　2010 U.S. Dist. LEXIS 92067 (N.D. Cal. Aug. 9, 2010) ..........................................18, 19

*Torres v. Pick-A-Part Auto Wrecking,*
　2018 U.S. Dist. LEXIS 2446 (E.D. Cal. Jan. 5, 2018) ...................................................24

*Van Vranken v. Atlantic Richfield Co.,*
　901 F. Supp. 294 (N.D. Cal. 1995) ...........................................................................23

v

**Page(s)**

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010)..................................................................................18

*Viceral v. Mistras Grp., Inc.*,
   2016 U.S. Dist. LEXIS 140759 (N.D. Cal. Oct. 11, 2016) ...........................................14

*Viceral v. Mistras Grp., Inc.*,
   2017 U.S. Dist. LEXIS 23220 (N.D. Cal. Feb. 17, 2017).............................................19

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (2002) ............................................................................................18, 20, 21

**State Cases**

*Carrington v. Starbucks Corp.*,
   30 Cal. App. 5th 504 (2018).........................................................................................17

*Consumer Privacy Cases*,
   175 Cal. App. 4th 545 (2009).......................................................................................21

*Thurman v. Bayshore Transit Mgmt., Inc.*,
   203 Cal. App. 4th 1112 (2012).....................................................................................17

**Federal Statutes**

29 U.S.C. § 202(a)................................................................................................................6

29 U.S.C. § 255(a) ............................................................................................................10

**State Statutes**

Cal. Lab. Code § 2699 ................................................................................................ Passim

**Federal Regulations**

20 C.F.R. § 655.122...................................................................................................10, 14

29 C.F.R. §531.3(d)(2)..........................................................................................................10

29 C.F.R. §531.32(c) .................................................................................... ..............10

**Other Authorities**

4 Conte & Newberg, *Newberg on Class Actions* § 14:6 (4th ed. 2002) ...............................19

## I.    INTRODUCTION

Plaintiffs Omar Hernandez Hernandez and Antonio Hernandez Santiago, on behalf of themselves and other aggrieved workers, seek preliminary approval of a Settlement reached in this Fair Labor Standards Act (FLSA) and Private Attorneys General Act (PAGA) case against Defendants Dutton Ranch Corp. and Steve Dutton. After substantial investigation by Plaintiffs' counsel, conditional certification of the FLSA collective, and exchange of discovery, Plaintiffs entered into a Settlement during their second attempt at mediation. Settlement was reached after an all-day mediation with experienced employment law mediator Tripper Ortman. Plaintiff Omar Hernandez Hernandez, on behalf of himself and similarly situated H-2A workers under FLSA, and both Plaintiffs on behalf of themselves and other aggrieved workers under PAGA, came to a Gross Settlement Amount of $525,000 in return for a release of claims against Defendants. The Net Settlement (comprised of the Gross Settlement Amount less settlement administration fees, a service award to the Named Plaintiffs, and attorneys' fees and costs, all subject to Court approval and as described in more detail below) will be allocated 2/3 to PAGA and 1/3 to FLSA. The PAGA portion of the settlement will be distributed to the PAGA Group based on weeks worked in the PAGA Period. Upon approval of the Court, there will be an additional 60 day notice period for FLSA collective members to opt in to the Settlement, and the FLSA portion will be distributed to those opt-in Plaintiffs based on the number of their first weeks of work within the FLSA period. As described below, any amounts allocated to the settlement of the FLSA claims and not claimed by FLSA collective members shall be redistributed to the participating FLSA Group (opt-ins) up to a maximum amount. The balance of the FLSA funds not redistributed will be applied to the Net Settlement Amount allocated to the PAGA portion of the settlement.

Members of the PAGA Group do not release any of their individual claims but may not pursue the released PAGA claims on behalf of the State. The FLSA Group release only extends to the alleged FLSA claims in the complaint, and any related FLSA claims that could have been asserted based on the same or similar factual allegations, and does not release any underlying state law individual claims.

As discussed below, the combined Settlement was negotiated at arm's length and with the assistance of an experienced, independent mediator. The proposed FLSA Settlement is a fair and

NOTICE OF MOTION AND MEMO OF POINTS AND AUTHORITIES
ISO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT

*Hernandez et al.v. Dutton Ranch Corp et al.*  Case
No.:19-cv-00817-EMC

reasonable resolution of a bona fide dispute of FLSA claims. The Settlement amounts to a substantial percentage of the maximum valuation of the claim and takes into account the risks of litigation. The proposed PAGA Settlement is also fair, adequate, and reasonable. The settlement provides a reasonable penalty and includes substantial prospective relief. Accordingly, Plaintiffs respectfully move the Court to grant approval of the proposed Settlement.

## II.    FACTUAL AND PROCEDURAL BACKROUND

Defendant Dutton Ranch Corp. ("Dutton Ranch") is a California Corporation and California-registered farm labor contractor based in Sebastopol, California, that farms grapes and apples. Defendant Steve Dutton is the co-owner and President of Dutton Ranch. Defendants contract approximately 85 to 92 H-2A workers every year from Mexico under the H-2A program. They also hire domestic workers.

Plaintiffs Omar Hernandez Hernandez ("O. Hernandez"), an H-2A field worker, and Antonio Hernandez Santiago ("A. Hernandez"), a non-H-2A field worker, were employed by Defendants and lived in company-provided housing. Plaintiffs filed a state court complaint on December 5, 2018 alleging claims under the Fair Employment and Housing Act ("FEHA"), individual claims under the California Labor Code, and representative claims under the PAGA. *See* Declaration of Josephine Weinberg, ("Weinberg Decl.") ¶ 4. Under their PAGA claim, Plaintiffs alleged that Defendants violated various California wage and hour laws. Plaintiffs alleged that Defendants failed to pay for all hours worked by failing to pay for the time they and other aggrieved employees spent before their scheduled shift to prepare for their workday and the time that aggrieved employees spent at the end of their workday to clean up and walk out of the fields (typically 10-15 minutes before and after their shift, or 20-30 minutes each day). *Id*. Plaintiffs also alleged that they worked second shifts in unsupervised fields after their regular workday, which resulted in substantial uncompensated overtime. *Id*. Plaintiffs alleged they were paid separately for this time, but not at the applicable overtime rate. *Id*. Plaintiffs also alleged that Defendants failed to record all of their hours worked, failed to provide meal and rest breaks, and failed to provide compensation for missed meal and rest breaks. *Id*. Plaintiffs further alleged that they and other aggrieved workers were required to buy tools and pay for

transportation between fields without reimbursement. *Id.* Based on these allegations, Plaintiffs brought their PAGA claims under California Labor Code sections 201, 202, 203, 205, 218, 226, 226.7, 558, 1174, 1182.12, 1194, 1197, 1198, 2802, and IWC Wage Order 14-2001. *Id.*

On February 14, 2019, Defendants removed this action to the United States District Court for the Northern District of California. Weinberg Decl., ¶ 5. On April 23, 2019, Plaintiffs filed their second amended complaint, which included O. Hernandez's collective action FLSA claim. Weinberg Decl., ¶ 6; *see also* Dkt.14. He alleged that he and other H-2A field workers did not receive federal minimum wage for every hour worked during their first week of work each season due to tool and H-2A related travel expenses. *Id.* These expenses included hotel costs in Tijuana, Mexico, where workers' H-2A visas were processed, transportation around Tijuana, transportation and subsistence expenses related to travel between the worker's country of origin and the worksite, and transportation to and from company-provided housing to the worksite. *Id.*

On November 18, 2019, the parties attended mediation with mediator Jeff Ross, which was unsuccessful. Weinberg Decl., ¶ 9. Plaintiffs moved for conditional certification of the FLSA collective, which the Court granted on March 17, 2020. *Id.* at ¶ 10; *see also* Dkt. 38. On June 29, 2020, Plaintiffs filed their third amended complaint, which is the operative complaint, to add Steve Dutton as a Defendant to Plaintiffs' state law wage and hour claims and the PAGA claim. *Id.* at ¶ 7; *see also* Dkt. 51 ("TAC").

On September 11, 2020, the Parties mediated for over 12 hours with Tripper Ortman, an experienced employment law mediator. Weinberg Decl., ¶ 12. The Parties negotiated and resolved the PAGA and FLSA collective claims before separately negotiating Plaintiffs' individuals claims. *Id.* The Parties' final longform settlement agreement for the PAGA and FLSA claims is attached hereto as Exhibit 1 of the Weinberg Declaration.

## III.    SETTLEMENT AGREEMENT

The complete details of the Settlement are contained in the Settlement Agreement signed by the Parties and attached as Exhibit 1 to the Weinberg Declaration (Settlement Agreement ("SA")). The following summarizes the Settlement Agreement's key terms.

### A. Monetary Terms.

Defendants have agreed to pay a "Gross Settlement Amount" of $525,000 to settle the claims at issue. SA, ¶ 21. The Gross Settlement Amount includes (1) a $14,000 incentive payment to Plaintiffs ($7,000 to each); (2) Plaintiffs' counsel's fee award (up to 33% of the total gross settlement) or $173,250; (3) $20,000 to cover all costs of claims administration; and (4) $20,000 to cover Plaintiffs' counsel's actual and documented costs. SA, ¶¶ 12, 41, 52, 54. This leaves a Net Settlement Amount of $297,750, which will be allocated 2/3 (66.67%) or $198,509.93 to PAGA (with 75% or $148,882.44 to the LWDA and 25% or $49,627.48 to aggrieved workers) and 1/3 (33.33%) or $99,240.08 available to FLSA collective members who opt-in.

### B. Definition of PAGA Group and FLSA Group.

The PAGA Group is defined as all field worker employees who worked for Defendant Dutton Ranch Corp. in California from July 30, 2017, to the date the Court approves the PAGA portion of the Settlement. SA, ¶ 22. Defendants estimate that the PAGA Group consists of approximately 17,298 workweeks and 205 employees, and the parties have agreed that should the workweeks increase by more than 10% the payout will increase proportionally over the 10% increase. *Id.* at ¶ 74.

FLSA collective members are defined as all field worker employees who were employed pursuant to an H-2A visa by Defendant Dutton Ranch Corp. in California for the period starting October 12, 2016, to the date the Court approves the FLSA portion of the Settlement. SA, ¶ 23. The FLSA Group is defined as FLSA collective members who have opted into the litigation. *Id.* at ¶ 24. Defendants estimate that there are approximately 118 FLSA collective members. Weinberg Decl., ¶ 13. FLSA collective members shall have 60 days from the date of the Notice to opt into the Settlement. SA, ¶ 44. If FLSA collective members do not opt in, they will not be considered part of the Settlement. They will not receive any of the Net Settlement allocated to the FLSA collective claims, and they will not be bound by the FLSA release. *Id.*

### C. Payment Allocations and Distribution.

Any amounts allocated to the settlement of the FLSA claims and not claimed by FLSA collective members shall be redistributed to participating FLSA members up to a maximum amount

calculated based on each participating FLSA member's proportionate share of the maximum value of the FLSA claim as calculated by Plaintiffs' counsel. SA, ¶ 44. The balance of the FLSA funds not redistributed will be applied to the Net Settlement Amount allocated to the PAGA portion of the settlement. *Id.*

The payment to each member of the PAGA Group will be calculated after the FLSA allocation has been calculated and any unallocated FLSA funds will be returned to the Net Settlement available to PAGA. SA, ¶ 49. Each aggrieved employee's PAGA allocation will be determined by dividing the PAGA Group Settlement Amount by the total number of workweeks during which members of the PAGA Group were employed by Defendant Dutton Ranch during the PAGA Period (the "Pay Period Amount") and then multiplying the Pay Period Amount by the number of pay periods worked by each individual PAGA Group member. *Id.*

### D.  Notice to FLSA Collective Members.

The Parties have agreed, subject to Court approval, to a notice plan that will provide a Notice of Resolution regarding the FLSA claim (the "Notice"), in the form attached as Exhibit A to the Parties' Settlement Agreement. SA, Ex. A. Notice to FLSA collective members is to be distributed by First Class Mail to last known addresses on file with Defendants (with one skip trace to be performed by claims administrator) and by electronic notice via WhatsApp for FLSA collective members for whom Defendants have cell phone numbers, regardless of whether those FLSA collective members are located in Mexico, the United States, or elsewhere. SA, ¶ 42. The notice will be sent to FLSA collective members as soon as practicable following preliminary approval by this Court, but no later than fifteen (15) calendar days after the Court grants preliminary approval of the FLSA settlement. *Id.* FLSA collective members who have not already opted into the lawsuit shall have 60 days from the date of the Notice to opt into the settlement. SA, ¶ 44.

### E.  Release of Claims.

The FLSA release extends to the alleged FLSA claims in the complaint and any related FLSA claims that could have been asserted based on the same or similar factual allegations. It does not release any underlying state law individual claims, including any underlying state law individual claims for

unpaid minimum, overtime or other wages. SA, ¶ 38. Likewise, the PAGA release extends to the PAGA claims that were alleged in the complaint, and any related PAGA claims that could have been asserted based on the same or similar factual allegations. SA, ¶ 37. However, the PAGA release does not extend to underlying individual claims for unpaid minimum, overtime, or other wages. *Id.*

### F. Settlement Administration and Distribution of Funds.

The Parties have agreed to use CPT Group as the Settlement Administrator. SA, ¶ 41. Within 45 days of final approval of the settlement, Defendants shall deposit the settlement funds with CPT. SA, ¶ 46. Within 15 days after the receipt of Defendants' payment, CPT will make payments by check sent by first class mail to the FLSA and PAGA Groups who are in the United States. *Id.* at ¶ 47. PAGA checks will be accompanied by the PAGA notice. *Id.* Within 30 days of final approval, CPT will transfer the amounts owed to the Mexican bank Banco del Ahorro Nacional y Servicio Financieros ("Bansefi") account at Citibank on behalf of Mexico-based FLSA and PAGA Group members. *Id.* Thereafter, CPT will contact the FLSA and PAGA Groups to notify them that their funds are available for pickup, which will be accompanied by the PAGA Enclosure Letter. *Id.*

## IV. THE FLSA SETTLEMENT IS A FAIR AND REASONABLE SETTLEMENT OF A BONA FIDE DISPUTE

"The [FLSA] seeks to prohibit 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 11 (2011) (quoting 29 U.S.C. § 202(a)). Employees cannot waive their rights under the FLSA "because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (internal quotation omitted). Therefore, either the Secretary of Labor or a district court must approve the settlement of any FLSA claim. *Gonzalez v. Fallanghina, LLC*, Case No. 16-cv-1832-MEJ, 2017 U.S. Dist. LEXIS 58430, at *5 (N.D. Cal. Apr. 17, 2017); *see also Slezak v. City of Palo Alto*, Case No. 16-cv-3224-LHK, 2017 U.S. Dist. LEXIS 96900, at *3 (N.D. Cal. June 22, 2017). Courts in this district typically evaluate a FLSA settlement under the standard established by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor*,

*Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350 (11th Cir. 1982), which requires the settlement to constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *K.H. v. Sec'y of the Dep't of Homeland Sec.,* No. 15-cv-02740-JST, 2018 U.S. Dist. LEXIS 125459, at *7 (N.D. Cal. July 26, 2018) (citing *Lynn's Food Stores, Inc.,* 679 F.2d at 1355); *see also Gonzalez*, 2017 U.S. Dist. LEXIS 58430, at *6; *Slezak*, 2017 U.S. Dist. LEXIS 96900, at *3-4. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues . . . that are actually in dispute," the district court may "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.,* 679 F.2d at 1354.

### A.  A Bona Fide Dispute Exists.

"A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability." *Jennings v. Open Door Mktg*., *LLC*, No. 15-cv-04080-KAW, 2018 U.S. Dist. LEXIS 171356, at *11 (N.D. Cal. October 3, 2018) (quoting *Gonzalez*, 2017 U.S. Dist. LEXIS 58430, at *6). Here, Defendant Dutton Ranch Corp. disputed the factual and legal basis for Plaintiff O. Hernandez's claim that H-2A field workers were incurring various expenses that brought their wages below federal minimum wage during their first workweek. TAC, ¶ 208. Defendants argued, for example, that tools and transportation to and from the employer-provided housing, were in fact provided to H-2A workers.  Dkt. 32-1, Declaration of Steve Dutton in Support of Defendant's Opposition to Plaintiffs' Motion to Facilitate Collective Action Notice, ("S. Dutton Decl."), ¶¶ 7,10. Defendants also argued that H-2A field workers were not sufficiently similarly situated to justify collective treatment due to variation in working conditions and job positions across Defendants' multiple worksites. Dkt. 32 at 13-15. As a result, Defendants argued that there was no common practice or policy that caused the alleged FLSA violations and that individualized assessments predominated. *Id*. Thus, a bona fide dispute exists between the parties on the merits of Plaintiff's claims and the propriety of certification of the FLSA collective.

### B.  The Settlement is Fair and Reasonable.

To determine whether a settlement is fair and reasonable, the courts consider the "totality of the circumstances and the purposes of [the] FLSA." *Slezak*, 2017 U.S. Dist. LEXIS 96900, at *3 (internal

quotation omitted). Courts have considered the following factors: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *Id.* (quoting *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016)).

### 1. The Settlement Represents a Significant Portion of Plaintiffs' Estimated Value of the Claim.

The settlement allocates $99,240.08 to the FLSA collective. Weinberg Decl., ¶ 13. Plaintiff O. Hernandez calculated the total maximum damages of the FLSA collective at $228,956.58, which means the settlement amounts is 43% of the maximum possible exposure. *Id.* Plaintiff's valuation of the FLSA claim was based on the number of FLSA collective members provided by Defendants in preparation for the parties' first mediation and data regarding damages provided by Plaintiff O. Hernandez. *Id.* Because Plaintiff was not provided with updated workweek data prior to the second mediation, his calculation assumed that every worker was entitled to the full three years of potential recovery, which is likely an overestimate. *Id.* Thus, the settlement represents a significant amount of the maximum possible recovery. *Saleh v. Valbin Corp.,* No. 17-CV-00593-LHK, 2018 U.S. Dist. LEXIS 195348, at *7-8 (N.D. Cal. Nov. 15, 2018) (finding reasonable FLSA settlement that was 37.74% of the total possible recovery, if liquidated damages were not assessed, and collecting wage and hour cases showing that settling between 25 to 35% of the total possible recovery as reasonable).

### 2. The Parties Made an Informed Decision Based on the Stage of Proceedings and Amount of Discovery Completed.

Under this factor, the Court considers "the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement." *Slezak*, 2017 U.S. Dist. LEXIS 96900, at *10. "So long as the parties have sufficient information to make an informed decision about settlement, this factor will weigh in favor of approval." *Saleh,* 2018 U.S. Dist. LEXIS 195348, at *9 (internal quotation omitted); *Jennings,* 2018 U.S. Dist. LEXIS 171356 at *14.

This case has been pending in this Court for over a year and a half. Weinberg Decl., ¶ 8. On March 17, 2020, the Court granted Plaintiff's Motion to Facilitate Collective Action. Dkt. 38. Defendants produced 10,569 pages of documents, which included Plaintiffs' personnel and payroll records, witness statements, and a sampling of payroll records for other workers. Weinberg Decl., ¶ 8. Defendants also took the deposition of Omar Hernandez. *Id*. In this heavily litigated matter, the parties filed various discovery disputes, and this Court referred the parties to a discovery referee. *Id*. at ¶ 11. The parties participated in a full-day mediation on November 18, 2019, prior to which Defendants produced discovery upon which Plaintiffs were able to prepare a detailed damage estimate. *Id*. at ¶ 9. Prior to the parties' second mediation, even more discovery had been exchanged, thus allowing Plaintiffs sufficient information to make an informed decision about settlement. *Id*. at ¶ 12. This factor weighs in favor of approval of the settlement.

### 3. Plaintiff Faced Significant Risks of a Lesser Recovery.

Where there is a significant risk that litigation might result in a lesser recovery for the collective, or no recovery at all, a court should favor approval of the settlement. *Slezak*, 2017 U.S. Dist. LEXIS 96900, at *4. Plaintiff O. Hernandez's FLSA claim alleges that various expenses that H-2A workers incurred before and during their first workweek brought their total first workweek wages below federal minimum wage. These expenses included transportation, hotel, meal, and tool costs and border crossing fees. Weinberg Decl., ¶ 13. Under the FLSA, when an employee incurs expenses that primarily benefit the employer, these expenses are treated as "de facto deductions" from wages. *Arriaga v. Fla. Pac. Farms, L.L.C.,* 305 F.3d 1228, 1237 (11th Cir. 2002). Federal law requires an employer to reimburse these expenses during the first workweek so that wages are at least equivalent to the federal minimum wage. *Id*. ("The costs in dispute are *de facto* deductions which, if not permissible, drove the Farmworkers' pay below the FLSA minimum wage. We thus must analyze whether the transportation, visa, and recruitment costs incurred by the Farmworkers are primarily for the benefit or convenience of the employer."); *Rivera v. Peri & Sons Farms, Inc*., 735 F.3d 892, 897-898 (9th Cir. 2013).

Plaintiff faced the risk that the Court could have determined that certain expenses were not for the benefit of the employer and were therefore not *de facto* deductions under the FLSA. Weinberg

Notice of Motion and Memo of Points and Authorities
iso Plaintiffs' motion for preliminary approval of
settlement

*Hernandez et al.v. Dutton Ranch Corp et al.*  Case
No.:19-cv-00817-EMC

Decl., ¶ 15. For example, subsistence expenses – one of the expenses alleged—must be reimbursed under federal law, and Plaintiff Omar Hernandez alleged that he never received any reimbursement for this expense. *See* Weinberg Decl., ¶ 15, Ex. 4 (Declaration of Omar Hernandez Hernandez, ("O. Hernandez Decl.") ¶ 3); *see also* 20 C.F.R. § 655.122(h)(i).  However, federal law typically classifies this type of expense as primarily for the benefit and convenience of the employee. *See* 29 C.F.R. §531.32(c). *See also Rivera*, 735 F.3d 892, 898.

Additionally, Defendants disputed that certain expenses were incurred at all. For example, Plaintiff O. Hernandez alleged that he and other workers were required to purchase work tools during their first workweek.[1] Weinberg Decl., ¶ 16. Defendants argued that these tools were in fact provided but that some workers chose to purchase their own tools. *Id.* Similarly, Plaintiff alleged that he and other H-2A workers incurred expenses traveling to and between fields because Defendants did not provide this transportation in violation of federal law. *See* 20 CFR 655.122(h)(3). Defendants, however, argued that they offered transportation to workers. *Id.* If the Court found that any of the above-described expenses did not count towards the *de facto* deductions, some FLSA collective action members could have lost their FLSA claim.

Finally, Plaintiff O. Hernandez faced a substantial risk that the Court would reduce a FLSA award to the collective. The FLSA carries a two-year statute of limitations. The employee bears the burden to show a willful violation of FLSA that would justify a three-year statute of limitations. 29 U.S.C. § 255(a); *see also Slezak*, 2017 U.S. Dist. LEXIS 96900, at *6. While Plaintiff's damages assessment assumed a three-year statute of limitations, Defendants could have presented a willfulness defense that, if successful, would have substantially reduced the award, especially in light of the defenses described above. These significant risks favor approval of the settlement.

### 4.  Scope of the FLSA Release is Not Overbroad.

Courts may reject a proposed FLSA settlement when the scope of the release is overbroad. *Dunn v. Teachers Ins. & Annuity Ass'n of Am.,* No. 13-cv-05456-HSG, 2016 U.S. Dist. LEXIS 4338, at *15-16 (N.D. Cal. Jan. 13, 2016) (collecting cases and rejecting a release of "any and all claims...arising out

---

[1] Federal law considers tools of the trade to be primarily for the benefit of the employer. *See* 29 C.F.R. §531.3(d)(2).

*Hernandez et al.v. Dutton Ranch Corp et al.* Case No.:19-cv-00817-EMC

of or in any way connected with, directly or indirectly, *any* act, omission or state of events that has occurred during the Released Period."). Here, the release language is not overbroad, as it only releases the FLSA claims in the complaint and related FLSA claims that could have been based on the same or similar factual allegations. *See* SA, ¶38. The release specifically states that it "does not release any underlying state law individual claims, including any underlying state law individual claims for unpaid minimum, overtime or other wages." *Id*. This carefully tailored release favors settlement approval.

### 5. The Experience and Views of Counsel and the Opinion of the Participating Plaintiff Favor Approval.

In assessing whether a settlement is fair and reasonable, "the opinions of counsel should be given considerable weight both because of counsel's familiarity with the litigation and previous experience with cases." *Slezak*, 2017 U.S. Dist. LEXIS 96900, at *13 (internal quotation omitted). Plaintiff's counsel believe that the settlement is fair, reasonable, and adequate given the risks of litigation. Declaration of Valerie Brender ("Brender Decl."), ¶ 23; Weinberg Decl., ¶ 19. In addition, Plaintiff O. Hernandez believes the settlement is fair and just. O. Hernandez Decl., ¶ 16. This factor weighs in favor of approval.

### 6. There Was No Fraud or Collusion.

Courts look at three factors when evaluating whether a settlement was reached through fraud or collusion: "(1) when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded [citations]; (2) when the plaintiffs negotiate a 'clear sailing' agreement providing for the payment of attorney's fees separate and apart from class funds . . . [citations]; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 947 (9th Cir. 2011); *see also Jennings,* 2018 U.S. Dist. LEXIS 171356 at *23-24 (using the *Bluetooth* factors to evaluate fraud and collusion in an FLSA case). Here, all factors demonstrate there was no fraud or collusion. Plaintiff's counsel's fee request is 33% of the settlement fund, which is 30% of the of their lodestar – a negative multiplier. And any fees not awarded revert to the Gross Settlement Fund, not Defendants. Thus, this factor weighs in favor of approval.

V.   **THE COURT SHOULD APPROVE THE PAGA SETTLEMENT**

Even though court approval of PAGA settlements is statutorily required, *see* Cal. Lab. Code § 2699(l)(2), "PAGA does not provide express guidance about the scope or nature of judicial review." *Abelar v. Am. Residential Servs., L.L.C.*, No. ED CV19-00726 JAK (JPRx), 2019 U.S. Dist. LEXIS 198772, at *7 (C.D. Cal. Nov. 14, 2019). In fact, even the LWDA, the agency tasked with the administration of PAGA and the recipient of all PAGA penalties on behalf of the State, has stated that it "is not aware of any existing case law establishing a specific benchmark for PAGA settlements, either on their own terms or in relation to the recovery on other claims in the action." *Ramirez v. Benito Valley Farms, LLC,* No. 16-CV-04708 LHK, 2017 U.S. Dist. LEXIS 137272, at *8 (N.D. Cal. August 25, 2017) (quoting LWDA Response at 3, *O'Connor v. Uber Techs.*, No. 13-CV-03826-EMC, Docket No. 736 (N.D. Cal. July 29, 2016)). In the absence of binding guidance, federal district courts reviewing PAGA settlements have drawn on factors utilized by the Ninth Circuit in *Hanlon v. Chrysler Corp*., 150 F.3d 1011 (9th Cir. 1998), which are used to evaluate whether a class action settlement is "fundamentally fair, adequate, and reasonable."[2] *See O'Connor v. Uber Techs.,* 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016); *Ramirez*, 2017 U.S. Dist. LEXIS 137272, at *10; *Abelar*, 2019 U.S. Dist. LEXIS 198772, at *7. As described herein, the PAGA settlement is fair, adequate and reasonable and thus should be approved by the Court.

   A.   **The Proposed Settlement is Fair, Adequate, and Reasonable.**

      1.   **The Settlement Reflects the Informed Views of Experienced Counsel and is the Product of Serious, Arms-Length Negotiations Conducted After Investigation and Discovery.**

The court begins its analysis with a presumption that a settlement is fair and reasonable when a settlement is the product of arms-length negotiations conducted by capable and experienced counsel. *Garner v. State Farm Mut. Auto Ins. Co*., No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477, at *35 (N.D. Cal. Apr. 22, 2010). Here, the settlement is the result of arm's-length negotiations between

---

[2] The complete set of *Hanlon* factors are: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation;(3) the risk of maintaining a class action status throughout the trial; (4) the amount offered in settlement;(5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel;(7) any evidence of collusion between the parties; and (8) the reaction of the class members to the proposed settlement.

*Hernandez et al.v. Dutton Ranch Corp et al.* Case No.:19-cv-00817-EMC

experienced attorneys who are familiar with PAGA, collective actions, and the legal and factual issues of this case. *See* Weinberg Decl., ¶ 12. The settlement was a result of the parties' second all-day mediation with an experienced wage and hour mediator. *Id.* In negotiating the settlement, Plaintiffs' Counsel had the benefit of their combined years of experience in addition to their familiarity with the case. *Id.* Plaintiffs' Counsel fully supports the resulting settlement as fair and reasonable.  Weinberg Decl., ¶¶ 19, 28. Brender Decl., ¶ 23.

### 2. The Settlement is Fair Given the Strength of Plaintiffs' Case and the Risk, Expense, and Complexity of Further Litigation.

#### a. The PAGA Settlement Includes Substantial Affirmative Relief.

One of the objectives of PAGA is deterrence, and courts may consider the value of the settlement as a whole. *O'Connor,* 201 F. Supp. 3d at 1134–1135. If a settlement "contained substantial injunctive relief, this would support PAGA's interest in augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *Id.* (Internal quotations omitted).

The parties' settlement includes substantial affirmative relief that addresses the underlying Labor Code violations asserted in Plaintiffs' PAGA cause of action. Defendants attest that their meal break policy now allows for a 45-minute meal period within a workers' first five hours of work and that they will provide 15-minute rest breaks for every 4 hours of work or major fraction thereof, thus assuring that workers now receive full and adequate meal and rest periods. SA, ¶ 59. Defendants further attest that they ended their practice of "second paycheck work," which Plaintiffs alleged resulted in unpaid overtime compensation and inaccurate paystubs. *Id.* Defendants further agreed to provide all necessary tools to their employees and agreed that their foremen and/or supervisors would bring these tools to the worksite. SA, ¶ 60. A non-exhaustive list of these tools is included in the settlement agreement. *Id.* Defendants also agreed to distribute their employment policies in Spanish to all employees, which includes meal and rest period rights, the right to receive compensation for all time worked, and a description that "hours worked" includes all time an employee must be on duty, on the employer's premises, at any other prescribed place of work, or is otherwise suffered or permitted to work. *Id.* at ¶ 61. Defendants also agreed to relief specific to H-2A workers, including informing H-2A

13

workers verbally and in writing at the time of hire that free employer-provided transportation is available to all workers living in employer-provided housing and informing them of their rights to reimbursement for travel and subsistence expenses pursuant to 20 CFR § 655.122 (h)(1)-(2) and H-2A contractual provisions. *Id.* at ¶ 62

The above non-monetary relief significantly benefits the PAGA Group and future workers through permanent policy changes, and therefore promotes PAGA's goal of encouraging compliance with the California Labor Code.

        b.  <u>The PAGA settlement value is equal to or greater than similar cases.</u>

The net value of the PAGA penalty is $198,509.93 (or $346,500 when considering that PAGA is valued at 2/3 of the total $525,000) Weinberg Decl., ¶ 21. Put differently, the Settlement provides for a net value of $11.50 per workweek (after fees and costs), or a gross value of $20.03 per workweek. *Id.* at ¶ 20. This amounts to an average per-worker net penalty of $968.34, or a gross per-worker penalty of $1,690.24.[3] Weinberg Decl., ¶ 20.

The PAGA penalty is approximately 1.7%-3% of the PAGA exposure, which Plaintiffs estimated to be between $11.6 and $19.9 million dollars. Weinberg Decl., ¶ 21. *See Viceral v. Mistras Grp., Inc.,* No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS 140759, at *25 (N.D. Cal. Oct. 11, 2016) (approving a settlement allocating $20,000 to the PAGA claim, or 0.15% of its total value of $12,952,000, in a class action and FLSA case); *McLeod v. Bank of Am., N.A.*, No. 16-cv-03294-EMC, 2018 U.S. Dist. LEXIS 195314, at *5-6, 10 (N.D. Cal. Nov. 14, 2018) (finding a $50,000 PAGA penalty for claims estimated at $4.7 million — approximately 1.1 percent — adequate in a class action case); *see also Maciel* v. *Bar 20 Dairy, Ltd. Liab. Co.,* No. 1:17-cv-00902-DAD-SKO, 2020 U.S. Dist. LEXIS 156961, at *39-40 (E.D. Cal. Aug. 28, 2020) (approving a $5,000.00 civil penalty where Plaintiffs' counsel estimated $800,000.00 in potential PAGA exposure – a recovery of 0.6%, in a class action case with a $450,000 gross settlement); *Chamberlain v. Hughes*, No. 1:19-cv-00831-DAD-JLT, 2020 U.S.

---

[3] Typically, courts look at the gross value per workweek in PAGA-only cases, before deductions for fees and costs; however, due to the unique nature of the settlement in this case, Plaintiffs' counsel reflects this analysis on both a gross and net basis.

    *Hernandez et al.v. Dutton Ranch Corp et al.* Case No.:19-cv-00817-EMC

Dist. LEXIS 134582, at *13 (E.D. Cal. July 29, 2020) (approving a penalty that was 12% gross, or 6.7% net of the total PAGA valuation in a PAGA only case).[4]

However, Plaintiffs estimate that the total value of the PAGA settlement is far greater than the penalty reflects when accounting for the settlement's programmatic relief. Plaintiffs' calculated O. Hernandez and A. Hernandez's individual damages for unpaid wages, meal and rest break violations, and unreimbursed expenses—the same claims at issue in the PAGA action—at approximately $9,574.61 and $15,222.46 per year respectively. *See* Weinberg Decl., ¶ 27, Ex. 3. Defendants employ approximately 85 H-2A workers and 43 non-H-2A workers per year. *Id.* Thus, assuming Plaintiffs' damages were typical, just the one-year value of the PAGA relief could be as high as $1,468,407.63 for the PAGA Group. *Id.* As such, the Settlement is within the range of penalties approved in other cases within this district and is fair, adequate, and reasonable given the risks that Plaintiff could lose at trial and recover nothing.

The settlement is also reasonable given that Plaintiffs faced multiple risks in proving their PAGA allegations. Defendant Dutton Ranch Corp. harvests both grapes and apples throughout the year; each crop requires different tools and occurs on different worksites. Dkt 32-1, (S. Dutton Decl.) ¶ 10. Crews vary in size and are assigned different supervisors depending on the time of year. *Id.* at ¶ 11 ("During harvest, which last three months, there are six crews with approximately sixteen (16) to eighteen (18) workers…per crew. In the non-harvest period, which lasts approximately seven months, Dutton has two (2) to nine (9) crews operating at a time with approximately four (4) to thirty (30) workers"). Moreover, H-2A workers perform seasonal work at Dutton Ranch and do not work for approximately two months each year, whereas non-H-2A workers generally work year-round. *See id.* at ¶ 11; *see also* O. Hernandez Decl., ¶ 2. As a result, the type of work, length of the day, the size and location of the worksites, and the supervisors in charge, are constantly changing throughout the year.

While Plaintiffs assumed, as part of their PAGA damages exposure, that Dutton Ranch failed to pay all wages owed and failed to provide proper meal and rest breaks to every worker every week, Plaintiffs faced a substantial risk that, due to the great variability in the harvest season described above,

---

[4] *Cf. Haralson v. U.S. Aviation Servs. Corp.,* 383 F. Supp. 3d 959, 973 (N.D. Cal. 2019) (collecting cases).

they would not be able to prove that all or even most workers suffered violation rates of this frequency. Weinberg Decl., ¶ 23. For example, Plaintiffs allege that Dutton Ranch failed to pay workers for preparatory and cleanup time and that workers' meal and rest breaks were unlawfully cut short due to walking in and out of the fields. *Id.* However, these were not written policies, but rather practices instituted by different supervisors. *Id.* Furthermore, time of year and field size could impact these practices. *Id.* In order to reach their maximum damages exposure, Plaintiffs would have been required to prove, through testimony, that these off-the clock occurrences were a common policy among all supervisors, on a weekly basis, at every worksite, in each crop, throughout the season. *Id.; see Patel v. Nike Retail Servs.*, No. 14-cv-04781-RS, 2019 U.S. Dist. LEXIS 77988, at *7-8 (N.D. Cal. May 8, 2019) (citing *Cardenas v. McLane Foodservice, Inc.,* No. SACV 10-473 DOC FFMX, 2011 U.S. Dist. LEXIS 13126, at *10 (C.D. Cal. Jan. 31, 2011) ("Given the statutory language [of PAGA], a plaintiff cannot recover on behalf of individuals whom the plaintiff has not proven suffered a violation of the Labor Code by the defendant.").

Given the variation in the PAGA Group's work, Plaintiffs risked that employees' individual experiences would also substantially vary, including their experiences with uncompensated time worked, meal and rest breaks, and expenses incurred. Weinberg Decl., ¶ 24. Thus, proving violations for every workweek was a significant uncertainty favoring settlement. *See Ramirez,* 2017 U.S. Dist. LEXIS 137272, at *13; *Patel*, 2019 U.S. Dist. LEXIS 77988, at *7; *Browning v. Yahoo! Inc.,* No. C04-01463 HRL, 2007 U.S. Dist. LEXIS 86266 at *30 (N.D. Cal. Nov. 16, 2007) ("[L]egal uncertainties at the time of settlement—particularly those which go to fundamental legal issues—favor approval.").

Finally, proving Plaintiffs' claims would have required them to depose various workers and supervisors, since most Defendants' allegedly unlawful practices were unwritten and not provable on the available records. Weinberg Decl., ¶ 25. In addition to being costly, such a method of proof risked conflicting testimony. *Id.*

        c.   <u>Plaintiffs risked that if successful, any PAGA award would be substantially reduced.</u>

Even if Plaintiffs prevailed at trial, Plaintiffs may not recover all civil penalties sought. Section 2699(e)(2) gives the Court discretion to reduce PAGA civil penalties if it finds that awarding the full

amount of penalties would be "unjust, arbitrary and oppressive, or confiscatory." *See Fleming v. Covidien, Inc.,* No. ED CV10-01487 RGK (OPx), 2011 U.S. Dist. LEXIS 154590, at *9 (C.D. Cal. Aug. 12, 2011) (invoking Section 2699(e)(2) and reducing PAGA penalty award from $2.8 million to $500,000). The California Court of Appeals' opinion in *Carrington v. Starbucks Corp.,* 30 Cal. App. 5th 504 (2018), is instructive. There, the plaintiff asked for nearly $70 million in PAGA penalties. The trial court refused to award multiple penalties stemming from the same underlying violation and found the violations "minimal;" the Court of Appeals affirmed the superior court's imposition of .2% of the total penalties. *Id.* at 529.

Here, the Court may find any award unjust or oppressive because multiple violations flow from the same factual allegations. For example, the alleged weekly violations of minimum wage, overtime, meal and rest breaks, and inadequate paystubs were all predicated on off-the-clock preparatory and clean up time (including time walking in and out of the fields).[5] Weinberg Decl., ¶ 22. Thus, Plaintiffs faced the risk that even if they proved weekly violations for every worker for these claims, the Court would not permit five different PAGA penalties to be awarded for the same off-the-clock practice. *Id.*

Finally, "courts have reduced penalties where employers took steps before or during litigation to comply with their clear obligations under the law." *Bernstein v. Virgin Am., Inc.,* 365 F. Supp. 3d 980, 992 (N.D. Cal. 2019) (reducing the PAGA penalty by 25%). *See also Thurman v. Bayshore Transit Mgmt., Inc.,* 203 Cal. App. 4th 1112, 1136 (2012) (affirming the reduction of a PAGA penalty by 30% and noting that "defendants took their obligations under Wage Order No. 9 seriously and attempted to comply with the law"); *Fleming,* 2011 U.S. Dist. LEXIS 154590, at *9 (considering "prompt steps to correct violations once notified" when awarding 18% of total proven liability). Plaintiffs risked such a reduction here. Shortly after Plaintiffs filed this case, Defendants stopped their practice of "second paystub" work. Brender Decl., Ex 3, (Declaration of Antonio Hernandez Santiago, ("A. Hernandez Decl.") ¶ 7). Additionally, there is some evidence that Defendants improved their meal and rest break

---

[5]  Plaintiffs also alleged that overtime and meal and rest break violations occurred during the second paystub work; however, the data showed that the average worker only worked 12 weeks of second paystub work a year – substantially less than the weekly violations that Plaintiffs alleged for their overtime and meal and rest period claims. Weinberg Decl., ¶ 22, fn.2.

policies to come into legal compliance. *Id.*; SA, ¶ 59. "Where the law is clear, reducing penalties for these compliance efforts serves the statute's purposes by incentivizing compliance and ensuring that the penalty is proportional to the employer's course of conduct." *Bernstein*, 365 F. Supp. 3d at 992.

## VI.    PLAINTIFFS' ATTORNEYS' FEE REQUEST IS REASONABLE

"The FLSA mandates an award of attorneys' fees when settling a collective action." *Flores v. TFI Int'l, Inc.,* No. 12-cv-05790-JST, 2019 U.S. Dist. LEXIS 65754, at *26 (N.D. Cal. Apr. 17, 2019) (internal citations omitted). Likewise, the PAGA awards attorneys' fees subject to court approval. *See* Labor Code § 2699(g)(1) (providing for the recovery of attorneys' fees and costs in PAGA actions). "The case law construing what is a reasonable fee applies uniformly to all federal fee-shifting statutes." *Flores*, 2019 U.S. Dist. LEXIS 65754, at *26 (citing *Haworth v. State of Nevada,* 56 F.3d 1048, 1051 (9th Cir. 1995)).

A district court has broad discretion in assessing the reasonableness of attorneys' fees. *In re FPI/Agretech Securities Litig.*, 105 F.3d 469, 472 (9th Cir.1997); *see also McKeen-Chaplin v. Provident Sav. Bank,* No. 2:12-cv-03035-MCE-AC, 2018 U.S. Dist. LEXIS 121149, at *4 (E.D. Cal. July 19, 2018) ("Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award."). Where a settlement produces a common fund for the benefit of the entire class, as is the case here, the court has discretion to award fees using either a "percentage-of-recovery" or a "lodestar" method. *Bluetooth*, 654 F.3d at 942; *Hanlon*, 150 F.3d at 1029.

### A.  The Fees Requested Are Reasonable Considering the Value of the Whole Settlement.

While the Ninth Circuit uses 25 percent of the fund as the presumptively reasonable "benchmark" for awarding fees, *Bluetooth,* 654 F.3d at 942, it also recognizes that 20 to 30 percent is the "usual range" for common fund fee recoveries. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (2002). "[The] exact percentage [awarded] varies depending on the facts of the case, and in most common fund cases, the award exceeds that benchmark." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010). And district courts within this circuit, including this Court, routinely award attorneys' fees that are one-third of the total settlement fund. *See, e.g., Stuart v. Radioshack*

*Corp.*, No. C 07-4499-EMC, 2010 U.S. Dist. LEXIS 92067, *18 (N.D. Cal. Aug. 9, 2010) (awarding one-third of settlement fund in wage and hour class action and noting that "[t]his is well within the range of percentages which courts have upheld as reasonable in other class action lawsuits"); *Barbosa v. Cargill Meat Sols. Corp.,* 297 F.R.D. 431, 449 (E.D. Cal. 2013) (awarding one-third percent in wage and hour class action); *Rigo v. Kason Indus.,* No. 11-CV-64-MMA(DHB), 2013 U.S. Dist. LEXIS 99357, at *20 (S.D. Cal. July 16, 2013) (approving 30 percent fee award; noting that "in a study of 287 settlements ranging from less than $1 million to $450 million, "[t]he average attorney's fees percentage is shown as 31.71%, and the median turns out to be one-third."); 4 Conte & Newberg, *Newberg on Class Actions* § 14:6, p. 551 (4th ed. 2002) ("fee awards in class actions average around one third of recovery"). Such awards are routinely upheld by the Ninth Circuit. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming one-third of the common fund).

Indeed, in FLSA and PAGA-only cases like this one, courts routinely award above the 25% benchmark. *See Flores*, 2019 U.S. Dist. LEXIS 65754, at *30 (awarding fees that were 61% of the total settlement in a FLSA-only case and collecting cases showing that under the FLSA "it is not uncommon that attorneys' fee requests will exceed the amount of the judgment in the case.") (internal quotations and citations omitted); *McKeen-Chaplin*, 2018 U.S. Dist. LEXIS 121149, at *4-5 (collecting cases where FLSA attorneys' fees awards were 33 1/3% of the settlement); *Patel*, 2019 U.S. Dist. LEXIS 77988, at *11 (approving a fee and cost award in a PAGA-only case where the fees and costs constituted 76% of the total settlement).

As this Court has observed, other factors should be considered in evaluating the reasonableness of a common fund fee request. *Viceral v. Mistras Grp., Inc.,* No. 15-cv-02198-EMC, 2017 U.S. Dist. LEXIS 23220, at *10 (N.D. Cal. Feb. 17, 2017). Those factors include: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Id.* (quoting *Lusby v. Gamestop Inc*., No. C12-03783 HRL, 2015 U.S. Dist. LEXIS 42637, at *9 (N.D. Cal. Mar. 31, 2015)). Those factors applied here confirm the reasonableness of the $173,250.00 fee request.

The results achieved here afford field workers substantial relief. Participating FLSA members

*Hernandez et al.v. Dutton Ranch Corp et al.* Case
No.:19-cv-00817-EMC

will receive a minimum of 43% of their estimated unreimbursed H-2A related expenses and could receive a potential maximum of 100% depending on the level of opt-in participation. Weinberg Decl., ¶ 18. And PAGA members and the LWDA will receive a penalty within the range of penalties regularly awarded by courts. *See* section V.A.2.b., *supra*. Furthermore, under the PAGA settlement, the prospective relief is substantial. *See* section V.A.2.a., *supra* (prospective relief includes longer meal and rest breaks, no more "second paycheck work," providing all necessary tools, and distributing workplace policies to workers in Spanish).

The Ninth Circuit has instructed that "courts should consider the value of the injunctive relief obtained as a 'relevant circumstance' in determining what percentage of the common fund class counsel should receive as attorneys' fees, rather than as part of the fund itself." *Staton v. Boeing Co.,* 327 F.3d 938, 974 (9th Cir. 2003). As the Ninth Circuit noted in *Vizcaino,* it is appropriate in awarding fees to consider that "counsel's performance generated benefits beyond the cash settlement fund." *Vizcaino*, 290 F.3d at 1049.

Here, the prospective relief that Plaintiffs have negotiated should result in substantial economic benefit to the FLSA and PAGA collective. As described above, just one year's worth of policy changes could be worth as much as $1,468,407.63 to the PAGA and FLSA collective. When viewed in these terms, counsels' fees would be less than 9% of the common fund. Thus, while the $173,250 fee request here is 8 1/3 percent above the 25 percent benchmark, it is supported by the "relevant circumstance" that future economic benefits will substantially increase the total value of the settlement. *See Staton*, 327 F.3d at 974.

As described above, the risks in litigation were significant, including risks that certain expenses may not have counted towards the FLSA minimum wage analysis and a finding that could have caused many workers' minimum wage claims to be reduced or lost entirely. For the PAGA claim, Plaintiffs risked that variations in the supervisor, type of work, length of day, size and location of the worksite would significantly reduce the number of violations and therefore the PAGA penalties available. Weinberg Decl., ¶ 40. Plaintiffs further risked a reduction in PAGA penalties under Section 2699(e)(2), since many alleged violations flowed from a common course of conduct: unrecorded

*Hernandez et al.v. Dutton Ranch Corp et al.*  Case No.:19-cv-00817-EMC

preparatory and clean-up time. *Id.*

Plaintiffs' Counsel employed their years of wage and hour class and collective action experience and skill to try to streamline the litigation and optimize the results. Weinberg Decl., ¶ 41; Brender Decl., ¶¶ 5-6, 9. As a result, they were able to obtain significant economic and non-economic relief within two years of litigation.

Furthermore, Plaintiffs retained Counsel on a contingency basis, agreeing that attorneys' fees and reimbursement of costs would only be realized if there was recovery. Plaintiffs' Counsel thus invested hundreds of hours with no guarantee of payment. They also expended $22,028.17 in out-of-pocket expense with no guarantee of recoupment. Weinberg Decl., ¶ 44; Brender Decl., ¶ 21.

Finally, as described above, the fee requested and results obtained here compare favorably with other court-approved fee awards. *See Flores*, 2019 U.S. Dist. LEXIS 65754, at *30; *McKeen-Chaplin*, 2018 U.S. Dist. LEXIS 121149, at *6.

## B. A Lodestar Crosscheck Further Supports the Fees Requested.

Common fund fee recoveries may be cross-checked by the resulting lodestar, because "while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award" *Vizcaino*, 290 F.3d at 1050. *See also In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557-58 (2009) (endorsing using either common fund or lodestar method for attorneys' fees, as long as the goal is to award a "reasonable" fee). Furthermore, "[i]n FLSA-only settlements, it is appropriate to approve fees based on a contingency agreement." *McKeen-Chaplin*, 2018 U.S. Dist. LEXIS 121149, at *7 (awarding 33 1/3 percent because this was plaintiffs' counsel contingency agreement). Here, Plaintiff Omar Hernandez Hernandez retained CRLA and RHR on a contingency agreement based on lodestar only. Weinberg Decl., ¶ 42. And the collective lodestar of the Class Counsel firms totals $573,110. Weinberg Decl., ¶ 37; Brender Decl., ¶¶ 14-18. Thus, the FLSA collective is obtaining a FLSA award based on .3 of Plaintiffs' lodestar – a negative multiplier. Furthermore, Plaintiff Antonio Hernandez retained RHR on a contingency basis of 33%. Brender Decl., ¶ 2. As a result, the requested percentage of the fund is in line with Plaintiff A. Hernandez's agreement and much less than the fee afforded by O. Hernandez's

agreement.

## VII.     PLAINTIFFS' COUNSEL'S COSTS ARE REASONABLE

Courts routinely reimburse plaintiff's counsel for the costs incurred in prosecuting cases on a contingent fee basis. The recovery of costs includes all out-of-pocket costs not part of overhead which are typically billed to a client. *See Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1190 (11th Cir. 1983) ("[E]xpenses such as supplemental secretarial costs, copying, telephone costs and necessary travel, are integrally related to the work of an attorney and the services for which outlays are made may play a significant role in the ultimate success of litigation . . . ."). In this case, all of the categories of costs sought by Plaintiffs are typically billed to a client. Plaintiffs' calculate that they have incurred $22,028.17 in costs. *See* Weinberg Decl., ¶ 44; Brender Decl., ¶ 21. These costs, including deposition expenses, mediation fees, electronic research charges, and travel expenses, were necessary and reasonable. *Id*.

## VIII.    THE SERVICE AWARDS ARE REASONABLE

Service awards for representatives "are intended to compensate class representatives for work done on behalf of the class, to make up for financial and reputational risk undertaken in bringing the action and [ ] to recognize their willingness to act as a private attorney general" and are "fairly typical in class action cases." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). These awards are also typical in FLSA and PAGA cases. *See e.g. Jones v. Agilysys, Inc.*, No. C 12-03516 SBA, 2014 U.S. Dist. LEXIS 68562, at *8 (N.D. Cal. May 19, 2014) ("Although incentive awards are not specifically authorized under the FLSA, they are generally authorized as a matter of the court's discretion."). *Bruce v. Del Monte Foods, Inc., No.* 16-cv-05891-JD, 2018 U.S. Dist. LEXIS 53800 at *4 (N.D. Cal. Mar. 29, 2018) (awarding an incentive award in a PAGA-only case).

To assess what service award is appropriate, courts balance the "number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Staton*, 327 F.3d at 977. "Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where . . . the class representative has demonstrated a strong commitment to the class." *Garner*, 2010 U.S. Dist. LEXIS 49477, at *47 n.8

(collecting cases).

Plaintiffs here request a $7,000 service award each. Plaintiff O. Hernandez devoted approximately 63.8 hours assisting in the preparation, prosecution and settlement of this case, and Plaintiff A. Hernandez devoted approximately 45.9 hours. O. Hernandez Decl., ¶ 15; A. Hernandez Decl., ¶ 13. Plaintiffs actively participated in developing this case for litigation, spent significant time providing information to their attorneys, searched for information in their possession, and spoke with potential witnesses. O. Hernandez Decl., ¶¶ 8-9; A. Hernandez Decl., ¶¶ 8-9. Furthermore, Plaintiffs' support for the settlement was not contingent upon their receipt of a service award. *Cf. Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (unconditional support of the settlement supports service award).

Plaintiff A. Hernandez understood the substantial risk he faced when he filed this case while still employed with Defendants. A. Hernandez Decl., ¶ 5. Indeed, after the filing of this lawsuit he experienced retaliation by his foreman, Jesus Carmona and suffered from stress and anxiety due to the problems that were occurring at Dutton Ranch. *Id.* at ¶ 6.

Before filing this case, O. Hernandez sought out legal assistance at the Agricultural Labor Relations Board, sharing with them the problems he was experiencing at Dutton Ranch. O. Hernandez Decl., ¶ 5. During this litigation, O. Hernandez feared retaliation against himself, his father and co-Plaintiff A. Hernandez, and family members still employed with Dutton Ranch. *Id.* at ¶¶ 7,13. Despite these fears and facing intimidating immigration-related questions at his deposition, O. Hernandez chose to continue litigating this case on behalf of other workers. *Id.*

The service award sought here is well within the range that federal judges award in class, collective, and representative actions. *Garner,* 2010 U.S. Dist. LEXIS 49477, at *47 n.8 (collecting cases awarding $20,000 or more); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (approving $50,000 to one named plaintiff).

Finally, the requested service award is modest in light of both the total value of the settlement and the amounts class members will be receiving. The $14,000 requested each is only 2.6% of the total settlement of $525,000; this percentage decreases further when you factor in the potential future

*Hernandez et al.v. Dutton Ranch Corp et al.*  Case No.:19-cv-00817-EMC

monetary benefits field workers will realize from implementation of the nonmonetary relief negotiated.

Plaintiffs' requested service awards of $7,000 each is 8.3 times greater than estimated average recovery of $841.01 for FLSA collective members 7.22 times greater than the average recovery of $968.34 for PAGA Group members. Courts in the Ninth Circuit have approved enhancements many multiples greater than what is being asked here. *See, e.g., Torres v. Pick-A-Part Auto Wrecking,* No. 1:16-cv-01915-DAD-BAM, 2018 U.S. Dist. LEXIS 2446, at *14 (E.D. Cal. Jan. 5, 2018) (approving enhancement that is "16 times the maximum amount that a class member could expect to receive in this litigation."); *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 906 (C.D. Cal. 2016) (awarding enhancement approximately 13.33 to 20 times greater than average class member monetary recovery of $200-$300); *In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. 2014) (awarding enhancements 166 to 1,000 times greater than value of $5, $15, and $30 vouchers).

## IX.  CONCLUSION

Based on the record presented here, the Court should preliminarily approve this FLSA and PAGA settlement and award Plaintiffs' Counsel $173,250.00 in fees and $20,000 for reimbursement of litigation expenses. The Court should also award each Plaintiff an incentive award of $7,000 for their vital role in achieving a collective settlement that provides a significant payout and permanent policy changes. Finally, the Court should approve CPT Group as the notice administrator and adopt the proposed notices in Exhibits A and B to the Settlement Agreement.

Respectfully submitted,

Dated: December 23, 2020          CALIFORNIA RURAL LEGAL ASSISTANCE, INC.

_____
Josephine Weinberg
*Attorney for Plaintiff Omar Hernandez Hernandez*

Dated: December 23, 2020                    RUKIN HYLAND & RIGGIN LLP

_____
Valerie Brender
*Attorney for Plaintiffs*